CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
KARI L. SILVA, #257033
440 N. 1st Street, Suite 100
San Jose, California  95112
Telephone:  (408) 295-9555

Attorneys for Moving Party
Oxanna Wootton

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | |
|---|---|
| In Re:<br><br>Alan T. and Wendy Lynn Wootton,<br><br>        Debtors. | Case No: 09-57389 ASW<br><br>Chapter 13<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF A MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW SANTA CLARA SUPERIOR COURT, FAMILY DIVISION THE RIGHT TO IMPOUND AND DISTRIBUTE THE FUNDS EARNED FROM THE SALE OF PLAYDOM INC.'S STOCK<br><br>[No Time Set] |

COME NOW, OXANNA WOOTTON, the former spouse of debtor Alan T. Wootton (the "Moving Party"), who submits the following memorandum of points and authorities in support of a motion for relief from automatic stay to allow the Santa Clara Superior Court, San Jose, Family Division the right to impound funds/proceeds received by Debtor for his PLAYDOM Inc. stock options.  This motion is made on the grounds that cause exists for an order granting relief from the automatc stay, and the Moving Party moves this Court for an order granting relief from the automatic

1

Case: 09-57389    Doc# 35    Filed: 09/10/10    Entered: 09/10/10 15:18:39    Page 1 of 5
MOTION FOR RELIEF FROM AUTOMATIC STAY

stay imposed by 11 U.S.C. § 362 (d)(1) and (2) upon the following grounds:

## I. **INTRODUCTION**

Debtor, Alan Wootton (hereinafter "Debtor") and Moving Party dissolved their marriage in 2007. (See Wootton Declaration ¶3) Upon dissolution of the marriage it was ordered and agreed that Debtor would make support payments of $4,990.00 per month. This payment includes $2,984.00 in child support, 50% of childcare costs or $1,260.00 and $746.00 in spousal support. (See Wootton Declaration ¶2). From February 2009 forward the parties stipulated that Debtor was to pay $3,706.00 per month in support payments, which includes $1,700.00 in child support, plus 50% of childcare expenses and $746.00 in spousal support. (See Wootton Declaration ¶3). Debtor now disagrees with the amount due for childcare expenses, but he has failed to file a motion to modify the court ordered payments. (See Wootton Declaration ¶5)

After the dissolution of marriage, Debtor sought employment with various start-up companies where he received stock options in lieu of monthly compensation. (See Wootton Declaration ¶4). During that time, Debtor became delinquent in his support obligations. (See Wootton Declaration ¶4). In February 2009, Debtor began work at PLAYDOM, Inc., where he earned a significant monthly salary, despite his increased salary Debtor continued to fall behind on his support payments. (See Wootton Declaration ¶4). On August 31, 2009, Debtor, Alan Wootton and his spouse Wendy Lynn Wootton, filed for Chapter 13 bankruptcy protection, case # 09-57389 in the Northern District of California. (See Wootton Declaration ¶4).

Moving Party has filed multiple objections to Debtor's Chapter 13 plan the first objection was based on Debtor's bad faith filing of his Chapter 13 plan, including his failure to list all assets and that his plan fails to pay all priority debt within 60 months. Moving Party's last objection requested the case be converted to a Chapter 7 based on Debtor's failure to stay current on his post-petition support payments. Debtor opposed the second motion arguing he was current on his support obligations due to

2

Case: 09-57389   Doc# 95   Filed: 09/10/10   Entered: 09/10/10 15:18:39   Page 2 of 5

his good faith belief that less money is owed for childcare.  (See Wootton Declaration ¶5)

Debtor's Employment Agreement in February 11, 2009 with PLAYDOM Inc. granted an option for Debtor to purchase 125,000 shares of PLAYDOM Inc. stock at the fair market value of the stock on the purchase date, which would vest over four years.  On March 17, 2009 and March 4, 2010, Debtor executed documents entitled PLAYDOM, Inc. Notice of Grant of Stock Option, each evidencing grants of PLAYDOM, Inc. stock options totaling 133,000 shares.  (See Wootton Declaration ¶8).  However, on October 19, 2009, Debtor Alan Wootton testified at his 341 hearing that he had no interest in PLAYDOM Inc. and no stock options were listed as property of the bankruptcy estate. (See Wootton Declaration ¶8).

Recently, PLAYDOM Inc. was acquired by Walt Disney Company and due to the acquisition Debtor has receive approximately $100,000 for his portion of PLAYDOM, Inc. stock options.  (See Wootton Declaration ¶9).   Moving Party has provided Debtors attorney with a letter requesting these funds be put in trust until the dispute over the amount owed in support arrears and future support can be resolved. (See Wootton Declaration ¶11).  Debtor has failed to agree to the request and is quickly depleting the funds received in the PLAYDOM/DISNEY merger. (See Wootton Declaration ¶11-12).

Moving Party requests relief from the automatic stay in relation to these funds and an order allowing the Santa Clara Superior Court of California, Family Division the authority to order these funds impounded until the support issue and any other property division issue can be resolved.

## II. THE COURT HAS STATUTORY AND INHERENT AUTHORITY TO GRANT THE REQUESTED RELIEF

The Court has statutory authority to grant the requested relief pursuant to Section 362(d)(1) of the United States Bankruptcy Code, which states in relevant part, " the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay- (a) for cause." Further authority to grant the requested relief is found in Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-1, and 4001-3, of the United

3

States Bankruptcy Court for the Northern District of California.

**III. THE COURT SHOULD GRANT THE REQUESTED RELIEF TO ENSURE DEBTOR DOES DEPLETE FUNDS RECEIVED IN THE DISNEY MERGER AND ESCAPE PAYMENT OF HIS SUPPORT OBLIGATIONS.**

The Court should grant Moving Party's motion because 1) only the family court is aware of the true division of assets and what is owed by Debtor, Alan Wooton, to moving party; 2) once the funds are depleted they cannot be recovered; 3) Debtor, Alan Wootton is at least $72,000 in arrerares on his support obligations; 4) Debtor, has already failed to list the stock options as an asset and has lied under oath about his ownership in this stock; 5) Debtor appears to be using the bankrutpcy process to prevent payment of his support obligations; 6) the state court litigation can progress to relative conclusion in little time because the state court has already distributed the assets of the parties and made a determiniation of their rights; and 7) the funds have not been listed as an asset and have not be listed as exempt.

**IV. PRAYER**

For all of the foregoing reasons, Moving Party prays for the following:

1. For an Order granting relief from the automatic stay of 11 U.S.C. §362(a) as of the hearing date and relief from the waiting periods provided for in B.R. 4001 (a)(3) to allow the Santa Clara Superior Court Family Court full authority to impound said funds and determine the ownership of said funds;

2. Alternatively, in the event this court declines to grant Movant the relief requested above, Movant requests that an Order for adequate protection be issued, requiring the Debtor to place said funds in an attorney trust account until all objections have been resolved and the plan is confirmed;

3. That the attorneys' fees and costs incurred by Movant for filing the instant Motion be included in the outstanding balance of the arrerares under applicable non-bankruptcy law;

4

and

4. For such other and further relief as the court deems just and proper.

Dated: September 10, 2010

CAMPEAU GOODSELL SMITH

By: /s/: *Kari L. Silva*
    Kari L. Silva
    Attorneys for Oxana Wootton