CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
KARI L. SILVA, #257033
440 N. 1st Street, Suite 100
San Jose, California  95112
Telephone:  (408) 295-9555

ATTORNEYS FOR MOVING PARTY
OXANNA WOOTTON

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | |
|---|---|
| In Re:<br><br>Alan T. and Wendy Lynn Wootton,<br><br>　　　　Debtors. | Case No: 09-57389 ASW<br><br>Chapter 13<br><br>DECLARATION OF OXANNA WOOTTON IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW SANTA CLARA SUPERIOR COURT, FAMILY DIVISION THE RIGHT TO IMPOUND AND DISTRIBUTE THE FUNDS EARNED FROM THE SALE OF PLAYDOM INC.'S STOCK |

I Oxanna Wootton declare as follows:

1. Debtor, Alan Wootton (hereinafter "Debtor") and I dissolved our marriage in 2007.

2. Upon dissolution of our marriage, Debtor and I agreed via stipulation that was approved by the court that Debtor would pay me $4,990.00 per month in support payments.  The payment includes $2,984.00 in Child Support, 50% of Childcare Costs of $1,260.00 and $746.00 in spousal support. (See a true and correct copy of the stipulation as Exhibit A)

DECLARATION OF OXANNA WOOTTON
PAGE 1

3. On August 3, 2009, Debtor and I stipulated to modify the child support order. For the period of May 14 to July 2008 Debtor's support payments were reduced to $4,352.00 per month. For the period of July 28 to December 2008, Debtor support payments were reduced further to $4,024.00 per month. From February 19, 2009 on Debtor was to pay $3,706.00 per month in support payments which include $1,700.00 in child support, plus 50% of childcare expenses, this amount has not been modified by the court and continues to be $1,260.00, and $746.00 in spousal support payments. (See a true and correct copy of the stipulation as Exhibit B).

4. After the dissolution of our marriage, Debtor sought employment with various start-up companies where he received stock options in lieu of monthly compensation. During that time, Debtor became deliquent in his support obligations. In February 2009, Debtor began work at PLAYDOM, Inc., where he earned a salary of roughly $13,000.00 per month, despite his increased salary Debtor continued to fall behind on his support payments. On August 31, 2009, Debtor and his spouse Wendy Lynn Wootton, filed for Chapter 13 bankruptcy protection, case # 09-57389 in the Northern District of California. (See a true and correct copy of the offer letter as Exhibit C).

5. I filed multiple objections to Debtor's Chapter 13 plan my first objection was based on Debtor's bad faith filing of his Chapter 13 plan, including his failure to list all assets and that his plan fails to pay all priority debt within 60 months. My last objection requested the case be converted to a Chapter 7 based on Debtor's failure to stay current on his post-petition support payments. Debtor opposed my motion arguing he was current on his support obligations due to his good faith belief that less money is owed for childcare. However, he has not moved for an order from the family court to reduce the amount owed for childcare expenses.

6. Currently, there is a dispute on the actual childcare costs that must be paid by the Debtor and if an adjusted childcare costs will be applied retroactivly. Irrespective of this dispute Debtor is in

arrears on his support payments to me for at least $72,000.00.

7. Debtor's Employment Agreement in February 11, 2009 with PLAYDOM Inc. granted an option for Debtor to purchase 125,000 shares of PLAYDOM Inc. stock at the fair market value of the stock on the purchase date, which would vest over four years. On March 17, 2009 and March 4, 2010, Debtor executed documents entitled PLAYDOM, Inc. Notice of Grant of Stock Option, each evidencing grants of PLAYDOM, Inc. stock options totaling 133,000 shares. Based on these grants and the time Debtor worked for PLAYDOM Inc. I can estimate that Debtor had at least 46,875 shares when the merger occurred[1]. ( See a true and correct copy of the Notice of Grant of Stock Options as Exhibit D)

8. However, on October 19, 2009, Debtor testified at the 341 meeting of creditors that he had no interest in PLAYDOM Inc., including no stock options with the company. Additionally, he failed to list his intereset of PLAYDOM, Inc. stock on his bankruptcy petition. (See a true and correct copy of Debtor'sSchedule B as Exhibit E)

9. Recently, I learned that PLAYDOM Inc. was going to be acquired by Walt Disney Company. Debtor also provided me with an email where he indicated he might receive money from a potential merger and he estimated that after taxes it could be close to $80,000.00. Based on that email I estimate that Debtor would receive a gross amount of about $100,000 for his portion of PLAYDOM, Inc. stock options. In fact the merger was completed by August 27, 2010. (See a true and correct copy of an email from Debtor as Exhibit F)

10. I have been trying unsuccessfully for the past 3 years to have Debtor become current on his support obligations and Debtor has used tactics to prevent payment of this obligation. Such tactics include but are not limited to the filing of this Chapter 13 plan where the plan terms cannot satisfy priority debt; lying under oath about the assets of the bankrutpcy estate at the

---

[1] 18 months / 48 months to fully vest * 125,000 options = 46, 875 shares. This is a low amount as it does not calculate the additional 8,000 shares received or any other shares Debtor may have received thatI was not made aware of.

341 meeting of creditors including Debtor's interest in stock options of PLAYDOM Inc. Due to the past actions of Debtor, I am afraid that Debtor will take his windfall stock payments and spend the money then default on his Chapter 13 plan. Once the assets are spent there will be no money for Debtor to pay his support arrears.

11. In an attempt to informally resolve my concerns, I wrote Debtor's family law attorney and requested the stock funds be placed in a trust account until all support issues could be heard in the family court. I requested a response by September 7, 2010. To date, Debtor has failed to respond to my request. (A true and correct copy of the letter is attached as Exhibit G.)

12. Immediately after the merger, Debtor and his wife Wendy made postings on Facebook which show that they have received the money and some of the money has already been spent to purchase a new car. (Attached are true and correct copies of the Facebook pages as Exhibit H).

13. Debtor has not contacted me to discuss the money he has received or offered to satisfy his outstanding support obligations to me.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed 9/10/10 day of September in San Jose, California.

By: _____
Oxana Wootton

DECLARATION OF OXANNA WOOTTON
PAGE 4