# EXHIBIT "A"

1  HEINZ BINDER (#87908)
   ROBERT G. HARRIS (#124678)
2  BINDER & MALTER, LLP
   2775 Park Avenue
3  Santa Clara, CA 95050
   Telephone: (408) 295-1700
4  Facsimile: (408) 295-1531

5  Attorneys for Oxana Wootton

6

                  **UNITED STATES BANKRUPTCY COURT**
7
             **NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5**
8

9  In re                          )   Case No. 09-57389 ASW
                                   )   Chapter 13
10 Alan T. And Wendy Lynn Wootton, )
                                   )   Confirmation Hearing:
11                                 )
                                   )   Date:  November 2, 2009
12              Debtors.           )   Time:  11:00 a.m.
                                   )   Place: Courtroom 3070
13                                 )         280 South First Street
                                   )         San Jose, California
14 _____

15                    **OBJECTION TO CHAPTER 13 PLAN**

16        Oxana Wootton, former spouse of debtor Alan T. Wootton, hereby objects to the

17 Chapter 13 Plan filed by Chapter 13 debtors Alan T. And Wendy Lynn Wootton on the

18 following grounds:

19        1.       The plan has not been proposed in good faith as required by 11 U.S.C.

20 section 1325(a)(3) inasmuch as debtor Alan T. Wootton has failed to comply with the

21 terms of Family Court orders, disposed of and/or concealed assets in violation of those

22 orders, seeks to discharge debt that is otherwise not dischargeable under the

23 Bankruptcy Code and should not be entitled to seek relief before the bankruptcy court.

24        2.       The petition was not filed in good faith as required by 11 U.S.C. section

25 1325(a)(3) inasmuch as the primary purpose of filing appears to have been to avoid the

26 effect of the orders of the Family Court to have made various payments to Oxana

27 Wootton from community assets that he was required to liquidate and instead retained

28 and those assets converted to his own use.

**OBJECTION TO CHAPTER 13 PLAN**                                 **Page 1**

3. The plan violates 11 U.S.C. section 1325(a)(8) inasmuch as debtor Alan T. Wootton has failed to pay since the filing of the bankruptcy petition herein all domestic support obligations owing pursuant to the November 9, 2007 Judgment for Dissolution from the Santa Clara County Superior Court and the related order for maintenance and child support.

4. The Plan violates 11 U.S.C. section 1325(a)(6) inasmuch as it provides for insufficient payments to permit the Debtors to pay all amounts due. Specifically, the Plan provides for 60 months of payments at $700 per month totaling $42,000. From this total interest, Chapter 13 trustee fees, and attorneys' fees must be deducted. Debtors' form B22C specifies at line 49 that only $544.53 will be paid on account of pre-petition priority claims such as child support and alimony. Oxana Wootton is owed $73,921.73 for unpaid child support and $7,737.76 in interest thereon which sums are domestic support obligations entitled to priority under 11 U.S.C. section 507(a)(1). These amounts are entitled to priority over all other payments. The plan therefore fails to provide an adequate means for the payment of the full domestic support obligation and is unconfirmable.

Dated: October 19, 2009          BINDER & MALTER, LLP

By:   Robert G. Harris
       Robert G. Harris

Attorneys for Oxana Wootton

# EXHIBIT "B"

In re __Alan T. Wootton & Wendy Lynn Wootton_____     Case No. _____
              **Debtor**                                                   **(If known)**

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See. 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | | Cash on Hand<br>Debtor's Residence | J | 50.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Wells Fargo checking account<br>San Jose, CA | C | 1,000.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Furniture<br>Debtor's Residence | J | 300.00 |
| | | Linens, Sheets, and Towels<br>Debtor's Residence | J | 100.00 |
| | | Small Kitchen Appliances<br>Debtor's Residence | J | 100.00 |
| | | TVs, Stereos, Electronics<br>Debtor's Residence | J | 400.00 |
| | | Mattress & Box Spring<br>Debtor's residence | J | 75.00 |
| | | Refrigerator<br>Debtor's residence | J | 300.00 |

Bankruptcy2009 ©1991-2009, New Hope Software, Inc., ver. 4.4.9-739 - 31614 - Adobe PDF

