Brooke L. Miller (CA Bar 266065)
MILLER LEGAL SERVICES
158 Shrader St., #3
San Francisco, CA 94117
(415) 810-8815
(415) 592-8846

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ALAN T. WOOTTON and<br>WENDY L. WOOTTON,<br><br>Debtors. | Case No. 09-57389-ASW<br><br>Chapter 13<br><br>**NOTICE OF OPPOSITION AND OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004**<br><br>(No hearing required) |

PLEASE TAKE NOTICE THAT Debtors ALAN T. and WENDY L. WOOTTON (the "Debtors") hereby oppose the Motion for Order Directing Production of Documents and Examination Under Bankruptcy Rule 2004 (the "2004 Motion") of Interested Party OXANA WOOTTON (the "Interested Party"). The 2004 Motion is being used to harass the Debtors, is not reasonably necessary to protect Interested Party's interests, and is an improper discovery method in light of the fact that a contested matter between the Debtors and Interested Party is currently pending.

The Opposition is based on this Notice, the attached Memorandum of Points and Authorities and the Declaration of Brooke L. Miller filed concurrently herewith.

Dated: April 7, 2011

Respectfully submitted,
/s/ Brooke L. Miller
Brooke L. Miller, Attorney for Debtors Alan T. and Wendy L. Wootton

1
**OPPOSITION TO 2004 MOTION – Case No. 09-57389**

Case: 09-57389    Doc# 84    Filed: 04/07/11    Entered: 04/07/11 14:15:48    Page 1 of 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

The Debtors Alan T. and Wendy L. Wootton (the "Debtors") filed their bankruptcy case on August 31, 2009. Docket no. 1. Interested Party Oxana Wootton (the "Interested Party") is the former spouse of Debtor Alan Wootton. Declaration of Brooke L. Miller in Opposition to Motion for Order Directing Production of Documents and Examination under Bankruptcy Rule 2004 (the "BLM Decl.") ¶4. She filed two proofs of claim on January 19, 2010. BLM Decl. ¶5. Throughout this bankruptcy case, the Debtors have maintained their belief that the claims of Interested Party are excessive or without merit. An Objection to Proof of Claim 14 was filed on April 4, 2011. BLM Decl. ¶6.

One year after filing for bankruptcy, the Debtors' income increased after Debtor Alan Wootton's employer, Playdom, Inc., was purchased by the Walt Disney Company. The Debtors received a cash payout for the proceeds of the sale of Playdom, Inc. stock that they owned. BLM Decl. ¶7. As soon as the Debtors learned their income would be increasing, they informed Interested Party by e-mail. BLM Decl. ¶8. Subsequently, Interested Party filed a Motion for Relief from Automatic Stay in order to protect any interest she may have had in the increased income of the Debtors. BLM Decl. ¶9. While the motion was pending, Interested Party informed Debtor Alan Wootton by e-mail that she knew a great deal about his salary information and had copies of his paystubs. BLM Decl. ¶21. The motion was granted on November 9, 2010. Pursuant to the order granting the motion, the Debtors performed various acts. First, they placed the stock sale proceeds in trust on November 5, 2010. Second, they provided a full accounting of the sale proceeds on December 3, 2010. BLM Decl. ¶¶10-12. On or about February 7, 2011, the Debtors terminated their previous counsel and hired Miller Legal Services. The sale proceeds were then transferred from the trust account of the previous counsel and deposited in the trust

account of the Debtors' new counsel. BLM Decl. ¶¶2, 13. The acts of the Debtors served to protect any interest Interested Party may have had in the stock sale proceeds.

Due to the increase to the Debtors' income, the Debtors filed amendments to their Schedules I and J and to their proposed Chapter 13 plan on March 30, 2011. The amendments reflected increases in monthly income and expenses and proposed increased plan payments. BLM Decl. ¶20.

On or about March 9, 2011, counsel for Interested Party, Kari Silva, informed the Debtors' counsel that she would be filing a Rule 2004 Motion (the "2004 Motion") to order a production of documents and examination of Debtor Alan Wootton, pursuant to Fed.R.Bankr.P 2004. Both counsel discussed the possibility of avoiding the 2004 Motion entirely if the Debtors made certain disclosures regarding the information requested. BLM Decl. ¶14, 17. Ms. Silva filed the 2004 Motion the next day and was shortly thereafter directed by the Court to revise the motion after discussing, among other things, the scheduling of the examination and production with the Debtors' counsel. BLM Decl. ¶¶15-16.

