Brooke L. Miller (CA Bar 266065)
MILLER LEGAL SERVICES
158 Shrader St., #3
San Francisco, CA 94117
(415) 810-8815
(415) 592-8846

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ALAN T. WOOTTON and<br>WENDY L. WOOTTON,<br><br>Debtors. | Case No. 09-57389-ASW<br><br>Chapter 13<br><br>**DECLARATION OF BROOKE L. MILLER IN OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004**<br><br>(No hearing required) |

I, Brooke L. Miller, declare the following:

    1.    I am an attorney and a solo practitioner with the firm Miller Legal Services, which is located in San Francisco, CA, and I represent Debtors Alan T. and Wendy L. Wootton (the"Debtors") in the above-captioned Chapter 13 bankruptcy case.

    2.    I am informed and believe that the Debtors terminated their previous counsel, the Fuller Law Firm, on February 7, 2011 because it made inaccurate statements to others regarding their case and because they did not believe its representation of them was in the best interests of the bankruptcy estate and all parties involved in the case.

    3.    The Debtors filed their case on August 31, 2009. Docket no. 1.

4. Interested Party Oxana Wootton (the "Interested Party") is the former spouse of Debtor Alan Wootton, and she is represented by Kari Silva of Campeau Goodsell Smith.

5. Interested Party filed two proofs of claim on January 19, 2010. Claims Register nos. 13 and 14.

6. Throughout this bankruptcy case, the Debtors have repeatedly stated that they believe the two claims of Interested Party to be excessive. Docket nos. 15, 21, 32, 47, 58 and 68. I am informed and believe that negotiations regarding the Interested Party's claims between Debtors' previous counsel and Interested Party have not resulted in any acceptable resolution. Since negotiations have failed, I filed an Objection to Proof of Claim 14 on April 4, 2011. Docket no. 81.

7. I am informed and believe that one year after this case was filed, the Debtors' income unexpectedly increased due to Playdom, Inc., the employer of Debtor Alan Wootton, being purchased by the Walt Disney Company. The increase in income was in the form of cash proceeds from the sale of stock in Playdom, Inc.

8. Debtor Alan Wootton informed Interested Party of the increase in income via e-mail message on August 6, 2010. A true and correct copy of the August 6, 2010 e-mail is attached hereto as Exhibit A.

9. On September 10, 2010, Interested Party filed a Motion for Relief from Automatic Stay to protect any interest she may have in the proceeds of the stock sale. Docket no. 35.

10. An order granting Interested Party's Motion for Relief from Automatic Stay was entered on the docket on November 9, 2010. Docket no. 52.

11. Pursuant to the order, Debtors placed the sale proceeds in the trust account of their previous counsel on November 5, 2010. A true and correct copy of the deposit record is

attached hereto as Exhibit B.

12. Pursuant to the order, Debtors also filed a full accounting of the sale proceeds with the Court on December 3, 2010. Docket no. 54.

13. After Debtors' previous counsel was terminated, the sale proceeds were placed in my trust account, pursuant to a stipulation to transfer the funds executed by Ms. Silva and myself. A true and correct copy of the Notice of Deposit of Transferred Funds, required by the stipulation, that I e-mailed to Ms. Silva is attached hereto at Exhibit C.

14. On or about March 9, 2011, Ms. Silva informed me during a phone conference that she would be filing a motion to order a Rule 2004 production and examination of Debtor Alan Wootton (the "First 2004 Motion"). During our conference, Ms. Silva said she would withdraw the motion if the information sought in the First 2004 Motion was disclosed via amendments to the schedules in the Debtors' bankruptcy case.

15. On March 10, 2011, Ms. Silva filed the First 2004 Motion. Docket no. 62.

16. Shortly afterward, the Court directed Ms. Silva to revise the First 2004 Motion and discuss production and examination dates with me. Docket no. 64.

17. Subsequently, Ms. Silva contacted me and we discussed the production and examination dates via e-mail and phone conference. In an e-mail on March 22, 2011, Ms. Silva confirmed her intention to withdraw the First 2004 Motion. A true and correct copy of the e-mail exchange discussing the First 2004 Motion is attached hereto as Exhibit D. Ms. Silva's confirmation of possibly withdrawing the First 2004 Motion is on page 6.

18. During the discussions, I informed Ms. Silva that I believed a Rule 2004 examination would be improper because I was about to file an objection to one of Interested Party's claims. Exhibit D.

19. Because we could not reach an agreement on the production requests in the First

2004 Motion, Ms. Silva filed a revised motion on March 28, 2011 (the "Second 2004 Motion"). Docket no. 76.

20. On March 30, 2011, I filed amendments to Schedules I and J and the Chapter 13 Plan to reflect the Debtors' increased income and expenses and to propose increased monthly plan payments. Docket nos. 78-79.

21. I am informed and believe that Interested Party already has the documents requested in the Second 2004 Motion. In a long e-mail to Debtor Alan Wootton on September 24, 2010, Interested Party admitted that she knew a great deal about his salary information and had his paystubs. A true and correct copy of the first page of the e-mail is attached hereto as Exhibit E.

22. On April 4, 2011, I received a telephone call from Kristi Gerrior, clerk to this Court, who informed me I had until Thursday, April 7, 2011, to file an opposition to the Second 2004 Motion.

23. Also on April 4, 2011, I reviewed the Order of Call & Tentative Rulings calendar of this Court and noted that the Court had issued a tentative ruling to continue the confirmation hearing scheduled for April 5, 2011 until July 26, 2011.

24. Directly afterward, I contacted Ms. Silva by e-mail to determine whether she would be making an appearance the next day at the continued confirmation hearing.

25. On April 5, 2011, Ms. Silva informed me by return e-mail that she would be making an appearance in the hopes of getting a determination on the Second 2004 Motion. I then informed Ms. Silva of the opposition deadline given to me by Ms. Gerrior and asked Ms. Silva again whether she would be making an appearance. Ms. Silva then stated that she would still make an appearance. A true and correct copy of the e-mail exchange discussing Ms. Silva's appearance is attached hereto as Exhibit F.

26. I attended the April 5, 2011 continued confirmation hearing in order to present counter-arguments when Ms. Silva made her assured appearance. My attendance required approximately 100 miles of round trip travel and 3 hours of time.

27. When this matter was called by the Court, Ms. Silva did not make an appearance. She remained seated and then left the courtroom approximately 10 minutes into the hearing.

I declare under penalty of perjury of the laws of the United States of America and the State of California that the forgoing is true and correct. This declaration was executed in San Francisco, CA.

Dated: April 7, 2011                    MILLER LEGAL SERVICES

/s/ Brooke L. Miller
Brooke L. Miller
Attorney for Debtors Alan T. and Wendy L. Wootton