CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
KARI L. SILVA, #257033
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555

Attorneys for Moving Party
Oxana Wootton

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | |
|---|---|
| In Re:<br><br>Alan T. and Wendy Lynn Wootton,<br><br>Debtors.<br>_____ | Case No: 09-57389 ASW<br><br>Chapter 13<br><br>[ No Hearing Required Under L.B.R. 2004-1 |

<u>RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004</u>

### I. INTRODUCTION

Debtors Alan T. and Wendy L. Wootton (the "Debtors") have filed an opposition to the Motion for Order Directing Production of Documents and Examination Under Bankruptcy Rule 2004 submitted by OXANA WOOTTON ("Moving Party" and/or "Interested Party") on the basis that that the 2004 examination is being used to harass the Debtors, is not reasonably necessary to protect

Interested Party's interests, and is an improper discovery method in light of the fact that a contested matter between the Debtors and Interested Party is currently pending. There has been material misrepresentations submitted in the Debtor's opposition to the 2004 examination, but the individual misrepresentations will not be addressed as they are not relevant to the court issuing an order directing production of documents and examination under Bankruptcy Rule 2004.

## II. FACTS

As previously stated, Moving Party is the former spouse of Debtor Alan T. Wootton ("Debtor"). At the time the Debtors filed their bankruptcy petition, Debtor owed support arrears to Interested Party in the amount of $74,731.77. (See POC No. 13) Debtor also owed an equalization payment for the division of their community property assets in the amount of $27,927.42 which is treated as a general unsecured debt in a Chapter 13. (See POC No. 13)

Since the above stated bankruptcy was filed, Interested Party has had to incur substantial costs to ensure her rights are protected. First, the Debtor failed to pay his post petition support arrears, Interested Party was forced to file a Motion to Dismiss the Debtors Chapter 13 Plan for failure pay post petition support payments. (See Docket No. 22) To protect her rights Interested Party, at the advice of her former counsel, also filed a proof of claim. (See POC 14) The hearing on the motion to dismiss was continued to address Debtors' objections. (See Docket No. 33) Per the Debtors own documents it was not until September 2010 that the Debtor substantially paid his post petition support payments. (See Docket No. 81 Exhibit E). Moving Party acknowledged that the payments were substantially paid in her pre-hearing conference statement filed March 28, 2011 (Docket No. 75). Despite that acknowledgement Debtors filed an objection to Proof of Claim 14 on April 5, 2011 which specifically addressed the post-petition support payments. (See Docket No. 81).

The Debtors also failed to list Alan T. Wootton's interest in PLAYDOM stock in their

2

RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004

bankruptcy schedules and at the 341 meeting of creditors, while under oath, Debtor Alan T. Wootton denied owning any interest in PLAYDOM. (see Docket No. 1 and Docket No. 35 Declaration of Oxana Wootton ¶8). Debtor then received $136,004.39 from the sale of the undisclosed assets. (See Docket No. 54). Upon learning of the stock purchase Moving Party made a request to Debtor's family law counsel that the funds be placed in trust, but that request went unanswered. (See Docket No. 35 Declaration of Oxana Wootton ¶11) After, Moving Party found evidence that the funds were being spent on luxury items such as electronics and a new car Moving Party made an emergency ex-parte application to hear the matter on shortened time. See Docket No. 35 and Docket No. 35 Declaration of Oxana Wootton ¶12). The request was granted and the court ruled the funds were property of the estate and needed to be placed in trust until further order by the court. (See Court Notes September 22, 2010). Moving Party could not obtain approval of the proposed order from Debtor's counsel and therefore the matter was discussed in front of the court at the Chapter 13 confirmation calendar on November 2, 2010 which also concluded the motion to dismiss. (See Court docket notes November 2, 2010). At that time, Moving Party requested and the Court granted her request to provide an accounting of the funds and confirm that all remaining funds were placed in trust. (See Court docket notes November 2, 2010). By the time Moving Party received confirmation that the funds had been placed in trust the Debtors had already spent $41,062.49 in estate assets. (See Docket No. 54).

      The Debtors then filed an adversary action against Moving Party to determine estate assets, which Moving Party had to take the time and expense to defend. (See Related Adversary Case. No. 10-05359). Ultimately, Moving Party was successful in having the motion to dismiss granted, the court allowed the Debtors 30 days to amend their complaint, which they failed to do and therefore the adversary is now closed.

      Moving Party was then informed by Debtor's previous counsel that the PLAYDOM stock payments were ongoing, a request was made of previous counsel Saman Taherian to produce those

3

RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION OF DEBTOR UNDER BANKRUPTCY RULE 2004

documents but after assurances they would be produced, they were not. Debtors then hired their current counsel Brooke Miller of Miller Law Services to represent them in this case. Again, Moving Party made requests for documents providing information on those continued payments, but no documents have been provided. (See Docket No. 76 ¶11).

