Brooke L. Miller (CA Bar 266065)
MILLER LEGAL SERVICES
158 Shrader St., #3
San Francisco, CA 94117
(415) 810-8815
(415) 592-8846

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 09-57389-ASW |
| ALAN T. WOOTTON and WENDY L. WOOTTON, | Chapter 13 |
| | **DEBTORS' OBJECTION TO CLAIM 13** |
| Debtors. | |

        Pursuant to F.R.B.P 3007 and B.L.R. 3007-1, DEBTORS ALAN T. WOOTTON

("Alan") and WENDY L. WOOTTON (collectively, the "Debtors") hereby respectfully object to

the claim filed in the above-captioned case by CLAIMANT OXANA WOOTTON ("Claimant"),

which is claim number 13, as amended ("Claim 13"), on the Claims Register maintained by the

Clerk of the Court.  The Debtors seek a Court Order disallowing Claim 13 to the extent that (a)

the priority claim of approximately $74,000 has been paid in full, (b) that the non-priority claim

of $21,708.22 has been paid in part, each due to offsets to which the Debtors are entitled, and (c)

that the non-priority claim of $6,184.33 and the priority claim of $2,170.50 are not valid and

enforceable claims against the Debtors.

//

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF FACTS

On August 31, 2009, the Debtors filed a voluntary joint bankruptcy petition under Chapter 13.  On January 19, 2010, Claimant filed Claim 13 and then amended Claim 13 on April 15, 2011.  A true and correct copy of the amended Claim 13, absent any attachments or exhibits, is attached hereto as Exhibit A.  Claim 13 involves debts allegedly owed to Claimant incurred between September 1, 2007 to August 31, 2009.  All claims filed by Claimant are based entirely on various written agreements executed by Alan and Claimant.

Alan and Claimant were married on January 24, 1996.  They separated on November 11, 2004 and their divorce was made final on December 31, 2007, pursuant to a Judgment for Dissolution endorsed on November 9, 2007.  A true and correct copy of the Judgment for Dissolution with accompanying Stipulated Judgment (the "2007 Stipulated Judgment") is attached hereto as Exhibit B.

Originally, Claim 13 asserted that Alan owed Claimant for unpaid child support, child care costs and spousal support plus interest, all of which was characterized as a priority claim pursuant to 11 U.S.C. §507(a).  Claim 13 further asserted that Alan owed Claimant a non-priority claim for a court-ordered equalization payment and a court-ordered split of three retirement accounts held by Alan and Claimant separately.  Claims Register No. 13.

When it was amended, Claim 13 increased the amount of support arrears in part by adding $936.50 for "Other Expenses".  Interest due for all support arrears up to the filing date of the Debtors' bankruptcy case was also increased.  Claims Register No. 13, Addendum 3.  Claim 13 also decreased the amount of the equalization payment claim while the claim for the retirement account split remained the same.  In total, as amended, the amount of Claim 13 increased from $102,659.19 to $105,295.53.

*Support Obligations*

Alan and Claimant had three children together and acquired various forms of property during their marriage. The 2007 Stipulated Judgment detailed the amounts of child support, child care and spousal support Alan was to pay Claimant. The amounts of child support and care and spousal support were modified from time to time. On August 3, 2009, in a document entitled "Stipulation to Modify Child Support; Order," Alan and Claimant stipulated to the first modification of support obligations (the "2009 Stipulation"). A true and correct copy of the 2009 Stipulation is attached hereto as <u>Exhibit C</u>. On August 18, 2010, another stipulation executed by the parties was filed in the family court. That stipulation did not modify any of the support obligations payable by August 31, 2009. Finally, on October 7, 2010, a document entitled "Stipulation and Order Re: Child Care Expenses" (the "2010 Stipulation") further modified the child care obligation payable by Alan. A true and correct copy of the 2010 Stipulation is attached hereto as <u>Exhibit D</u>.

