Exhibit A
March 18, 2011 e-mail exchange between Debtors' counsel and Ms. Silva
2 pages

DECL. OF BROOKE L. MILLER, REPLY IN OPPOSTION TO 2004 MOTION (Case no. 09-57389)
Case: 09-57389    Doc# 99-2    Filed: 05/09/11    Entered: 05/09/11 16:59:44    Page 1 of 19

# Brooke L. Miller

| | |
|---|---|
| From: | "Brooke L. Miller" <brookelmiller@gmail.com> |
| To: | "Kari Silva" <ksilva@campeaulaw.com> |
| Cc: | "Wendy Wootton" <wendywootton77@yahoo.com>; "Alan Wootton" <alex_woods66@yahoo.com> |
| Sent: | Friday, March 18, 2011 11:30 AM |
| Attach: | Attachment to K Silva e-m 110318 1130am.pdf |
| Subject: | Re: Alan T. Wootton and Wendy Lynn Wootton |

Good morning Kari,

Regarding POC 14, attached please find the proof that all the support payments alleged to be outstanding in the POC were more than fully paid by 3/15/10. I see no reason why POC 14 should not be withdrawn promptly.

My clients will be paying Oxana Wootton what she is legitimately owed, if anything, and that is all. I will be filing an objection to POC 13. As you know, the basis of your client's POCs are the various stipulations/judgments in Alan and Oxana's family law matter. My analysis of those documents, of the evidence of payments made by Alan to Oxana over the years since their divorce, and of Oxana's failure to comply with certain parts of the family court orders and agreements indicates that Oxana owes Alan money. Oxana's failure to comply with the court orders and agreements has hampered her own position and, as such, there is no reason why Alan would reimburse Oxana for costs she incurred as the result of her own actions.

As you also know, the impounded proceeds of the sale of Playdom stock are in the process of being placed in my trust account. The amount of the proceeds is $94,941.90. Given my analysis of POC 13 and the history of this case, the amount in trust more than covers whatever Oxana may be owed in the end.

I am sorry that Sam made any promises to you during his representation of Alan and Wendy Wootton. His promises are not mine and I will not be fulfilling any of them. Clearly, whatever Sam alluded to during his representation of the Woottons was not what they wanted to be done on their behalf. I can tell you that you, along with the trustee and the court, will be receiving more information concerning the Wootton's income, along other information, shortly. I aim to file some amendments ahead of the continued confirmation hearing of 4/5/11.

Needless to say, the Woottons will not be paying anything on POC 13, in six months or otherwise, until the objection to it is resolved. The complaint that Oxana would like to file in family court will hopefully result in clarity on what is owed by Alan to Oxana, if anything. We all look very eagerly toward such resolution.

Have a good weekend,
Brooke L. Miller, Attorney
Miller Legal Services
(415) 810-8815
brookelmiller@gmail.com

----- Original Message -----
From: Kari Silva
To: brookelmiller@gmail.com
Cc: oxanawootton2002@yahoo.com ; 'Greg Anderson'
Sent: Tuesday, March 15, 2011 9:44 AM

5/8/2011

**Subject:** Alan T. Wootton and Wendy Lynn Wootton

Dear Brooke:

I have forwarded your request to delay filing the family law complaint to my client. However, there are other issues that also need to be addressed. Please provide me the status of:

1. Alan reimbursing Oxana for the legal fees she has had to incur to recover her support arrears.
2. Providing documentation regarding Alan and Wendy's income and stock proceeds for Disney/Playdom or any other entity they receive additional compensation.
3. Placing the stock proceeds from the PLAYDOM stock in your trust account and providing us with the amount that is being placed in trust.

As previously stated, our client has incurred substantial legal fees to collect her support arrears and is entitled to reimbursement of those funds. I asked that your client stipulate to reimbursement of those funds so we do not need to incur additional costs to recover legal fees associated with collecting support arrears.