In re __Alan T. Wootton & Wendy Lynn Wootton__    Case No. _____
         Debtor                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| | | Personal computer<br>Debtor's residence | J | 300.00 |
| 5.   Books. Pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.   Wearing apparel. | | Clothing and Wearing Apparel<br>Debtor's Residence & debtor's person | J | 400.00 |
| 7.   Furs and jewelry. | | Jewelry<br>Debtor's Residence | J | 400.00 |
| 8.   Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.   Interests in insurance policies.  Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10.  Annuities.  Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses.  Itemize. | | JotPark Inc., 40% interest (failed startup)<br>San Jose, CA | H | 1.00 |
| 14.  Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15.  Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16.  Accounts receivable. | X | | | |
| 17.  Alimony, maintenance, support, and property settlement to which the debtor is or may be entitled.  Give particulars. | X | | | |

In re   Alan T. Wootton & Wendy Lynn Wootton _____   Case No. _____
_____Debtor_____                                          (If known)

## SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate or a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights of setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. §101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2002 Dodge Grand Caravan<br>Debtors' residence<br>Value per KBB. | C | 3,785.00 |
| | | 2001 Infiniti QX4<br>Debtors' residence<br>Value per KBB. | C | 8,090.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |

Bankruptcy2009 ©1991-2009, New Hope Software, Inc., ver. 4.4.6-739 - 31614 - Adobe PDF

In re   Alan T. Wootton & Wendy Lynn Wootton                    Case No. _____
         Debtor                                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | _____ 0 _____   continuation sheets attached   Total | | $   15,301.00 |

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

Bankruptcy2009 ©1991-2009, New Hope Software, Inc., ver. 4.4.9-759 – 31614 - Adobe PDF

# EXHIBIT "C"

Games  Videos  Create  My Page  Characters  Movies  TV  Music  Live Events  Parks  Store  For You  Search Disney.com  Go

Corporate Information       Investor Relations                                          Careers              Corporate Responsibility

News Releases

2010 News Releases

**THE WALT DISNEY COMPANY TO ACQUIRE LEADING SOCIAL GAME DEVELOPER PLAYDOM**

Burbank, California – July 27, 2010 – Advancing on its goal of bringing consumers its well-known stories, characters and brands in ever more engaging ways, The Walt Disney Company has agreed to acquire Playdom Inc., one of the leading companies in the fast-growing business of online social gaming.

Playdom shareholders will receive total consideration of $563.2 million, subject to certain conditions, and a performance-linked earn-out of up to $200 million.

In just two and a half years of operation, Playdom has established itself as a pacesetter in building popular games for social networks enjoyed by consumers around the globe. Through well-known titles like *Social City, Sorority Life, Market Street and Bola*, Playdom engages an estimated 42 million active players each month.

By acquiring Playdom, Disney will strengthen its already-robust digital gaming portfolio, acquire a first-rate management team and provide consumers new ways to interact with the company on popular social networks like *Facebook* and *MySpace*.

"We see strong growth potential in bringing together Playdom's talented team and capabilities with our great creative properties, people and world-renowned brands like Disney, ABC, ESPN and Marvel." said Robert A. Iger, President and CEO, The Walt Disney Company.

"This acquisition furthers our strategy of allocating capital to high-growth businesses that can benefit from our many characters, stories and brands, delivering them in a creatively compelling way to a new generation of fans on the platforms they prefer," Iger added.

"We are at the start of a once-in-a-generation opportunity to transform the way people of all ages play games with their friends across devices, platforms and geographical boundaries," said Playdom Chief Executive Officer John

Pleasants. "Disney is an incredibly forward-thinking company that shares our vision and is the ideal partner to further our mission to bring great entertainment to people around the world."

Playdom, which has 15 game development studios, will remain headquartered in Mountain View, California. Pleasants will become an Executive Vice President of the Disney Interactive Media Group (DIMG) and General Manager of Playdom, reporting to DIMG President Steve Wadsworth.

Disney expects Playdom's expertise in social gaming software tools, business intelligence and rapid innovation to broadly benefit DIMG, which already has a substantial global presence in online, console and mobile gaming.

The transaction, which is subject to clearance under the Hart-Scott-Rodino Antitrust Improvements Act and certain non-U.S. merger control regulations, is expected to close by the end of Disney's 2010 fiscal year.