More discussions ensued between both counsel. The discussions did not yield an agreement on the form of the production requests, however, and Ms. Silva re-filed the 2004 Motion with some revisions on March 28, 2011. BLM Decl. ¶19. Prior to the re-filing of the 2004 Motion, the Debtors' counsel told Ms. Silva that she did not believe the 2004 Motion would be proper given that an objection to one of the proofs of claim of Interested Party would shortly be filed. BLM Decl. ¶18. That objection was filed on April 4, 2011. BLM Decl. ¶6. Because of that, a contested matter was pending in this bankruptcy case.

//

//

//

## II. ARGUMENT

This Court's jurisdiction over this Opposition is pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") has often been characterized as a "fishing expedition" and as having unfettered and broad scope. An examination of the debtor pursuant to Rule 2004 can relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. Fed.R.Bankr.P. 2004(b). However, Rule 2004 is not without limitations.

### A. A Related Contested Matter Between the Debtors and Interested Party Is Pending.

A well recognized limitation of Rule 2004 "is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed.R.Bankr.P. 7026 *et seq.*, rather than by a [Rule 2004] examination." *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (1996). This is the pending proceeding limitation and in order for it to apply to a Rule 2004 request, the pending proceeding must be related to the evidence sought to be discovered. *Id* at 29.

In the *Bennett Funding* case, the requesting party, the trustee, had filed an adversary proceeding alleging wrong-doing based on various financial dealings between the debtor and non-debtor third parties. The adversary proceeding was filed one day before the order granting the trustee's request for a 2004 examination was signed. *Id* at 26. Ruling on an order to show cause to block the 2004 request, the court found that the financial dealings between the debtor and the third parties were a "financial superweb" that was so connected to the evidence sought under the 2004 request that it was nearly impossible to separate the evidence sought in the 2004 request from the subject matter of the adversary proceeding. *Id* at 29-30. The court granted the

order to block the trustee's 2004 request. *Id* at 30.

Here, Interested Party filed a proof of claim on January 19, 2010 ("Claim 14"). Claims Register no. 14. An objection to Claim 14 was filed on April 4, 2011 (the "Objection to POC 14"). Docket no. 81. An objection to a creditor's claim is a contested matter. Fed.R.Bankr.P. 9014. Objection to POC 14 addresses Interested Party's assertions that Debtors have failed to make certain post-petition domestic support obligation payments. Both Claim 14 and Objection to POC 14 deal intimately with acts and conduct of the Debtors, with the Debtors' liabilities and financial condition, and with matters which may directly affect the administration of the Debtors' estate. Claim 14 asserts that certain acts-the payments to be made-were not made by the Debtors. It asserts that Debtors remain liable for post-petition domestic support. If Claim 14 is shown to have been fully satisfied, then the debtors' estate would not be liable for any amounts asserted as owing in Claim 14. Such a showing would directly affect the administration of Debtors' estate.

Given the broad scope of Rule 2004, Interested Party's 2004 Motion and the pending contested matter between Interested Party and the Debtors directly relate to one another. Therefore, the pending proceeding limitation applies here and Interested Party should seek any desired discovery according to Fed.R.Bankr.P. 7026 *et seq.*, just as the trustee in *In re Bennett Funding* was required to do.

**B. The 2004 Motion of Interested Party Is Not Reasonably Necessary to Protect Her Interests Because Her Interests Are Already Protected and She Already Has the Requested Documents.**

If a debtor challenges the right of the examiner to conduct a Rule 2004 examination, the examiner must establish that good cause exists for taking the examination. Good cause is established where the examiner shows that the examination is reasonably necessary for the protection of its legitimate interests. *In re Hammond*, 140 B.R. 197, 201 (1992). Put another

way, good cause is ordinarily shown when the examination and requested documents are necessary to establish the claim of the party seeking the examination or the document production. *Id* at 202. In the *Hammond* case, a credit card company attempted to determine whether the debtor had committed fraudulent acts in applying for the company's credit line. The creditor made a Rule 2004 request and, upon the debtor's motion to quash, the bankruptcy court denied the creditor's request. On appeal, the District Court reversed the bankruptcy court's decision. *Id*. The creditor was allowed to proceed with the 2004 request to protect its legitimate interests and search for any fraud on the part of the debtor.