On March 30, 2011, Debtors filed amended schedule I and J and an amended plan. (see Court Docket No. 78-79). The amended plan increased its plan payments from $700.00 per month to $2500.00 per month. The amended plan purports to pay 99.9% of the Debtors' outstanding debt; however, the total proof of claims in this matter total 184,566.70[1] and the total plan payments equal $115,831.16. Therefore, as stated, Debtors have only proposed a 63% repayment plan.[2] Moving Party has an interest in ensuring that the Debtors propose a plan that will pay its plan payments in full as part of her claim is a general unsecured claim.

III. ARGUMENT

**A. Purpose of the 2004 Examination and How It Is Applicable To This Case.**

The purpose of a Fed. R. Bankr. P. 2004 examination "is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors. The scope of a Rule 2004 examination is extremely broad and has often been likened to a lawful 'fishing expedition.' Rule 2004 may be used to search for assets which have been intentionally or unintentionally concealed." *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000).

Here, Moving Party is owed $74,731.77 in priority support arrears and $27,927.42 in general unsecured debt. Debtor's amended plan does not provide payment amounts that will cover all of Moving Party's claims. During the life of the bankruptcy, Debtor has failed to list substantial assets and only after spending large amounts of money on attorney fees has Moving Party been successful is

---

[1] The amount is the total proof of claims filed removing Moving Party's POC #14.
[2] The percentage is an estimate and does not include attorney fees, trustee fees and other debts that may need to be paid from the plan payments.

4

RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004

having the Debtor modify their plan.  Based on Debtor's previous actions in this case Moving Party believes that additional assets may not have been disclosed.  As Debtors counsel stated on Pg 6 line 19 of Debtors Opposition to the 2004 Examination, the Debtors have already failed to list assets in their petitions:

> "while it is true that the Debtors did not list the Playdom, Inc. stock interest in their original bankruptcy filing, it is also true that not listing the stock was merely a mistake, not fraud or bad faith, on the part of the Debtors."

The question if the Debtors have acted in bad faith or not has not been before the court, however, if the Debtors purposefully or mistakenly failed to list substantial assets then Moving Party has the right to see what other assets may intentionally or unintentionally been withheld.  That is the specific purpose of the 2004 examination and the basis for the current motion.

There is nothing that requires a creditor to rely solely on the schedules filed.  If that was the law, then there would not be a 2004 provision as all creditors would be required to rely on bankruptcy schedules filed by the debtor.  The trustee has failed to take any action relating to this matter and therefore the Moving Party much act to ensure payment of her support arrears and protect her interest as an unsecured creditor.

**B. The Related Contested Matter Between the Debtors and Interested Party Is Not A Sufficient Justification to Prohibit a 2004 Examination.**

Debtors objected to submitting to the 2004 examination on the basis that there is a contested matter between the parties.  It is notable that the objection to the claim was filed after the request for the 2004 examination and after the pre-hearing conference statement was filed by Moving Party that stating the Debtor had substantially paid his post petition support arrears.  Pursuant to 11 U.S.C. 1307(c)(11) a Debtor must stay current on post petition payments or the case can be dismissed and filing a motion to dismiss is the proper means to handle post petition support issues.  Therefore, Moving Party will be removing her proof of claim 14 and will work with opposing counsel to ensure

5

RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004

all post petition support payments have been made.  Therefore, no conflict currently exists.

Even if there was a dispute, a 2004 examination would be proper.  As stated in *In re Lufkin*, 255 B.R. 204 (Bankr. E.D. Tenn. 2000), the general rule in bankruptcy cases is that the existence of, or potential for, collateral litigation is insufficient reason to deny examination. Where the primary purpose is to benefit the bankruptcy estate, "the fact that [examination] may also produce information which in turn may collaterally be used by third parties in separate litigation outside of the bankruptcy case is no reason to restrict its use or to shield parties . . . from such possible litigation." *In re Lufkin*, 255 B.R. 204, 208-209 (Bankr. E.D. Tenn. 2000),

The Debtors refer to the *Bennett Funding* case for the proposition that the once a contested issue arises in the bankruptcy setting that a party cannot conduct a 2004 examination, but the facts of that case are dissimilar from the current matter.

The Bennette case involved a corporate Chapter 11 Debtor. *In Re Bennett Funding Group, Inc*, 203 B.R. 24 (1996).  The trustee sought a 2004 examination of the third-party Bennett who conducted business transactions with the Corporate Debtor.  The trustee requested documents from Bennett including any documents relating to the acts, conduct, assets, liability and financial condition of the Initial Debtors and any other matter relevant to the administration of these cases.  The Trustee then filed an adversary action asserting Bennett and other parties diverted in excess of $ 8.5 million from the Debtor to other corporate entities for the benefit of himself.  The court ultimately ruled that once an adversary was commenced then discovery was made pursuant to Fed. R. Bankr. P. 7026 .