The 2007 Stipulated Judgment also provided for child care costs related to employment for the oldest child. Exh. B, pg. 4, ln. 25 to pg. 5, ln. 1. Specifically, child care costs related to employment were to be reimbursed pursuant to the procedures set forth on page 3 of Attachment C of the 2007 Stipulated Judgment (the "Attachment C"). A true and correct copy of Attachment C is attached hereto as <u>Exhibit E</u>. In short, the parent who paid for child care costs related to employment was to either pay the entire cost and seek reimbursement from the other parent or pay part of the cost and notify the other parent of his or her obligation to pay the remaining portion. To get reimbursed, the paying parent was required to give the other parent an itemized statement of charges within 30 days of paying the child care cost. Exh. E, pg. 4. Any disputes about costs or reimbursement could be resolved through further family court action.

The 2009 Stipulation modified the way in which child care costs related to employment

were to be paid. It reads: "Commencing February 19, 2009, base child support payable by Respondent to Petitioner[1] shall be $1,700 per month, plus mandatory additional child support of 50% of the child-care costs related to employment or reasonably necessary job training." Exh. C, pg. 2, ¶4. However, Alan's obligation to Claimant for child care costs related to employment was further modified in the 2010 Stipulation. Exh. D, pg. 1, ¶1. From February 2009 until August 2009, Alan was to pay $1,260 per month for child care costs, and that monthly contribution was deemed to satisfy the obligations of Paragraph 4 in the 2009 Stipulation. Exh. D, pg. 1, ln. 22.

Taken together, the three relevant stipulations between Alan and Claimant ordered the following support obligations payable by Alan to Claimant:

- September 1, 2007 – May 13, 2008: $4,990/month ($2,984 in child support, $1,260 in child care costs, $746 in spousal support) (Exh. B, pg. 4, ln. 18-25 and pg. 10, ln. 8-18);

- May 14, 2008 - July 27, 2008: $4,352/month ($3,606 in child support and care, $746 in spousal support) (Exh. C, pg. 2, ln. 6-8);

- July 28, 2008 – December 5, 2008: $4,024/month ($3,278 in child support and care, $746 in spousal support) (Exh. C, pg. 2, ln. 9-11);

- December 6, 2008 – February 18, 2009: Alan was to continue to pay $4,024/month unless he petitioned the family court to modify his child support obligations to $0 (Exh. C, pg. 2, ln. 12-14). He did not petition the family court for such modification and he therefore remained liable to Claimant for $4,024/month for that period (¶7, Declaration of Alan T. Wootton in Support of Debtors' Objection to Claim 13 (the "Alan Decl.") filed concurrently herewith); and

- February 19, 2009 – August 31, 2009: $3,706/month ($1,700 in child support, $1,260 in

---

[1] Debtor Alan T. Wootton was the Petitioner and Claimant Oxana Wootton was the Respondent in each stipulation signed by the parties. A mistake was made when drafting the 2009 Stipulation. The correct phrase is "...payable by Petitioner to Respondent..."

**OBJECTION TO CLAIM 13 (Case no. 09-57389)**

Case: 09-57389    Doc# 96    Filed: 05/06/11    Entered: 05/06/11 21:52:48    Page 4 of 15

child care costs, inclusive of child care costs related to employment, $746 in spousal support) (Exh. C, pg. 2, ln. 15-17; Exh. D, pg. 1, ln. 19-23).

A concise statement of the support obligations due from Alan and of the payments made by Alan is shown in the spreadsheet attached hereto as Exhibit F. From September 1, 2007 to August 31, 2009, Alan made total support payments directly to Claimant in the amount of $34,815.93. Exh. F, Calculation One. Addendum 3 to Claim 13, a spreadsheet created by Claimant, shows total direct payments by Alan in the same amount. Claims Register No. 13.