I have been told by both you and Sam that I would receive documentation relating to stock proceeds and income, but still have not received the requested information. Again, I am requesting that Alan immediately provide us with that information and also confirm that the continued stock payments are being placed in trust. I would also like to remind Alan that the stock funds and his pay are property of the bankruptcy estate and can only be spent on necessities such as food and rent.

As discussed, I will confirm that Alan is current on his post petition support and if so, we will remove that one objection.

Sincerely,


**Kari L. Silva, Esq.**
CAMPEAU GOODSELL SMITH, LC

440 North 1st Street, Ste. 100
San Jose, California 95112
Tel: 408.295.9555, ext. 103
Fax: 408.295.6606
ksilva@campeaulaw.com

PRIVILEGED AND CONFIDENTIAL: The information contained in this e-mail and any attached documents are confidential, and may be an attorney-client communication subject to the attorney-client or work product privilege. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, any review, disclosure, copying, distribution, or use of the contents of this e-mail or any attached document is strictly prohibited. If you have received this e-mail in error, please destroy it and notify the sender immediately by telephone (408.295.9555) or e-mail.

IRS CIRCULAR 230 NOTICE: Any tax advice given herein (and in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any matter or transaction addressed herein.

5/8/2011

Exhibit B
Two subpoenas to Alan's employer, dated 2/23/10 and 8/27/10
6 pages

|  | | A43165-A | SUBP-010 |
|---|---|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
JESSE KRENZEL (Bar# 77068)
JESSE KRENZEL
1871 THE ALAMEDA, #250, SAN JOSE, CA 95126
TELEPHONE NO: (408) 243-4100   FAX NO. (Optional): (408) 241-0400
E-MAIL ADDRESS (Optional): JesseLK@aol.com
ATTORNEY FOR (Name): OXANA G. WOOTTON

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
STREET ADDRESS: 605 WEST EL CAMINO REAL
MAILING ADDRESS:
CITY AND ZIP CODE: SUNNYVALE, CA 94087
BRANCH NAME: SUNNYVALE DISTRICT

PLAINTIFF/PETITIONER: ALAN T. WOOTTON
DEFENDANT/RESPONDENT: OXANA G. WOOTTON

**DEPOSITION SUBPOENA**
**FOR PRODUCTION OF BUSINESS RECORDS**

CASE NUMBER:
104 FL 123474

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):
PLAYDOM
100 WEST EVELYN AVENUE, SUITE 110, MOUNTAIN VIEW, CA 94041

1. YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:

To (name of deposition officer): COMPEX LEGAL SERVICES
On (date): 03/23/2010                                          At (time): 08:30 AM
Location (address): 2001 BROADWAY, SUITE 100, OAKLAND, CA 94612

Do not release the requested records to the deposition officer prior to the date and time stated above.

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☒ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.

3. The records to be produced are described as follows:
RECORD SUBJECT: WOOTTON, ALAN T.
DOB: NOT AVAILABLE   SSN: ▮▮▮-▮▮-9121   AKA: NOT AVAILABLE
☒ Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date issued: FEBRUARY 23, 2010

JESSE KRENZEL                                      ▶   |S| JESSE KRENZEL
(TYPE OR PRINT NAME)                                   (SIGNATURE OF PERSON ISSUING SUBPOENA)

ATTORNEY AT LAW
(TITLE)

(Proof of service on reverse)                          Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. January 1, 2007]

**DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**

Code of Civil Procedure, §§ 2020.410–2020.440;
Civil Code, § 1985(a)(e);
Government Code, § 68097.1
www.courtinfo.ca.gov

| | | |
|---|---|---|
| PLAINTIFF/PETITIONER: ALAN T. WOOTTON | CASE NUMBER: | SUBP-010 |
| DEFENDANT/RESPONDENT: OXANA G. WOOTTON | 104 FL 123474 | |

**PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:
   a. Person served (name):
   b. Address where served:
   c. Date of delivery:
   d. Time of delivery:
   e. (1) ☐ Witness fees were paid.
       Amount: ............ $
       (2) ☐ Copying fees were paid.
       Amount: ............ $
   f. Fee for service: ............ $

2. I received this subpoena for service on (date):

3. Person serving:
   a. ☐ Not a registered California process server.
   b. ☐ California sheriff or marshal.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b).
   f. [X] Registered professional photocopier.
   g. ☐ Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

**I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

(For California sheriff or marshal use only)
**I certify** that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

SUBP-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**

Page 2 of 2

<u>**ATTACHMENT 3**</u>  A43165-A

SUBJECT: WOOTTON, ALAN T.