## About The Walt Disney Company

The Walt Disney Company, together with its subsidiaries and affiliates, is a leading diversified international family entertainment and media enterprise with five business segments: media networks, parks and resorts, studio entertainment, consumer products and interactive media. Disney is a Dow 30 company and had annual revenues of about $36 billion in its most recent fiscal year.

### Forward-Looking Statements:

Certain statements in this press release may constitute "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements relate to a variety of matters, including but not limited to: the operations of the businesses of Disney and Playdom; the timing and consummation of the transaction; the expected benefits of the integration of the two companies; the market for online social gaming and other statements that are not historical fact. These statements are made on the basis of the current beliefs, expectations and assumptions of the management of Disney regarding future events and are subject to significant risks and uncertainty including uncertainties regarding the business of each company, the receipt or timing of regulatory approvals and continued consumer acceptance of online social gaming.

Disney undertakes no obligation to update or revise these statements, whether as a result of new information, future events or otherwise. Additional factors that may cause results to differ materially from those described in the forward-looking statements are set forth in the Annual Report on Form 10-K of Disney for the year ended October 3, 2009 and in subsequent reports on Forms 10-Q and 8-K and other filings made with the SEC by Disney.

# # #

**Contacts**
Zenia Mucha
Corporate Communications
(818) 560-5300

Jonathan Friedland

# Bloomberg

## Disney Completes Acquisition of Playdom Social-Game Company

By Andy Fixmer - Aug 27, 2010

Walt Disney Co. completed the $563.2 million acquisition of Playdom Inc., the second-biggest maker of games played on the Facebook and MySpace websites.

The closing was announced today in an e-mailed statement. Closely held Playdom's former owners may receive as much as $200 million more if performance goals are met, Burbank, California- based Disney said when the deal was announced.

Disney, the world's largest media company, gained 84 cents to $32.78 at 4 p.m. in New York Stock Exchange composite trading. The stock has added 1.6 percent this year.

To contact the reporter on this story: Andrew Fixmer in Los Angeles at afixmer@bloomberg.net

©2010 BLOOMBERG L.P. ALL RIGHTS RESERVED.

Case: 09-57389   Doc# 40   Filed: 09/14/10   Entered: 09/14/10 20:09:17   Page 12 of 29



# Consortium of investors sells Playdom to Walt Disney Company

Posted on: Mon, 30 Aug 2010 14:42:28 EDT
Symbols: DIS

Aug 30, 2010 (Datamonitor Financial Deals Tracker via COMTEX) --

A consortium of venture investors has sold Playdom, Inc., a social gaming company, to The Walt Disney Company, a diversified entertainment company.

The investors include Lightspeed Venture Partners, Norwest Venture Partners and Steamboat Ventures, LLC. All the parties involved in the transaction are based in the US.

Announcement (July 27, 2010):

A consortium of venture investors has agreed to sell Playdom to Disney.

The investors include Lightspeed Venture Partners, Norwest Venture Partners and Steamboat Ventures.

Playdom shareholders will receive total consideration of $563.2 million, subject to certain conditions, and a performance-linked earn-out of up to $200 million.

The transaction is expected to close by the end of 2010.

Rumor (July 23, 2010):

According to Reuters, TechCrunch reported that a consortium of venture investors may sell Playdom to Disney.

Reportedly, Disney will pay approximately $500 million as a consideration to Playdom.

Latham & Watkins LLP is acting as legal advisor to Disney. Gibson, Dunn & Crutcher LLP is acting as legal advisor to Playdom.

Deal Type - Venture Finance
Sub-Category Exit
Deal Status - Completed: 2010-08-28

## Deal Participants

Target (Company) - Playdom, Inc.
Acquirer (Company) The Walt Disney Company

## Deal Rationale

By acquiring Playdom, Disney will strengthen its digital gaming portfolio, acquire a first-rate management team and provide consumers new ways to interact with the company on popular social networks like Facebook and MySpace. This acquisition furthers Disney's strategy of allocating capital to high-growth businesses that can benefit from its many characters, stories and brands, delivering them in a creatively compelling way to a new generation of fans on the platforms they prefer. Disney expects Playdom's expertise in social gaming software tools, business intelligence and rapid innovation to broadly benefit Disney Interactive Media Group, which already has a substantial global presence in online, console and mobile gaming.

For full details on Walt Disney Co The (DIS) DIS, Walt Disney Co The (DIS) has Short Term PowerRatings at TradingMarkets. Details on Walt Disney Co The (DIS) Short Term PowerRatings is available at This Link.