### 1. The Interests of Interested Party are Already Protected.

Interested Party's stated purpose for the 2004 request is based on the actions of Debtor Alan Wootton, which Interested Party alleges to be both actions in bad faith and actions repeated throughout the Debtors' bankruptcy case. Docket no. 76, page 3, ¶¶11-15. However, bad faith or fraud on the part of the Debtors has never been proven by Interested Party and the allegations of repeated bad faith are without merit.

In her 2004 Motion, Interested Party states that the 2004 examination is necessary because Debtor Alan Wootton failed to list his interest in Playdom, Inc. stock in the original bankruptcy filing, stock that later was discovered to be quite valuable. *Id* at ¶11. While it is true that the Debtors did not list the Playdom, Inc. stock interest in their original bankruptcy filing, it is also true that not listing the stock was merely a mistake, not fraud or bad faith, on the part of the Debtors. Furthermore, as soon as the Debtors discovered that the value of the stock was going to increase substantially, Debtor Alan Wootton wrote an e-mail to Interested Party, informing her that he might receive a substantial cash payout for his stock interest in Playdom, Inc. BLM Dec., ¶8. Only three months after the payout, a full accounting of the cash Debtors received from the sale of the Playdom, Inc. stock was filed with this Court. BLM Decl. ¶12.

Also, Interested Party successfully moved this Court to order the cash be placed in trust. BLM Decl. ¶10. A total of $94,941.90 has safely been tucked away in the trust accounts of Debtors' previous and current counsel since November 2010. BLM Decl. ¶¶11, 13. Any interest that Interested Party may have in the initial cash payout of the Playdom, Inc. stock is therefore currently protected.

Interested Party also alleges that Debtors' previous counsel made certain statements and promises to Interested Party's counsel that the Debtors should be held to. Docket no. 76, page 3, ¶11. In the first place, the Debtors terminated their previous counsel and any promises or statements their previous counsel made are now irrelevant. Secondly, Debtors' previous counsel made statements that were inaccurate. BLM Decl. ¶2. Specifically, based on those statements, Interested Party alleges that Debtors have been receiving $10,000 per month in continued cash payouts for the Playdom, Inc. stock. Interested Party further alleges that no disclosure has been made of the Playdom, Inc. assets to date. Docket no. 76, page 3, ¶11. In fact, via amendments to Schedules I and J filed on March 30, 2011, the Debtors fully disclosed the assets and liabilities they have with respect to the monthly payout of Playdom, Inc. stock. BLM Decl. ¶20. From the monthly cash payout of Playdom, Inc. stock, the Debtors receive $8,435.57 per month and pay monthly taxes of $3,635. Docket no. 78.

The Debtors' monthly income has increased since the filing of their bankruptcy case. Because of that fortunate circumstance and in the interest of full disclosure, the Debtors amended their proposed Chapter 13 Plan on March 30, 2011. The First Amended Plan demonstrates good faith on the part of the Debtors since all of their disposable monthly income is dedicated to the monthly plan payment. BLM Decl. ¶20, Docket no. 79. The Debtors have disclosed their assets and liabilities and their disclosure is yet another reason why the interests of Interested Party are already protected.

## 2. Interested Party Already Has the Requested Documents.

Facing a debtor's challenge to a Rule 2004 request, the requesting party must show that good cause exists for taking the examination, and one way to show good cause is to establish that the requested documents are necessary to establish the claim of the requesting party. *In re Hammond* at 202. Here, Interested Party cannot show that the documents she has requested are necessary to establish her claim because she already has most of the documents and can establish her claims without conducting a Rule 2004 examination.

In her 2004 Motion, Interested Party makes eleven document requests. Docket no. 76, pages 34-35. Of the eleven requests, Interested Party already has the documents related to eight of them. The first request seeks salary information for both Debtors from January 2009 to date. In a long e-mail to Debtor Alan Wootton dated September 24, 2010, Interested Party admitted to already having his paystubs and salary information. BLM Decl. ¶21. Also, the Statement of Financial Affairs already shows the Debtors' income information for 2009. Docket No. 1. With respect to the third and fifth production requests, Interested Party produced the related documents in her own Motion for Relief from the Automatic Stay, Exhibits C and F. Docket nos. 35-2 and 35-3. The August 6, 2010 e-mail from Debtor Alan Wootton to Interested Party also relates to the third document request. BLM Decl. ¶8.