Obviously, seeking financial information from a third party defendant through a 2004 examination and then subsequently filing an adversary complaint against that same party should be prohibited as the examinee is being sued by the bankruptcy estate.  However, that is not the facts in this case.  Moving Party is seeking information related solely to the bankruptcy estate to ensure all assets have been identified and listed on the relevant schedules.  The controversy discussed by

6

RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004

Case 09-57089    Doc#87    Filed: 04/10/11    Entered: 04/10/11 23:34:54    Page 6 of 9

Debtors is simply a objection to an old proof of claim that will be removed. The documents requested do not relate to that dispute. Interested Party's document requests are narrowly tailored to seek information about the bankruptcy estate and its potential assets. Therefore, an order for a 2004 examination should be granted over Debtors' objection.

### C. The 2004 Examination is Necessary to Protect Moving Party's Interest And Moving Party Does Not Have the Requested Documents.

As stated by the Debtors in their opposition, the examiner must establish good cause for taking the examination. Good cause is established where the examiner shows the examination is reasonably necessary for the protection of a legitimate interest. A legitimate interest of Moving Party is to ensure that Moving Party's claims are paid in full, if the Debtors have the means to pay those claims. In addition, a legitimate interest of Moving Party is to ensure that the Debtors have acted in good faith during their Chapter 13 bankruptcy proceeding and have not purposefully attempted to hide assets that belong to the estate or understate their income to prevent full payment of their outstanding claims.

### I. Moving Party's Interests Are Not Already Protected

Contrary to Debtor's position, Moving Party's interests are not already protected. Moving Party's claims total $102,659.10 and the funds held in trust total $94,941.90 and therefore the trust funds are insufficient to pay all of Moving Party's claims. In addition, the Debtors amended Chapter 13 plan is silent regarding those trust funds, and it appears from the amended plan that the Debtors do not intend to use those trust funds to pay Moving Party's claims. Finally, Moving Party's interests are not protected in determining if the Debtors have acted in good faith or not during the life of their bankruptcy.

Moving Party also rejects the Debtors' position that because they amended their schedules they have made full disclosure and that Moving Party's interest are now somehow protected. Without reviewing Debtors' documents Moving Party is unable to verify if the amended document are correct and the amended schedules are insufficient to determine if all assets have been identified and accounted for.

///

## II. Interested Party Does Not Have the Requested Documents

Debtors state the 2004 examination is not necessary because 1) it seeks information that the Moving Party already has and 2) Moving Party should rely on the representations made in the Debtors amended bankruptcy schedules.

Debtors argue that the Moving Party has the requested documents and therefore they should not produce the documents. Debtor's position is based on an email from September 24, 2010 (almost seven months ago). The email appears to be a portion of an email string. In addition the email is not verified by the Debtor who is the recipient, but instead the email is attached to the declaration of Debtors' Counsel, though it was not addressed to her.

It would be outside reason to suggest that Moving Party would incur the cost of the 2004 examination and the payment of copying records to receive documents she already has. Moving Party has been able to obtain some limited documents of the Debtor Alan T. Wootton, prior to September 2010 but those documents are limited.

As to the second argument, it is Moving Party's position that amendments to the schedules do not satisfy the requests of the Moving Party for production of documents.

### D. Moving Party Is Not Harassing the Debtors

Moving Party has taken no action to harass the Debtors. Unfortunately, the Debtors are currently in control. Debtor Alan T. Wootton owes Moving Party a substantial amount of child support arrears that she has not received. In addition, based on his failure to follow the family court order and provide Moving Party her share of their community property assets she is now faced with an unsecured claim for an equalization payment.

Based on the actions of the Debtors, Moving Party has incurred substantial legal costs during this pending Chapter 13 case. For example up until eleven (11) days ago, the Debtors plan proposed to pay their creditors $700 per month for a total plan payment of $18,200.00, which did not even cover the Debtor's listed priority claims.

Moving Party has had to resort to filing a motion to dismiss this Chapter 13 case in order to

8
RESPONSE TO OPPOSITION TO MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004
Case 09-57089    Doc# 87    Filed: 04/10/11    Entered: 04/10/11 23:34:54    Page 8 of 9

receive her post-petition support obligations, she has had to file a motion for relief from the automatic stay to have the Debtors stop spending assets of the estate, and she had to seek further court appearance to get the Debtor to provide an accounting of the funds received from the sale of the Playdom stock.  Now, Moving Party seeks to conduct a 2004 examination to see if all assets have been listed and if the Debtors are acting in good faith as required by the code, and again Debtors are opposing the request further increasing legal costs.  If the Debtors truly have nothing to hide, they would have no objection to producing the requested documents and submitting to a 2004 examination.

Moving Party has not been harrassing the Debtors and the Debtors fail to make that argument.

Conclusion

Moving Party has an interest in determining the full extent of the bankruptcy estate, the request is narrowly tailored and requests only documents relevant to the Debtors bankruptcy.  It appears that the Debtors are objecting to the production of documents and the 2004 examination because they are concealing assets or income that belongs to the estate. Therefore Moving Party requests the Court sign the proposed order over the objection of the Debtors.


Dated: April 10, 2011				CAMPEAU GOODSELL SMITH

						By: */s/: Kari L. Silva*
						        Kari L. Silva
						        Attorneys for Oxana Wootton