*Property Division – Equalization Payment*

In order to determine the proper division of the marital property, two experts were hired. The first expert was James Butera, CPA, of McCahan, Helfrick, Thiercof & Butera, Accountancy Corporation. A true and correct copy of the engagement letter retaining Mr. Butera is attached hereto as Exhibit G. Mr. Butera was retained to determine the proper division of separate and community property interests of sale proceeds on exercised eBay stock options held by Alan and Claimant separately. Exh. G, pg. 1, ¶3; Exh. B, pg. 8, ln. 13-17. Pursuant to Attachment E to the 2007 Stipulated Judgment, a true and correct copy of which is attached hereto as Exhibit H, Alan and Claimant were each responsible for compensating Mr. Butera for his services. Exh. H, pg. 1, ln. 5-6. Claimant failed to pay her half of the Butera bill and, by July 2008, Alan paid the entire balance, including Claimant's half of $2,285.05. In a letter addressed to Alan and Claimant dated September 22, 2008, Mr. Butera indicated that Alan had made all the payments for Mr. Butera's services. Mr. Butera included a spreadsheet with his letter and the spreadsheet listed the charges incurred by the parties, as well as the payments made by Alan. A true and correct copy of Mr. Butera's letter, along with its supporting spreadsheet, is attached hereto as Exhibit I.

Mr. Butera determined that Claimant's share of the sale proceeds of Alan's exercised eBay stock options was valued at $99,792.50. He also determined that Alan's share of the sale

proceeds of Claimant's exercised eBay stock options was valued at $39,355.50. Exh. B, pg. 8, ¶H. The difference between the two valuations was $60,437, Claimant's share of Alan's sale proceeds being the more valuable. As such, the equalization payment of $65,944 that Alan was ordered to pay Claimant by December 9, 2007 included the $60,437 difference. Exh. B, pg. 9, ln. 14-18.

*Property Division – Claimant's unexercised eBay stock options*

Mr. Butera also analyzed unexercised eBay stock options held by Claimant to determine the proper division of community interests therein. As a result of his analysis, a portion of the unexercised shares was awarded to Alan. The shares were non-transferable so the parties agreed that Alan would direct Claimant to exercise his shares on a date of his choosing. Immediately following such exercise, Claimant was required to transfer the sale proceeds to Alan. This agreement was made part of the 2007 Stipulated Judgment. Exh. B, pg. 8, ln. 13-17; Exh. H. Having been asked to sell Alan's shares, on March 12, 2008, Claimant exercised the shares through E-Trade Financial and the resulting pre-tax proceeds were $92,068.72, as shown on the E-Trade "Employee Stock Plan Exercise Confirmation" and "Order Details" from Claimant's E-Trade account. True and correct copies of those E-Trade documents are attached hereto as Exhibit J. With respect to any tax liability on the exercise of Alan's shares, the parties agreed as follows:

> Each party who receives any shares of stock or the proceeds from sale of such stock shall be solely liable and forever hold the other free and harmless from any liability for and fully indemnify the other for any taxes, federal or state, that are attributable to the exercise of options or sale of stocks. Any taxable transaction reported under [Claimant's] social security number that IS attributable to [Alan's] options or resulting stocks shall be deducted from [Claimant's] income tax returns and shall be reported by [Alan] on his tax returns under her [sic] social security number. The parties shall execute a statement to be attached to each party's income tax returns informing the taxing authority of the deduction from [Claimant's] and inclusion in [Alan's] tax returns of the options/stocks transactions.

Exh. H, pg. 3, ln. 9-18.

Claimant never transferred the sale proceeds to Alan as required. In an e-mail sent to Alan on October 13, 2009, Claimant informed Alan that she would not perform the tax reporting requirements as agreed. A true and correct copy of Claimant's e-mail is attached hereto as Exhibit K. Claimant also informed Alan that she would use the sale proceeds as "a credit against [Alan's] back support payments." Exh. K.