AKA: NOT PROVIDED

DOB: NOT PROVIDED  SSN: ███████9121

ALL DOCUMENTS AND RECORDS PERTAINING TO THE EMPLOYMENT AND/OR EARNINGS OF THE PLAINTIFF, INCLUDING ALL PAYROLL, THE APPLICATION FOR EMPLOYMENT, WORK ABSENCE RECORDS, 1099 FORMS, INCIDENT REPORTS, TIME CARDS, AND PRE-EMPLOYMENT AND EMPLOYEE PERFORMANCE RECORDS, FROM THE FIRST DATE OF EMPLOYMENT, UP TO AND INCLUDING THE PRESENT.
INCLUDE: ALL OFFERS OF EMPLOYMENT, EMPLOYMENT AGREEMENTS, PAYROLL REOCRDS, GRANTS OF STOCK OR STOCK OPTIONS, AND RECORDS OF ANY OTHER COMPENSATION OR BENEFITS INCIDENT TO EMPLOYMENT OF ALAN WOOTTON.

|  | A71321-A | SUBP-010 |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
JESSE KRENZEL (Bar# 77068)
JESSE KRENZEL
1871 THE ALAMEDA, #400, SAN JOSE, CA 95126
TELEPHONE NO: (408) 243-4100     FAX NO. (Optional): (408) 241-0400
E-MAIL ADDRESS (Optional): JesseLK@aol.com
ATTORNEY FOR (Name): OXANA WOOTTON

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 605 WEST EL CAMINO REAL
MAILING ADDRESS:
CITY AND ZIP CODE: SUNNYVALE, CA 94087
BRANCH NAME: SUNNYVALE DISTRICT

PLAINTIFF/PETITIONER: ALAN, T. WOOTTON
DEFENDANT/RESPONDENT: OXANA WOOTTON

**DEPOSITION SUBPOENA
FOR PRODUCTION OF BUSINESS RECORDS**

CASE NUMBER:
104 FL 123474

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):
CUSTODIAN OF RECORDS: PLAYDOM
100 WEST EVELYN AVENUE, SUITE 110, MOUNTAIN VIEW, CA 94041

1. YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:

To (name of deposition officer): COMPEX LEGAL SERVICES
On (date): 09/21/2010                              At (time): 08:30 AM
Location (address): 2001 BROADWAY, SUITE 100, OAKLAND, CA 94612

Do not release the requested records to the deposition officer prior to the date and time stated above.

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☒ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.

3. The records to be produced are described as follows:
RECORD SUBJECT: WOOTTON, ALAN, T.
DOB: NOT AVAILABLE     SSN: ███9121     AKA: NOT AVAILABLE
☒ Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date issued: AUGUST 23, 2010

JESSE KRENZEL
(TYPE OR PRINT NAME)

▶ /S/ JESSE KRENZEL
(SIGNATURE OF PERSON ISSUING SUBPOENA)

ATTORNEY AT LAW
(TITLE)

(Proof of service on reverse)                                    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. January 1, 2007]

**DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

Code of Civil Procedure, §§ 2020.410–2020.440;
Civil Code, § 1985(e);
Government Code § 68097.1
www.courtinfo.ca.gov

Case: 09-57389    Doc# 99-2    Filed: 05/09/11    Entered: 05/09/11 16:59:44    Page 8 of 19

| | |
|---|---|
| PLAINTIFF/PETITIONER: ALAN, T. WOOTTON<br>DEFENDANT/RESPONDENT: OXANA WOOTTON | CASE NUMBER:<br>104 FL 123474 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*:

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. (1) ☐ Witness fees were paid.
      Amount: . . . . . . . . . . . . . . $ _____
      (2) ☐ Copying fees were paid.
      Amount: . . . . . . . . . . . . . . $ _____

   f. Fee for service: . . . . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on *(date)*:

3. Person serving:
   a. ☐ Not a registered California process server.
   b. ☐ California sheriff or marshal.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b).
   f. ☒ Registered professional photocopier.
   g. ☐ Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

SUBP-010 [Rev. January 1, 2007]     **PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**     Page 2 of 2

ATTACHMENT 3                                          A71321-A

SUBJECT: WOOTTON, ALAN, T.

AKA: NOT PROVIDED

DOB: NOT PROVIDED                    SSN: ███████9121

ALL DOCUMENTS AND RECORDS PERTAINING TO:

(1) ANY EARNINGS OR OTHER REMUNERATION PAID TO ALLEN T. WOOTTON SINCE MARCH 16, 2010, INCLUDING BONUSES AND ANY OTHER FORMS OF REMUNERATION.

(2) AMENDMENTS TO THE "PLAYDOM, INC. (FORMERLY YOU PLUS, INC.) 2008 STOCK PLAN" MADE AFTER OCTOBER 29, 2009.

(3) CORRESPONDENCE, NOTICES, OR OTHER WRITINGS TO ALLEN T. WOOTTON, OR FROM ALLEN T. WOOTTON, PERTAINING TO THE STOCK OPTIONS GRANTED TO ALLEN T. WOOTTON ON MARCH 11, 2009 OR ON FEBRUARY 3, 2010.

(4) GRANTS OF STOCK OPTIONS TO ALLEN T. WOOTTON MADE AFTER MARCH 23, 2010.

(5) EXERCISE OF ANY STOCK OPTIONS BY ALLEN T. WOOTTON.

(6) THE SALE, SURRENDER, TRANSFER, OR HYPOTHECATION OF ANY SHARES BY ALLEN T. WOOTTON AND THE CONSIDERATION RECEIVED THEREFROM.

Exhibit C
April 24, 2011 Letter to Ms. Silva; May 3, 2011 letter in response from Ms. Silva
8 pages

<div style="text-align: right">
**Miller Legal Services**
158 Shrader St., #3, San Francisco, CA 94117
www.millerlegalservices.com
brookelmiller@gmail.com
v(415) 810-8815
f(415) 592-8846
</div>

April 24, 2011

*Sent via e-mail only*

Kari Silva
Campeau Goodsell Smith
440 N. 1st St., Ste. 100
San Jose, CA 95112
ksilva@campeaulaw.com

Re:     **Case No. 09-57389, In re Wootton**
        **Stipulation to 2004 Examination**

Dear Ms. Silva,

      Thank you for your letter of April 14, 2011, and for your patience is awaiting my response.  I note that in your letter you discuss what you believe to be my concerns regarding the Rule 2004 Production and Examination request you have made with the Court.  I believe that your understanding of my concerns is somewhat inaccurate and this letter is intended to clear up any misunderstanding.

      First, you indicate your belief that my primary concern "appears to be that Oxana is already in possession of documents that we are requesting".  You go on to state that my second concern is that the Rule 2004 request is being used to harass my clients, Alan and Wendy Wootton.  Finally, although it is not discussed in your letter, another concern of mine, which you discuss in your first-filed Response to my Opposition to the 2004 Request, is that a contested matter is pending in this case.  I will address each of these listed concerns in turn below and, again, I hope that in doing so, you will gain a better understanding of my position with respect to the Wootton matter.