Case: 09-57389    Doc# 40    Filed: 09/14/10    Entered: 09/14/10 20:09:17    Page 13 of 29

From: Alan Wootton <alex_woods66@yahoo.com>
Subject: Re: Playdom news
Date: Fri, 6 Aug 2010 15:57:28 -0700
To: Oxana Wootton oxananonurgent@gmail.com

Ok, totally back of the envelop. Don't hold me to any of this because it might not happen. You are very good at not answering questions while asking more. However I am advised by my lawyer, my therapist (and we should do that), my pastor, and my mother to give more than I take and to not create an atmosphere of confrontation.

I am expecting something like $80,000 after taxes in something like 6 weeks. I would like to move, I would like to settle my bill with you. I would like to fix the AC in my car. It would be nice to have money again. I could pay Jimmy's dentist.
I know I have to 'go first' so I have, you are always like that. I expect that I will have to go first when it comes to having the family court rule on my arrears. My first priority is to pay you and not worry about that anymore.

Now, your turn. I asked some questions. Please answer them. What does your BK lawyer say?

Cheers – a

# YOU PLUS, INC

February 11, 2009

Alan Wootton
6075 Paso Los Cerritos
San Jose, CA 95120

## Re: Employment Agreement

Dear Alan:

On behalf of You Plus, Inc. (the "Company"), I am pleased to offer you employment in the position of Software Engineer, reporting to the Company's CEO. This letter sets out the terms of your employment with the Company, which will start on or before February 23, 2009.

You will be paid a starting base salary of $6,666.66 semi-monthly (which equals $160,000.00 per year), less applicable tax and other withholdings. This position is an exempt position, which means you are paid for the job and not by the hour. Accordingly, you will not receive overtime pay if you work more than 8 hours in a workday or 40 hours in a workweek.

You will also be eligible to participate in various Company fringe benefit plans, including, 401(k), and vacation programs in accordance with the Company's benefit plan requirements.

Subject to the approval of the Company's Board of Directors, you will be granted an option to purchase 125,000 shares of Company common stock under the Company's stock option plan at an exercise price equal to the fair market value of that stock on your option grant date. Your option will vest over a period of four years, and will be subject to the terms and conditions of the Company's stock option plan and standard form of stock option agreement, which you will be required to sign as a condition of receiving the option.

Your employment with the Company is "at will." This means it is for no specified term and may be terminated by you or the Company at any time, with or without cause or advance notice. In addition, the Company reserves the right to modify your compensation, position, duties or reporting relationship to meet business needs and to decide on appropriate discipline.

As a condition of your employment, you will be required to sign the Company's standard form of employee nondisclosure and assignment agreement (a copy of which is enclosed), and to provide the Company with documents establishing your identity and right to work in the United States. Those documents must be provided to the Company

100 VIEW STREET, STE 203
MOUNTAIN VIEW, CA 94041

PHONE   (650) 396-7407
FAX   (650) 965-1537
E-MAIL   admin@youplusplus.com

Case: 09-57389    Doc# 40    Filed: 09/14/10    Entered: 09/14/10 20:09:17    Page 15 of 29

within three business days of your employment start date.

In the event of any dispute or claim relating to or arising out of your employment relationship with the Company, this agreement, or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, defamation, wrongful termination or age, sex, sexual orientation, race, color, national origin, ancestry, marital status, religious creed, physical or mental disability or medical condition or other discrimination, retaliation or harassment), you and the Company agree that all such disputes shall be fully resolved by confidential, binding arbitration conducted by a single arbitrator through the American Arbitration Association ("AAA") under the AAA's National Rules for the Resolution of Employment Disputes then in effect, which are available online at the AAA's website at www.adr.org or by requesting a copy from [the Human Resources Department]. You and the Company hereby waive your respective rights to have any such disputes or claims tried before a judge or jury.

This agreement and the non-disclosure and stock option agreements referred to above constitute the entire agreement between you and the Company regarding the terms and conditions of your employment, and they supersede all prior or contemporaneous negotiations, representations or agreements between you and the Company. The provisions of this agreement regarding "at will" employment and arbitration may only be modified by a document signed by you and an authorized representative of the Company.