In fact, the first, third, fourth, seventh and tenth production requests are satisfied by the recent amendments to Schedules I and J on March 30, 2011. Docket no. 78. The information requested in the fourth production request is contained in both the amended Schedules I and J as well as Debtor Alan Wootton Declaration of December 3, 2010. Docket nos. 54, 78. Finally, the eighth, ninth and tenth production requests have been satisfied by either disclosures already made in the bankruptcy schedules or by Interested Party's own Motion for Relief from Automatic Stay, Exhibit D. Docket no. 35-3.

Given that Interested Party already has the requested documents and should be able to establish her claims without a Rule 2004 examination, allowing the 2004 Motion would only waste the time and money of the Debtors and Interested Party.

**C.     The 2004 Motion of Interested Party Is Being Used to Harass the Debtors.**

As stated above, although Rule 2004's scope is broad, it is not without limitation. "Significantly, Rule 2004 examinations may not be used for purposes of abuse or harassment." *In re Duratech Industries, Inc.*, 241 B.R. 283, 289 (1999). In *Duratech Industries*, the party requesting the Rule 2004 examination was not allowed to conduct the examination since the court found that its application to do so "did not pass the 'smell test.'" *Id*. The court stated that the evidence in the case supported a finding that the requesting party was merely attempting to harass and abuse the party to be examined. *Id* at 290.

Like the requesting party in *Duratech Industries*, Interested Party is using her 2004 Motion to harass the Debtors. As shown above, Interested Party already has most of the documents she requests in her 2004 Motion. In some cases, she has even submitted the documents to the Court herself. Docket nos. 35-2 and 35-3. In addition, the production requests themselves are harassing in that they demand documents related to information from four different and unrelated time periods. Docket no. 76.

The requesting party in *Duratech Industries* made its 2004 request only after the court issued an injunction against it. *Duratech Industries* at 289. Similarly, Interested Party has made her 2004 Motion only after she did not get her way. Specifically, Interested Party has asked the Debtors to agree to pay the debts she alleges they owe her in full despite the fact that Debtors have repeatedly stated they believe Interested Party's claims against them to be excessive or have shown them to be completely without merit. Docket nos. 15, 21, 32, 47, 58, 68 and 81.

Via her counsel, Interested Party continues to harass the Debtors through their counsel. In

a phone conversation on or about March 9, 2011, Kari Silva informed Debtors' counsel that the 2004 examination would be unnecessary if certain disclosures were made by the Debtors. Debtors' counsel responded by saying that she was working on amendments to the Chapter 13 Plan and certain schedules and that those amendments would disclose the information sought in the 2004 Motion. Ms. Silva recounted the phone conversation in an e-mail to Debtors' counsel on March 22, 2011. BLM Decl. ¶17. The amendments were filed on March 30, 2011, and the information sought has been disclosed as promised. Docket nos. 78-79. Yet Ms. Silva has not followed through with her promise and she continues to press the unnecessary 2004 Motion.

Furthermore, on April 4, 2011, Debtors' counsel contacted Ms. Silva to determine whether she would be making an appearance in this Court the following day at a continued confirmation hearing, for which a tentative ruling to continue the confirmation hearing further had already been issued. BLM Decl. ¶23. Responding the following morning, Ms. Silva stated that she would make an appearance in the hopes that the Court would rule on the 2004 Motion. Debtors' counsel then informed Ms. Silva that the Court had set a deadline for the filing of this Opposition and that appearing in court prior to the filing deadline would be premature. Ms. Silva stated unequivocally that she would still be making an appearance. BLM Decl. ¶¶22, 24-25.

In order to protect the Debtors' interests against the impending argument of Ms. Silva, Debtors' counsel traveled fifty miles one-way to attend the April 5, 2011 hearing. In direct contradiction of her stated purpose for attending the hearing, Ms. Silva failed to take any action when this case was called. She did not make an appearance. BLM Decl. ¶¶26-27. Ms. Silva misrepresented her purpose to Debtors' counsel so as to harass Debtors and their counsel and to cause Debtors' counsel to lose valuable time and money.

The behavior of Interested Party and her counsel demonstrates that the 2004 Motion is being used to harass the Debtors by doing nothing more than wasting their time, energy and

money. Case law makes clear that such a purpose for a 2004 examination request is entirely improper.

### III. CONCLUSION

For the reasons discussed above, Interested Party's Motion for Order Directing Production of Documents and Examination Under Bankruptcy Rule 2004 should be denied.

Dated: April 7, 2011                                            MILLER LEGAL SERVICES

/s/ Brooke L. Miller
Brooke L. Miller
Attorney for Debtors Alan T. and Wendy L. Wootton