*Property Division – Retirement Accounts*

The second expert hired was Suzanne Hunsinger. Exh. B, pg. 7, ¶E. Ms. Hunsinger was hired to determine the proper value of the community interest in three retirement accounts held by Alan and Claimant. The three accounts to be analyzed were: Alan's Micron Retirement Savings Plan; Claimant's Linsco/Private Ledger Custodial IRA; and Claimant's eBay 401(k) Savings Plan. Once Ms. Hunsinger's analysis was complete, Alan and Claimant were required to prepare any necessary documents, including Qualified Domestic Relations Orders ("QDROs"), to effect the proper division of the retirement accounts. Id. The family court retained jurisdiction over the valuation and division of the community interest in the retirement plans. Id.

Ms. Hunsinger prepared drafts of QDROs for two of the retirement accounts-Alan's Micron and Claimant's eBay 401(k) Savings Plan-and forwarded the drafts to Alan and Claimant's family law attorneys on October 9, 2008. A true and correct copy of Ms. Hunsinger's October 9, 2008 letter, without enclosures, is attached hereto as Exhibit L. There is no mention of Claimant's Linsco/Private Ledger Custodial IRA in Ms. Hunsinger's letter. Alan signed at least two QDROs, once on August 21, 2008 and again on or about October 22, 2008. His October 2008 signatures were sent to Ms. Hunsinger via an e-mail from Alan's family law attorney's office on November 7, 2008. True and correct copies of Alan's QDRO August 2008 and October 2008 signatures along with the forwarding e-mail from his family law attorney are attached hereto as Exhibit M.

Even though Alan executed the prepared QDROs, the issue of valuation and division of the community interest in the retirement plans remains a pending item within the family court's jurisdiction. ¶¶8-10, Alan Decl. On August 25, 2008, Alan filed a motion in family court to enforce the 2007 Stipulated Judgment's provisions respecting the retirement accounts. A true and correct copy of Alan's Motion for Enforcement of Judgment and Sanctions is attached hereto as Exhibit N. Subsequent family court filings followed. To date, there has been no court-approved valuation and division of the community interest in the retirement accounts. ¶10, Alan Decl.

*Tax Debt of 2004*

Prior to their divorce, Alan and Claimant filed joint tax returns and they were jointly liable for any associated liabilities or penalties. ¶4, Alan Decl.. Alan received a letter, dated June 22, 2007, from the IRS that listed the social security numbers of both Alan and Claimant. ¶5, Alan Decl. A true and correct copy of the IRS letter is attached hereto as Exhibit O. The IRS letter stated that Alan and Claimant owed $1,800.21 for unpaid taxes with interest and penalties for tax year 2004. Exh. O. On July 16, 2007, Alan paid the 2004 tax debt in full via check number 1094 from the checking account he previously shared with Claimant. ¶6, Alan Decl. A true and correct copy of pages 1 and 2 of the checking account's statement for June 26 through July 25, 2007 is attached hereto as Exhibit P. Alan requested reimbursement from Claimant for her half of the 2004 tax debt via a PayPal Money Request on July 6, 2007. A true and correct copy of the PayPal Money Request is attached hereto as Exhibit Q. To date, Claimant has not reimburse Alan for her half.

**II.     ARGUMENT**

**A.     Introduction**

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§157 and 1334.  Venue is

proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

Multiple legal principles apply to the issues raised in this Objection.  First, section 502(b) of the U.S. Bankruptcy Code states that the court shall determine the extent to which a creditor's claim should be allowed against the property of the debtors.  11 U.S.C. §502(b).  Subsection (1) of 502(b) mandates that a creditor's claim should be disallowed where it is a claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  Second, §553 of the Bankruptcy Code preserves the non-bankruptcy right of setoff, also referred to as "offset," within the bankruptcy setting with respect to mutual debts owed between parties.  11 U.S.C. §553.  "The right to setoff...allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B while B owes A.'"  *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995), quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913).