      The first reason I have for opposing your Rule 2004 Request is that there is still a pending contested matter in this case.  In your Response to my Opposition to the Rule 2004 Request, which you filed on April 10, 2011, you stated that a pending contested matter was not sufficient justification for not ordering the 2004 examination because your client would be withdrawing her Claim No. 14.  In fact, on April 14, 2011, Claim No. 14 was not withdrawn.  It was merely amended.  Although the proof of claim cover sheet indicates that Claim No. 14 is for $0.00, curiously the supporting documentation to Claim No. 14 still claims that my clients owe Oxana for the April 2011 support payment as well as $365 for summer camp.  Your amended Claim No. 14 is disingenuous.  As I am sure you are

<div style="text-align: center; color: blue">
Response to 4/14/11 2004 Stipulation Letter 042411
1 of 4
</div>

aware, the various stipulated judgments, which are the basis of any debts owed by Alan to Oxana and by Oxana to Alan, clearly state that all support payments are payable on the 15th of each month. Your amended Claim No. 14 was filed one day before the April 2011 support payment was payable. Also, your amended Claim No. 14 contains no proof whatsoever of if or when the $365 summer camp claim was agreed to or payable. There is no proof that the $365 claim is even a debt owed by the Woottons to Oxana.

In addition, in your amended Claim No. 14, you give us notice that $11,451.86 in interest remains owing to Oxana from the Woottons for pre-petition support arrears. The Woottons and I strongly disagree with that claim. Oxana effectively stole approximately $92,000 from Alan on March 12, 2008 when she failed to turn over the entirety of the eBay stock sale proceeds she was ordered to turn over to Alan per the 2007 Stipulated Judgment. Oxana has stated in an e-mail to Alan that she will apply the eBay stock sale proceeds to his unpaid pre-petition support obligations. Such an offset, which is more than appropriate and fair under the circumstances, results in Oxana owing Alan approximately $19,000 as of August 31, 2009, the filing date of this bankruptcy case. That figure does not include the interest on the unapplied amount of roughly $19,000 that Oxana now owes the Woottons. The Woottons do not owe Oxana any interest on unpaid pre-petition support obligations after March 12, 2008 because the eBay stock sale proceeds were more than the cumulative amount of pre-petition support arrears. For these reasons, you can see that there remains a pending contested matter in this case.

In your April 14th letter to me, you state that "the purpose of the 2004 examination is to protect the interests of an unsecured creditor." I agree. However, as I have stated in my Opposition to your Rule 2004 request, Oxana's interests are already protected. This brings us to another concern I have regarding the appropriateness of your Rule 2004 request. As you know, when a debtor challenges the Rule 2004 request of a creditor, the creditor must show that the examination is reasonably necessary to protect the creditor's interests. A 2004 examination now will not protect Oxana's interests any further than they are protected presently.

Oxana is not owed as much as she claims in Claim Nos. 13 and 14. I have already discussed Claim No. 14 here. Claim No. 13 is grossly excessive due in part to the fact that Oxana has failed to correctly offset the debts she owes Alan to the amounts she claims he owes her. The evidence that I have collected so far shows that Claim No. 13, as amended, should be reduced by at least $52,402.11. That figure does not include monies owed between Oxana and Alan for the various retirement accounts that were to be split per the 2007 Stipulated Judgment. Oxana has repeatedly failed to produce requested documentation respecting her retirement accounts. (Such a request was made by Alan's family law attorney as recently as November 2010, to no avail.) Claim No. 13 includes a statement that Oxana had a third IRA that contained negligible assets. The history of

this case and the divorce proceedings between Alan and Oxana show that Oxana has a fondness for making unilateral decisions on the value of community property interests and on her various court-ordered obligations. It is not for Oxana to decide that one of her IRAs has negligible assets and should not be considered in determining the proper split of community interests. It was not for Oxana to decide that she would pay the taxes on the eBay stock sale proceeds, especially given that she was ordered to not pay such taxes.

Setting aside for the moment the proper retirement accounts split, the legitimate amount of Claim No. 13 is approximately $52,900. Because Claim No. 14 should be disallowed entirely or withdrawn completely, the Woottons do not owe Oxana an amount anywhere near the amount of money currently in trust, which is almost $95,000. As you know, the Woottons' Plan payments have increased to $2,500.76 per month and some 40 months remain in this case. There are sufficient assets already available to protect Oxana's unsecured interests in this case and there will be more assets, due to the plan payments. That is one reason why your Rule 2004 request is not reasonably necessary to protect your client's interests.