Alan, we look forward to working with you at the Company. Please sign and date this letter on the spaces provided below to acknowledge your acceptance of the terms of this agreement. This offer, if not accepted, will expire at end of business on February 12, 2009.

Sincerely,

YOU PLUS, INC.

By _____
Dan Yue
CEO

I agree to and accept employment with You Plus, Inc. on the terms and conditions set forth in this agreement. I understand and agree that my employment with the Company is at-will.

X _____

Signature of Alan Wootton

Dated: ~ /1 8/0 8 _____

000002

# PLAYDOM, INC.
## NOTICE OF GRANT OF STOCK OPTION
### (NON-IMMEDIATELY EXERCISABLE)

The Participant has been granted an option (the *"Option"*) to purchase certain shares of Stock of Playdom, Inc. pursuant to the Playdom, Inc. 2008 Stock Plan (the *"Plan"*), as follows:

| | |
|---|---|
| Participant: | Allen T. Wooton |
| Date of Grant: | March 11, 2009 |
| Number of Option Shares: | 125,000. |
| Exercise Price: | $0.04 |
| Initial Vesting Date: | February 19, 2010 |
| Option Expiration Date: | March 10, 2019 |
| Tax Status of Option: | Incentive Stock Option. |
| Vested Shares: | Except as provided in the Stock Option Agreement, the number of Vested Shares (disregarding any resulting fractional share) as of any date is determined by multiplying the Number of Option Shares by the *"Vested Ratio"* determined as of such date as follows: |

| | Vested Ratio |
|---|---|
| Prior to Initial Vesting Date | 0 |
| On Initial Vesting Date, provided the Participant's Service has not terminated prior to such date | 1/4 |
| **Plus** | |
| During Participant's continuous Service from Initial Vesting Date until the Vested Ratio equals 1/1, on the same day of each succeeding calendar month thereafter (or if there is no such day in any month, then the last day of such calendar month) an additional | 1/48 |

The Exercise Price represents an amount the Company believes to be no less than the fair market value of a share of Stock as of the Date of Grant, determined in good faith in compliance with the requirements of Section 409A of the Code. However, there is no guarantee that the Internal Revenue Service will agree with the Company's determination. A subsequent IRS determination that the Exercise Price is less than such fair market value could result in adverse tax consequences to the Participant. By signing below, the Participant agrees that the Company, its directors, officers and shareholders shall not be held liable for any tax, penalty, interest or cost incurred by the Participant as a result of such determination by the IRS. The Participant is urged to consult with his or her own tax advisor regarding the tax consequences of the Option, including the application of Section 409A.

By their signatures below, the Company and the Participant agree that the Option is governed by this Grant Notice and by the provisions of the Plan and the Stock Option Agreement, both of which are attached to and made a part of this document. The Participant acknowledges receipt of copies of the Plan and the Stock Option Agreement, represents that the Participant has read, and is familiar with their provisions, and hereby accepts the Option subject to all of their terms and conditions.

PLAYDOM, INC.

By: _____

Its: CEO

Address: 100 View Street, Suite 203
Mountain View, CA 94041

PARTICIPANT          408 485 4619

Signature _____

Date  3/17/09

Address  6075 Paso los Cerritos
San Jose 95120

ATTACHMENTS: 2008 Stock Plan, as amended to the Date of Grant; Spouse Consent; Stock Option Agreement (Non-Immediately Exercisable); Exercise Notice; and Assignment Separate from Certificate

000046

27259/00003/SF/5255886.1

# PLAYDOM, INC.
## NOTICE OF GRANT OF STOCK OPTION
### (NON-IMMEDIATELY EXERCISABLE)

The Participant has been granted an option (the *"Option"*) to purchase certain shares of Stock of Playdom, Inc. pursuant to the Playdom, Inc. 2008 Stock Plan (the *"Plan"*), as follows:

| | |
|---|---|
| Participant: | Alan Wootton |
| Date of Grant: | 2/3/2010 |
| Number of Option Shares: | 8,000 |
| Exercise Price: | $0.85 |
| Initial Vesting Date: | 2/3/2011 |
| Option Expiration Date: | 2/2/2020 |
| Tax Status of Option: | Incentive Stock Option |
| Vested Shares: | Except as provided in the Stock Option Agreement, the number of Vested Shares (disregarding any resulting fractional share) as of any date is determined by multiplying the Number of Option Shares by the *"Vested Ratio"* determined as of such date as follows: |

| | Vested Ratio |
|---|---|
| Prior to Initial Vesting Date | 0 |
| On Initial Vesting Date, provided the Participant's Service has not terminated prior to such date | 1/4 |
| **Plus** | |
| During Participant's continuous Service from Initial Vesting Date until the Vested Ratio equals 1/1, on the same day of each succeeding calendar month thereafter (or if there is no such day in any month, then the last day of such calendar month) an additional | 1/48 |