Whether the existing right to setoff is preserved in a bankruptcy setting under §553 depends on the party asserting the setoff right proving that "(1) the debtor owes the creditor a pre-petition debt; (2) the creditor owes the debtor a pre-petition debt; and (3) the debts are mutual."  *In re Ter Bush*, 273 B.R. 625, 629 (2002).  Mutuality of debts is established where (a) the debts are in the same right, (b) the debts are between the same individuals, and (c) those individuals stand in the same capacity.  *Id*.

Third, pursuant to California Code of Civil Procedure §685.010(a), simple interest at ten percent per annum accrues on the principal amount of an unsatisfied money judgment.  Finally, Cal. Civ. Proc. Code §685.040, a judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment, i.e., attorneys fees.

Pursuant to these general principles, the Debtors are entitled to multiple offsets.  Exh. F,

9

Calculation Two. Also, pursuant to 11 U.S.C. §502(b)(1), a portion of both the priority and non-priority claims in Claim 13 are not enforceable against the Debtors.

**B. The Bulk of Claimant's Priority Claim Has Been Paid in Full Due to Her Failure to Transfer the $92,068.72 in stock sale proceeds to Alan as Ordered.**

As stated above, the right to setoff is preserved in the bankruptcy setting where it already exists under non-bankruptcy law and where (1) the debtor owes the creditor a pre-petition debt; (2) the creditor owes the debtor a pre-petition debt; and (3) the debts are mutual. *In re Ter Bush* at 629. The Debtors' right to setoff exists outside of their bankruptcy case due to the stipulations executed by Alan and Claimant. The 2007 Stipulated Judgment, which forms the basis of all the subsequent stipulations, states under the "Background and Statistical Facts" section at ¶F that "[t]he purpose of this agreement is to settle all property interest and rights that each party may have with respect to the other, and to settle the obligations of each party for the support of the other." Exh. B, pg. 3, ln. 21-23. The stipulations executed between Alan and Claimant gave rise to multiple debts owing to one another, including all support obligations and the mutual responsibility to compensate the experts hired to determine the proper division of their marital property. Therefore, the Debtors' right to setoff existed prior to the filing of their bankruptcy case based on the state court-approved stipulations.

The first and second prongs of the setoff test above are clearly satisfied here. The 2007 Stipulated Judgment was endorsed by the family court on November 9, 2007, almost two years before the Debtors filed their bankruptcy case. Exh. B, pg. 1. All of the debts owed by Alan to Claimant discussed in Claim 13 and all the debts Claimant owes Alan are pre-petition debts.

As for the third prong of the setoff test, the mutuality of debts is established where the debts are in the same right, the debts are between the same individuals and those individuals stand in the same capacity. *In re Ter Bush* at 629. Courts have interpreted "in the same right" to mean that a pre-petition debt cannot be offset by a post-petition debt. *Id.* Also, to be in the same

**OBJECTION TO CLAIM 13 (Case no. 09-57389)**

right, any debts sought to be offset cannot be jointly owed with some other entity. *Id*. Here, no other entity is liable for any of the offsetting debts. Furthermore, all the debts discussed here arose pre-petition, and they are between Alan and Claimant, who are the same parties to the stipulations. Lastly, Alan and Claimant currently stand in the same capacity with respect to each other as they stood when the debts owed by each of them arose. Therefore, all the requirements of 11 U.S.C. §553 are met and the Debtors are entitled to the right of setoff.

Once the entitled offset of $92,068.72 is applied to the bulk of Claimant's priority support arrears, including accrued interest, the priority claim of $74,816.39 is reduced to negative $17,252.33. Exh. F, Calculation Two. Based on Cal. Civ. Proc. Code §685.010, simple interest at a rate of 10% has been accruing and continues to accrues on the stock sale proceeds, and that interest, currently in the amount of $28,251.22, further reduces the amount owed by the Debtors to Claimant on her priority claim. In applying the accrued interest, the Debtors are left with an even greater credit balance to be used in offsetting the other debts owed by the Debtors to Claimant. Exh. F, Calculation Two.