I do hate to sound like a broken record but another reason why your Rule 2004 request is not reasonably necessary to protect Oxana's interests is that she already has some of the documents you are requesting be produced, even in your most up-to-date request. I have been informed by my clients that on February 23, 2010, Oxana's family law attorney, Jesse Krenzel, issued a subpoena to Alan's employer, Playdom, Inc. That subpoena requested the following:

> "All documents and records pertaining to the employment and/or earnings of [Alan], including all payroll, the application for employment, work absence records, 1099 forms, incident reports, time cards, and pre-employment and employee performance records, from the first date of employment, up to and including the present. Include: all offers of employment, employment agreements, payroll records, grants of stock or stock options, and records of any other compensation or benefits incident to employment of Alan Wootton."

My clients have also informed me that a second subpoena was issued by Mr. Krenzel to Disney more recently. I do not presently have a list of the items that were produced for both of the subpoenas but I will try to get that information from Alan's family law attorney. Even without such a listing, it appears that even more of your most up-to-date requests are already satisfied by documentation that Oxana has already been able to obtain via the subpoenas. I believe also that Mr. Krenzel has been given some of Alan's tax returns, specifically those for 2008, by Alan's family law attorney. You can see, therefore, why I believe your Rule 2004 request remain unnecessary to protect your client's interests.

Miller Legal Services
brookelmiller@gmail.com
t(415) 810-8815

I note that you continue to remain concerned about the Woottons' veracity based on statements made by their previous counsel, Sam Taherian. Again, I strongly urge you to cease placing any importance on his statements. They were inaccurate. You also continue to use Alan's spoken mistake during the §341 Meeting of Creditors to bolster the claim that the Woottons have acted fraudulently. Judge Weissbrodt has never appeared to be convinced of your arguments in this regard. Alan is a software engineer, not an accountant nor a lawyer. He made a mistake and that mistake has been adequately rectified.

All of that said, we are willing to produce some of the documentation you are requesting. For example, we are willing to produce information related to your document production no. 1, although we do not want to produce that which you or Oxana already have. I believe that Oxana should already have Alan's income information from January 2009 until September 2010. In general, we are willing to produce the information requested by nos. 2, 3, 4, 5, 7, 8, 9 and 10, with the proviso that we do not want to produce any information related to those specific requests that has already been produced through either the family law proceedings between Alan and Oxana or during this case.

Without expressing agreeing to your requests presently, I would like you to check again with Oxana and with her family law attorney to find out what information has already been produced. As I said, I will do the same on my end. Document production nos. 6 and 11 are nothing but attempts by Oxana to harass my clients and we see no legitimate reasons to produce the requested information. Also, the documents we are willing to produce should sufficiently assuage your concerns of fraudulent activity and thereby eliminate any need to conduct an examination of Alan.

I look forward to your thoughts on this matter.

Sincerely,

/s/ Brooke L. Miller
Brooke L. Miller, Attorney
Miller Legal Services

cc: Alan and Wendy Wootton by e-mail

LAW OFFICES
# CAMPEAU GOODSELL SMITH

SCOTT L. GOODSELL
GREGORY J. CHARLES
WILLIAM J. HEALY
KARI L. SILVA

A LAW CORPORATION
440 N. 1ST STREET, SUITE 100
SAN JOSE, CALIFORNIA 95112-4024
TELEPHONE: (408) 295-9555
FACSIMILE: (408) 295-6606

KENNETH J. CAMPEAU
    OF COUNSEL

May 3, 2011

Brooke Miller                                                                                   *Via Email Only*
Miller Legal Services
158 Shrader St Apt 3
San Francisco, CA 94117
brookelmiller@gmail.com

       Re:    **In Re Wootton; Ch. 13 (North Dist. Ca) Bankruptcy Case No. 09-57389; Stipulation on 2004 Examination**

Dear Brooke:

      Thank you for your correspondence dated April 24, 2011. I have read your response and it appears that we are moving closer to reaching a settlement on the documents that need to be produced. Based on your correspondence, I was unclear if you are now objecting to the actual 2004 examination, I will move forward assuming there is an objection. I believe that the examination and the produced documents are necessary to protect our client's interest. Specifically, the documents will help identify assets and income and the actual examination will help ensure any questions about the documents or schedules can be answered under oath. You appear to have outstanding concerns and therefore I will address each concern as stated in your April 24th correspondence.

a.    <u>Contested matter</u>

      You indicated that there is still a pending contested matter in this case, I respectfully disagree.