The Exercise Price represents an amount the Company believes to be no less than the fair market value of a share of Stock as of the Date of Grant, determined in good faith in compliance with the requirements of Section 409A of the Code. However, there is no guarantee that the Internal Revenue Service will agree with the Company's determination. A subsequent IRS determination that the Exercise Price is less than such fair market value could result in adverse tax consequences to the Participant. By signing below, the Participant agrees that the Company, its directors, officers and shareholders shall not be held liable for any tax, penalty, interest or cost incurred by the Participant as a result of such determination by the IRS. The Participant is urged to consult with his or her own tax advisor regarding the tax consequences of the Option, including the application of Section 409A.

By their signatures below, the Company and the Participant agree that the Option is governed by this Grant Notice and by the provisions of the Plan and the Stock Option Agreement, both of which are attached to and made a part of this document. The Participant acknowledges receipt of copies of the Plan and the Stock Option Agreement, represents that the Participant has read and is familiar with their provisions, and hereby accepts the Option subject to all of their terms and conditions.

| PLAYDOM, INC. | PARTICIPANT |
|---|---|
| By: _____ | Signature _____ |
| Its: _____C. C._____ | Date 3/4/2010 |
| Address: 100 W. Evelyn, Suite 110 Mountain View, CA 94041 | Address 6075 Paso los Cerritos San Jose 95120 |

ATTACHMENTS: 2008 Stock Plan, as amended to the Date of Grant; Spouse Consent; Stock Option Agreement (Non-Immediately Exercisable); Exercise Notice; and Assignment Separate from Certificate

000044

27259/00003/SF/5255886.1

## SPOUSE CONSENT

The undersigned spouse of Alan Wootton (the "*Participant*") has read, understands, and hereby approves the Notice of Grant of Stock Option (the "*Notice of Grant*") and the Stock Option Agreement (the "*Agreement*") between Participant and the Company. In consideration of the Company's granting my spouse the right to purchase the Stock as set forth in the Notice of Grant and the Agreement, the undersigned hereby agrees to be irrevocably bound by the Notice of Grant and the Agreement and further agrees that any community property interest I may have in the Stock shall similarly be bound by the Notice of Grant and the Agreement. The undersigned hereby appoints Purchaser as my attorney-in-fact with respect to any amendment or exercise of any rights under the Notice of Grant and the Agreement.

Date: _3/4/2010_

_Wendy Wootton_
Print Name of Participant's Spouse

_Wendy Wootton_
Signature of Participant's Spouse

Address: _6075 Paso los Cerritos_
_San Jose CA 95120_

27259/00003/SF/5255886.1

000045

# EXHIBIT "D"

Search

Home    Profile    Account

## Alan Tracey Wootton

I am now an official Imagineer. The deal is done. on Wednesday

Wall    Info    Photos    Boxes

Send Alan a Message

Poke Alan

**Information**

Relationship Status:
Married to
Wendy Stutz Wootton

Current City:
San Jose, CA

**Mutual Friends**

13 friends in common          See All

Wendy          Danielle
Stutz          Chmelik
Wootton

Megan
Chmelik

**Friends**

62 friends                      See All



How to Avoid
Alzheimer's

Like

The real culprit is in your
food. Something you are
eating everyday. And the
Drug companies don't want
you to know about it.

Like

75% off Eyebrow
Design

Get the perfect set of
eyebrows from expert salon
in Los Gatos. $5 use promo
code NEW, shop now at
Trubates.

Like

Granite Countertops

**Chat (43)**

9/6/2010 12:08 PM

Case: 09-57389    Doc# 40    Filed: 09/14/10    Entered: 09/14/10 20:09:17    Page 21 of
29

Write something...

Attach: 


Alan Tracey Wootton I am now an official Imagineer. The deal is done.
September 1 at 7:27pm · Comment · Like

Wendy Stutz Wootton and Grober's Bone like this.