**C.  $2,170.50 of Claimant's Priority Claim Is Unenforceable Against the Debtors and Should be Disallowed.**

Claim 13, as amended, asserts that the Debtors are liable for $1,234.00 for summer child care costs for the oldest child during the summer of 2008. Claim 13 also asserts that the Debtors are liable for $936.50 for the same type of costs during the summer of 2009. Each of these claims should be disallowed as unenforceable under §502(b)(1) of the Bankruptcy Code.

**1.  The $1,234.00 Charges for Summer 2008 Are Child Care Costs Related to Employment that Were Never Properly Submitted for Reimbursement.**

Attachment C of the 2007 Stipulated Judgment governs child care costs related to employment incurred prior to February 2009. Exhs. B – E. In order to be reimbursed for such costs, the paying parent had to give the other parent an itemized statement of the costs and

Case: 09-57389    Doc# 96    Filed: 05/06/11    Entered: 05/06/11 21:52:48    Page 11 of 15

provide proof that all of the costs had been paid by the paying parent. Exh. E, pg. 4. Proof of payment had to be in the form of canceled checks, timely receipts, billing statements from the care provider or by the paying parent's declaration under penalty of perjury. Id. Claimant again failed to fulfill her obligations created by the 2007 Stipulated Judgment. The Debtors were not given the proper itemized statements or proof of payment for the summer 2008 child care costs related to employment. ¶11, Alan Decl. Because Claimant did not follow the court-ordered reimbursement procedures, her priority claim of $1,234.00 should be disallowed as unenforceable pursuant to 11 U.S.C. §502(b)(1).

>    **2.      The $936.50 Charges for Summer 2009 Are Child Care Costs Related to Employment that Are Unenforceable per the 2010 Stipulation.**

The 2009 Stipulation eliminated the reimbursement requirements of Attachment C to the 2007 Stipulated Judgment with respect to child care costs related to employment. Exh. C, pg. 2, ¶4. The 2010 Stipulation changed the payment method again. Exh. D, pg. 1, ¶1. Between February 2009 and August 2009, Alan was required to pay $1,260 per month to Claimant for child care costs. That monthly contribution satisfied the obligation in ¶4 of the 2009 Stipulation to pay a mandatory 50% of child care costs related to employment. Exh. D., pg. 1, ln 22-23. Therefore, the priority claim of $936.50 in Claim 13 is unenforceable against the Debtors because the 2010 Stipulation already provided for such costs within the $1,260 monthly contributions. As such, the priority claim of $936.50 is unenforceable pursuant to section 502(b)(1) of the Bankruptcy Code.

**D.      The Non-Priority Claim for the Equalization Payment Plus Interest Has Been Paid in Part Due to the Offsets to Which the Debtors are Entitled.**

As stated above, the requirements of 11 U.S.C. §553 have been met and the Debtors maintain the right of setoff in their bankruptcy case. In the 2007 Stipulated Judgment, Alan was ordered to pay Claimant an equalization payment of $65,944.00. Exh. B., pg. 9, ln. 14-19. To

date, the equalization payment has not been made and, because it is a money judgment within the meaning of Cal. Civ. Proc. Code §685.010, it accrued interest of $11,400.18 up to the date of filing of the Debtors' bankruptcy case, which was August 31, 2009. Exh. F, Calculation Two. Therefore, the Debtors owe Claimant a total of $77,344.18. Given that the Debtors are entitled to offset the stock sale proceeds and their accrued interest against debts they owe Claimant, the actual amount the Debtors owe Claimant for the equalization payment is at most $31,840.63. Because interest is still accruing on the stock sale proceeds, the amount the Debtors ultimately owe Claimant for the equalization payment will not be known until this Objection is resolved.