      Proof of claim 14 was amended after I was notified by the court that it could not be removed. Since the proof of claim is listed at $0.00 then no plan payments will be paid on the proof of claim and therefore there is no contested matter. The amount attached to the proof of claim is attached for informational purposes to inform Alan of the current outstanding support owed.

When a debtor fails to stay current on their post petition support obligations then the interested party can protect their interest by filing a motion to convert or dismiss the case under 11 USC 1307(c)(11).

Currently, Alan has substantially complied with his post-petition support obligations however; there is an outstanding amount currently due and owing as stated in the attached documents to proof of claim 14. Oxana does not want to file a motion to dismiss or convert Alan's case based on Alan's failure to pay this small amount of post-petition support payments. The summer camp is an obligation owed by Alan under the February 19, 2009 stipulation that requires Alan to pay 50% of the child-care costs related to employment or reasonably necessary job training. During the summer, "camps" are day care needed due to Oxana's employment. Additionally, your clients acknowledge this obligation as identified in your client's amended schedule J, filed by you.

In regards to the statement regarding interest on the pre-petition outstanding support that is discussed in Oxana's POC #13 and does not related to POC #14. The proof of claim is substantially supported with documentation. It is my understanding that all the issues you have raised are being dealth with by Oxana and Alan's family law counsel and therefore I will not address those specific issues here, but I will note that you failed to acknowledge the Alan never made his equalization payments to Oxana, which is why Oxana did not make her equalization payment to Alan. Again, please see amended Proof of Calim 13 for the specifics on this particular issue.

A proof of claim is presumed correct unless it is objected to and then the objecting party has the burden to establish the claim is incorrect. Proof of claim 13 has not been objected to, therefore, it is presumed correct and there is no contested matter. In addition, Judge Weissbrodt has stated on multiple occasions that any dispute as to support would not be decided in the bankruptcy court. The only reason the matter was not already heard in the family court was due to Alan's representation that he would not be objecting to Oxana's proof of claim. As stated previously, Oxana's position has always been that she would prefer to stipulate with Alan regarding the amount owed for support arrears. Again, this is an issue for family law counsel and not bankruptcy counsel.

Even if there was a contested matter that alone is not a justification to prevent a 2004 examination. The general rule is that when there is the existence of, or potential for, collateral litigation that alone is an insufficient reason to deny examination. See, e.g., In re Lufkin, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000)). In re Analytical Sys., Inc., 71 B.R. 408, 413 (Bankr. N.D. Ga. 1987) ("The fact that there is pending litigation between the parties is not relevant to a decision to allow a Rule 2004 examination.") If the primary purpose is to benefit the bankruptcy estate, "the fact that [examination] may also produce information which in turn may collaterally be used by third parties in separate litigation outside of the bankruptcy case is no reason to restrict its use or to shield parties . . . from such possible litigation." In re Mittco, Inc., 44 B.R. 35, 38 (Bankr. E.D. Wis. 1984). Additionally, some courts have allowed discovery under Rule 2004 even when it is in aid of pending litigation. See In re Sun Med. Mgmt., Inc., 104 B.R. 522 (Bankr. M.D. Ga. 1989).