Jane Alexander THAT IS S AWESOME!! I want to work for Disney so badly haha
September 1 at 7:37pm · Like


Seth Ludeman What will you be doing at Disney? Aside from imagining things, of course.
September 1 at 7:42pm · Like

Rob Heiser Congratulations Alan -- sounds like a perfect fit
September 1 at 8:46pm · Like

Mike Pell You always were one Alan. You just get paid for it now
September 2 at 5:31am · Like

Write a comment...

**RECENT ACTIVITY**

Alan is now friends with Joshua Dallman and Carl Devine Bjelajac.

Alan commented on Wendy Stutz Wootton's link.

Alan commented on Blake Fullmer's photo.

Alan commented on Wendy Stutz Wootton's link.


Alan is married to Wendy Stutz Wootton. · Comment · Like

Andy Hess Congratulations!!!
August 6 at 1:47pm · Like

Write a comment...

Alan is now friends with Annie Wootton and Scott Buzuleciu.

Alan commented on Wendy Stutz Wootton's photo.

Alan commented on Annie Wootton's photo.

Alan and Christina Destro Davis are now friends. · C

Share

---

Nina Cohen 
Sean Tracey Cervantes

Scott Buzuleciu

Lauren Chindahl 

Jay Wootton

Suzie Wootton Rogers

**Likes**

11 likes

Film director

Wild Ones Staging

**Photos**

2 of 4 albums                    See All


Old time - really old time.
Created on December 25, 2007 at 7:56pm

starter
Updated on November 18, 2007 at 9:21pm

Wild Ones 

**Gifts**

1 gift

Chat (43)

Case: 09-57389    Doc# 40    Filed: 09/14/10    Entered: 09/14/10 20:09:17    Page 22 of 29

Search

Home   Profile   Account

## Wendy Stutz Wootton

**Wall**   Info   Photos   Boxes   Flair

View Photos of Wendy (58)

Send Wendy a Message

Poke Wendy

Imperfection is beauty, madness is genius, and it's better to be absolutely ridiculous than absolutely boring.

## Information

**Relationship Status:**
Married to
Alan Tracey Wootton

**Children:**
Lily Hooven

**Birthday:**
December 23, 1977

## Mutual Friends

12 friends in common

See All

Sponsored Ad

Free Restaurant Coupons!

Save with 100's of Printable Restaurant Coupons from ShopAtHome.com!

Like

Shocking Joint Discovery



Shocking joint discovery out of Boston, MA for amazing Joint Relief, learn more...

Like

Sarah in 2012?

Sarah for 2012?

Take the Newsmax Poll —

**Chat (43)**

Case: 09-57389   Doc# 40   Filed: 09/14/10   Entered: 09/14/10 20:09:17   Page 23 of 29

**Friends**

285 friends

See All

 Lauren Chwalik

 Kyle Geronimo

 Alan Tracey Wootton

 Alan Tracey Wootton

Megan Chmelik

Kyle Geronimo

Sarah Toga

Lily Hooven

Danielle Chmelik

Kraagand heather Pedersen

Suzie Wootton Rogers

Eliseo Acosta Jr

**Likes**

190 likes

2 likes in common

Body art

Cooking

Macaroni and Cheese

**Circle of Moms**

---

Write something...

Attach:

Share

Wendy Stutz Wootton Just bought myself a new civic hybrid :)



Write a comment...

22 hours ago via Facebook for iPhone · Comment · Like · Share

4 people like this.

Wendy Stutz Wootton Today's splurge



Robert Sepulveda Jr. Jealous!
September 2 at 11:40am · Like

Mike Deitchman likes this.

Jordan Nelson Have the phone not the iPad
September 2 at 8:07pm · Like

September 2 at 11:39am via Facebook for iPhone · Comment · Like · Share

Write a comment...