Furthermore, the Debtors are entitled to more offsets. Claimant owes Alan $900.10 for her half of the 2004 tax debt that Alan paid in full on July 16, 2007. Exhs. O – Q. Also, Alan fully compensated Mr. Butera, the first expert hired to determine the proper division of the marital property. Even though she attempted to get a refund from Mr. Butera, Claimant did not make one payment for his services. Exh. I. She was required, per the 2007 Stipulated Judgment, to pay half of Mr. Butera's bill. Exh. H, pg. 1, ln. 5-6. As such, Claimant owed the Debtors $2,285.05. She is also liable for interest accruing on her half of the Butera bill, pursuant to Cal. Civ. Proc. Code §685.010, in the amount of at least $641.69. Exh. F, Calculation Two.

Lastly, the Debtors are entitled to recover attorneys fees from Claimant, pursuant to Cal. Civ. Proc. Code §685.040, since they have been forced to retain an attorney to enforce the 2007 Stipulated Judgment and subsequent stipulations. As of the filing date of this Objection, the amount of attorneys fees to which the Debtors are entitled is $1,445.00. Exh. F, Calculation Two. Like the interest accruing on some of the debts owed by Claimant to the Debtors, the ultimate amount of attorneys fees to which the Debtors are entitled depends upon the date this Objection is resolved.

Given the offsets to which the Debtors are entitled, Claim 13's non-priority claim for the

equalization payment should be disallowed to the extent it has already been satisfied.

**E.    $6,184.33 of Claimant's Non-Priority Claim Is Unenforceable Against the Debtors and Should be Disallowed.**

Section 502(b)(1) of the Bankruptcy Code mandates that a creditor's claim should be disallowed to the extent it is unenforceable against a debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. Claim 13 asserts a non-priority claim that is unenforceable under any agreement between Alan and Claimant.

As noted previously, the 2007 Stipulated Judgment was executed by the parties in order to determine their respective property rights. Alan and Claimant jointly retained Suzanne Hunsinger to determine the proper valuation and division of three retirement accounts. Exh. B., pg. 7, ¶E. To date, two of the retirement accounts have been analyzed by Ms. Hunsinger to the point where she was able to prepared QDROs that would effect the division of the accounts, which would have to be approved by the family court. ¶8-10, Alan Decl. However, it is not known whether the third retirement account-Claimant's Linsco/Private Ledger Custodial IRA-has been valued or analyzed by Ms. Hunsinger. Claim 13 states that "[a] third IRA in [Claimant's] name contained negligible assets." Exh. A, pg. 7. Whether or not the statement is true and whether or not the statement is referring to the Custodial IRA has not been determined because Claimant has not fully disclosed the account statements of the retirement accounts in her name as required by the 2007 Stipulated Judgment.

In the 2007 Stipulated Judgment, the family court retained jurisdiction over the issue of valuation and division of the community interests within the three retirement accounts. Exh. B. pg. 7, ¶E. The issue is still pending in the family court. Presumably, statements for Claimant's "third IRA" exist and can be produced. Since the beginning of the efforts to value the three accounts, such statements have been requested many times. Without Claimant's disclosure of the statements for her Custodial IRA or for her mysterious "third IRA", the proper valuation and

Case: 09-57389    Doc# 96    Filed: 05/06/11    Entered: 05/06/11 21:52:48    Page 14 of 15

division of the retirements remains incomplete. Absent completion, the family court cannot approve the division of the community interest within the retirement accounts. Absent family court approval, Claimant's non-priority claim related to the retirement account division is unenforceable against the Debtors. Therefore, it should be disallowed pursuant to section 502(b)(1) of the Bankruptcy Code.

## III. CONCLUSION

Claim 13 should be disallowed to the extent that the Debtors' right to multiple offsets has already satisfied most of the priority and non-priority claims and to the extent that the remaining priority and non-priority claims are not enforceable against the Debtors.


Dated: May 6, 2011                          MILLER LEGAL SERVICES


                                            /s/ Brooke L. Miller_____
                                            Brooke L. Miller
                                            Attorney for Debtors Alan T. and Wendy L. Wootton