The 2004 examination of Alan and the requested documents are for the sole purpose of determining assets of the bankruptcy estate and if the Debtors have acted in bad faith. The requested documents do not request information relating to the outstanding support issue and are specific to determining what belongs to the bankruptcy estate and if your clients have acted in bad faith. Therefore, I believe your argument that there is a contested matter is baseless.

b.   Documents

In regards to the documents, I have addressed that issue in the stipulation for the 2004 examination. (Please see attached). I am in possession of all the documents that Oxana received via her production request through her family law attorney and have specifically excluded those documents. Therefore, this should no longer be an issue.

c.   Statements from Previous Counsel

You have stated that I should not rely on statements from Sam as proof of Alan's veracity. Again I must disagree. My client and I have requested a 2004 examination because we believe that Alan may be lying about his assets. This is based on statements from Sam, but also Alan's actions. Prior to filing for bankruptcy Alan liquidated a 401k account that belonged to both him and Oxana and Oxana was entitled to half of those funds. He then failed to pay the amount he owed her and hid his assets to prevent paying Oxana her equalization and child support payments. Alan then filed for bankruptcy where he submitted a plan payment that could not pay his priority claims. Alan failed to list his stock in Playdom and then stated under oath at the 341 meeting of creditors that he did not own that stock, although, he did list his other stock interests. Oxana then became aware that Alan had received a huge amount of money from the sale of his Playdom stock that he failed to list. Oxana sent a request to Alan's family law attorney requesting that Playdom proceeds be voluntarily placed in trust until a plan could be confirmed, but she received no response. Based on Alan's attorney failing to respond, Oxana had to bring a motion on shortened time to have those funds placed in trust. Even though your client had notice via a request from Oxana to place the Playdom stock in trust, you client ignored the request and went on a spending spree with the proceeds. Finally based on the documents that Oxana does have it appears that Alan has received substantial bonuses from his employer, but that income is not listed in his amended schedules, again adding proof that your client's schedules are not accurate.

We were then informed by Sam that the Playdom funds were ongoing, only after Sam believed we had the information based on the document production from Playdom. He stated that the ongoing payments were 10k a month, but again that is not what is listed in the bankruptcy schedules. All of this information indicates that Alan has not acted in good faith. All of the above facts support our belief that a 2004 examination is necessary to protect Oxana's interests.

In regards to your statement that Judge Weissbrodt has never appeared to be convinced of our arguments of Alan's bad faith, well the actual issue has not been heard before Judge Weissbrodt. If we conduct the 2004 examination and receive all the requested information then

Wootton- Pg 4

we will know how we need to proceed. The 2004 examination will help determine all the assets of the estate and if they were properly listed and will help our client determine if the plan provides all disposable income. We cannot ascertain that information without a 2004 examination and without the requested documents. Once we have that information then we will know if Alan's schedules are accurate or not and if his amended plan has committed all disposable income.

In regards to your statement that document request 6 and 11 are nothing more then an attempt to harass your client, I again must respectfully disagree. Request number 6 seeks bank account statements. The bank statements will show if Alan purposefully diverted assets prior to filing for bankruptcy. Additionally, the bank statements will show Alan's daily expenses and will help us compare those amounts against schedule J to see if your client's expenses are accurate. The bank statements will also help us determine if the accounting filed by Alan with the court regarding the use of the Playdom funds was accurate. Finally, the bank records will also help identify deposits and ensure that your client has provided us with all income information relating to your clients. Clearly that is a more then justified position for requesting the information.

In regards to document request no. 11, this request is relatively small. We are seeking receipts for any purchases that would not be listed in the bank statements such as purchases made by a credit card or cash. The request is only limited to purchases of $350.00 or specifically excludes payments made for child support or alimony payments. This information is again necessary to ascertain if your client has been acting in good faith prior to and during this current bankruptcy.

For the reasons stated above, we believe your client should produce all the requested documents and submit to a 2004 examination. As stated previously, if all assets and income have been properly listed and disclosed and your client has acted in good faith then there should be no reason your client would object to the 2004 examination.

I look forward to your response.

Sincerely,

_____
Kari L. Silva
Campeau Goodsell Smith

Case: 09-57389   Doc# 99-2   Filed: 05/09/11   Entered: 05/09/11 16:59:44   Page 19 of 19