**Chat (43)**

Case: 09-57389    Doc# 40    Filed: 09/14/10    Entered: 09/14/10 20:09:17    Page 24 of 29

# EXHIBIT "E"

1  LARS T. FULLER (No. 141270)
   SAM TAHERIAN (No. 170953)
2  THE FULLER LAW FIRM
   60 No. Keeble Ave.
3  San Jose, CA 95126
   Telephone:(408)295-5595
4  Facsimile:(408)295-9852

5  Attorney for Debtor(s)

6

7

8

9
                    U.S. BANKRUPTCY COURT
10
              NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN JOSE DIVISION
12
   In re:                      ) Case No.: 09-57389-ASW
13                             )
   ALAN T. WOOTTON            ) CHAPTER 13
14 WENDY LYNN WOOTTON         )
                              ) **DECLARATION OF DEBTOR IN**
15                            ) **OPPOSITION TO MOTION TO DISMISS**
              Debtor(s)       )
16                            ) Date:  April 6, 2010
                              ) Time:  11:00 a.m.
17                            ) Court: 3020
                              )
18 ─────────────────────────

19 I, Alan Wootton declare and say:

20      1.   I am the debtor herein.

        2.   I was married to Oxana Wootton on July 24, 1996.
21
        3.   We divorced.  The marital status ended on Dec. 31,
22
   2007.  A true and correct copy of the judgment is attached
23
   hereto as Exhibit "A".
24
        4.   On Aug. 31, 2009 I filed the herein bankruptcy in part
25
   to deal with the support arrears.

        Declaration Debtor in Support of Opposition to Motion to Dismiss- 1

5. On Jan. 19, 2010 Oxana Wootton filed a proof of claim for $102,659.19. I disagree with the claim and will be filing an objection to the claim.

6. On Jan. 19, 2010 Oxana Wootton filed a claim for unpaid domestic support (post-petition) for $16,396.00 I also dispute this claim.

7. On Dec. 6, 2008 I filed a petition for modification of child support in Santa Clara County Superior Court. That motion, together with two other motions, were resolved by stipulation. The stipulation was filed on August 3, 2009 ["Stipulation" hereinafter]. A true and correct copy of the stipulation is attached hereto as Exhibit "B".

8. As to child support coming due after the filing of the herein bankruptcy, the Stipulation provides "Commencing February 19, 2009, base child support payable by Respondent to Petitioner shall be $1,700 per month, plus mandatory additional child support of 50% of the child-care costs related to employment or reasonably necessary job training". Stipulation and Order, Page 2, Lines 15-17.

9. As for child support, I made the following post-petition payments, verification for which is attached in Exhibit "C".

///

| MONTH | Date Paid | Amount | Method |
|---|---|---|---|
| Sept. 2009 | 9-2-2010 | $1,700 | WFB Bill Pay |
| | 9-28-10 | $1,700 | WF Bill Pay |
| Oct. 2009 | 10-26-09 | 850 | WF Bill Pay |
| Dec. 2009 | 12-18-10 | 850 | WF Bill Pay |
| Jan. 2010 | 1-4-10 | 850 | WF Bill Pay |
| | 1-25-10 | 850 | WF Bill Pay |
| Feb. 2010 | 2-08-10 | 850 | WF Bill Pay |
| | 2-09-10 | 850 | WF Bill Pay |
| | 2-10-10 | 850 | WF Bill Pay |
| | 2-16-10 | 850 | WF Bill Pay |
| March 2010 | 3-1-10 | 850 | WF Bill Pay |
| | 3-15-10 | 850 | CH No. 129 |
| TOTAL | | 11900 | |

10.    I was ordered to pay spousal support of $746.00/month.  Per the Judgment for dissolution spousal supported ended January 2010.  On March 16, 2010 I paid the sum of $3,730 by personal check which represents the post-petition spousal support for five months.  *See* Exhibit "C".

11.    Pursuant to the dissolution agreement, I was to pay $1,260/month in child care.  The Stipulation does not provide for the payment of an exact amount for child care.

12.    I made a survey of various day care facilities in the Almaden and Cupertino area.  From that survey I determined that

$820/mo. represents a median amount for daycare. In addition, $590.00/ month represents the actual cost of after school care at Meyerholz Elementary School. Accordingly, I am amenable to pay $705.00/month.

13.    In fact, on March 16, 2010, I wrote Oxana a check for $4,935 representing child care for 7 months.  See Exhibit "C".

14.    The amount of child care that I am obligated to pay is in dispute.  A hearing is set in Santa Clara County Family Court in June 2010.

15.    I am setting aside $200/month which I am prepared to tender if so ordered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 22, 2010

By/s/Alan T. Wootton_____
Debtor, ALAN T. WOOTTON