Exhibit D
Latest stipulation proposal for 2004 examination, as of May 9, 2011
14 pages

Case: 09-57389    Doc# 99-3    Filed: 05/09/11    Entered: 05/09/11 16:59:44    Page 1 of
25

CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
KARI L. SILVA, #257033
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555

Attorneys for Moving Party
Oxana Wootton

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE

| | |
|---|---|
| In Re:<br><br>Alan T. and Wendy Lynn Wootton,<br><br>Debtors. | ) Case No: 09-57389 ASW<br>)<br>) Chapter 13<br>)<br>)<br>)<br>) [ *No Hearing Required*]<br>)<br>)<br>)<br>)<br>) |

**STIPULATION FOR ENTRY OF ORDER DIRECTING DEBTOR ALAN T. WOOTTON**
**TO APPEAR FOR EXAMINATION AND PRODUCE DOCUMENTS**
**(Federal Rule of Bankruptcy Procedure 2004)**

The parties hereby stipulate, by and through their respective undersigned attorneys, that the

attached Order for 2004 Examination and for Production of Documents (Exhibit "A") be entered in the

captioned bankruptcy case.

IT IS SO STIPULATED

CAMPEAU, GOODSELL, SMITH                    MILLER LEGAL SERVICES

By: /s/ *Kari L. Silva*_____                By: _____
    Kari Silva                                      Brooke Miller
    Attorneys for Oxana Wootton                      Attorney for Debtor Alan T. Wootton
Dated: April 14, 2011                        Dated:

1

1  CAMPEAU GOODSELL SMITH, L.C.
   SCOTT L. GOODSELL, #122223
2  KARI L. SILVA, #257033
   440 N. 1st Street, Suite 100
3  San Jose, California   95112
   Telephone:   (408) 295-9555
4
   Attorneys for Moving Party
5  Oxana Wootton

6                    UNITED STATES BANKRUPTCY COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8                                  SAN JOSE

9

10  In Re:                          )   Case No: 09-57389 ASW
                                    )
11  Alan T. and Wendy Lynn Wootton, )   Chapter 13
                                    )
12              Debtors.            )
                                    )
13                                  )   [ *No Hearing Required*]
                                    )
14                                  )
                                    )
15                                  )
                                    )
16  _____ )

17

18                          Exhibit "A" To
19  **STIPULATION FOR ENTRY OF ORDER DIRECTING DEBTOR ALAN T. WOOTTON**
       **TO APPEAR FOR EXAMINATION AND PRODUCE DOCUMENTS**
20                 **(Federal Rule of Bankruptcy Procedure 2004)**

21

22

23

24

25

26

27

28

                                      2

1    CAMPEAU GOODSELL SMITH, L.C.
     SCOTT L. GOODSELL, #122223
2    KARI L. SILVA, #257033
     440 N. 1st Street, Suite 100
3    San Jose, California    95112
     Telephone:   (408) 295-9555
4

5    Attorneys for Moving Party
     Oxana Wootton

6                 UNITED STATES BANKRUPTCY COURT

7                NORTHERN DISTRICT OF CALIFORNIA

8                       SAN JOSE

9

| | |
|---|---|
| In Re:                         ) | Case No: 09-57389 ASW |
| Alan T. and Wendy Lynn Wootton,   ) | Chapter 13 |
|           Debtors.     ) | ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION UNDER BANKRUPTCY RULE 2004 |
|                         ) | [ No Hearing Required Under L.B.R. 2004-1 |

      The STIPULATION FOR ENTRY OF ORDER DIRECTING DEBTOR ALAN T. WOOTTON

TO APPEAR FOR EXAMINATION AND PRODUCE DOCUMENTS (FEDERAL RULE OF

BANKRUPTCY 2004) ("Stipulation") having been submitted by Interested Party Oxana Wootton

"Wootton") and the Debtors Alan T. Wootton and Wendy Lynn Wootton (the "Debtors"), having

stipulated to the entry of this Order, the Court being fully advised in the premises; and good cause

appearing therefor;

IT IS HEREBY ORDERED, ADJURGED AND DECREED that Alan T. Wootton, be and hereby is directed as follows:

1.  Alan T. Wootton shall produce the Requested Documents in Exhibit 1, which is attached hereto, for examination and photcopying on or **before 10:00 a.m**. (prevailing Pacific Time) on **April 22, 2011** to the law offices of Miller Legal Services, 158 Shrader St Apt 3, San Francisco, CA 94117.  Wootton's counsel shall review the originals andWootton shall incur the cost of copying the originals and returning the documents to the Debtor.

2.  Alan T. Wootton shall appear for examination by Oxana Wootton on **April 27, 2011** at the offices of Campeau Goodsell Smith, LC, 440 North First St., Suite 100, San Jose, CA 95112, commencing **at 10:00 a.m,** and the examination will continue day to day until the examination is complete, except that no examination will take place on April 29 and May 2, 2011.

3.  Wootton is hereby authorized to issue and/or use subpoenas and/or other compulsory process, as is necessary, in furtherance of the terms of this Order.

4.  The Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and/or implementation of this Order.


*** END OF ORDER***

# EXHIBIT "1"

## Requested Documents

# REQUESTED DOCUMENTS

## INSTRUCTIONS

A. The documents covered by this request include all documents in your possession, custody, or control including, but not limited to, documents with your accountants, attorneys or other professionals.

B. Each request for the production is documents shall be deemed continuing in nature. If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C. You shall produce all documents in the manner in which they are maintained in the usual course of your business or you shall organize and label the documents to correspond with the categories in this request. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D. If you are currently without information necessary to respond to a Document Request, such Document Request shall be deemed to require a reasonable investigation.

E. If you cannot answer a Document request in full after exercising due diligence to secure the information to do so, state the answer to the extent possible, specifying your inability to answer the remainder, setting forth the facts surrounding your investigation, describing whatever information or knowledge you have concerning the unanswered portion, and identifying who else might have the information sought.

F. If you withhold any requested information on the basis of privilege, please so state, and for each such request or document provide:

    a. The type of document;

    b. The general subject matter of the material;.

    c. The date of the document;

    d. The nature of the privilege(s) claimed;

    e. The form in which the information exists and the person(s) who has knowledge of it;

f. Such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other

G. Documents attached to each other should not be separated.

H. Documents not otherwise responsive to this discovery request shall be produced if such document mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I. The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

J. In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K. If you object to any part of any request, you shall state fully in writing the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

L. Each document request shall be construed independently and not with reference to any other request for the purpose of limitation.

M. The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

N. The terms "all" and "each" shall be construed as "all and each."

O. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

P. The term "including" means "including, without limitation."

Q. When a Document requests data that can be provided as a computer database or spreadsheet

7

file, Propounding Party requests that the file be copied to a disk in one of the following formats in descending order of preference: PDF, ODF, TIFF, unless in the form of excel spreadsheet or other database, then the document should be produced in its original form.

R. Please sign the verification and mailing certificate attached to your answers.

## **DEFINITIONS**

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1. "YOU" or "YOUR" means Debtor Alan T. Wootton, or any entity or person either owned or controlled by Alan T. Wootton.

2. "WENDY WOTTON" means Wendy Lynn Wootton the co-Debtor in the above stated bankruptcy case and any entity or person either owned or controlled by Wendy Lynn Wootton

3. "DEBTORS" mean YOU and also means WENDY WOOTTON, or any entity or person either owned or controlled by YOU or WENDY WOOTTON.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean the record, receipt, transmission, or exchange of information via any medium including, but not limited to, correspondence, electronic communications, facsimiles, memos, records of discussions, conversations, conferences, interviews or meetings, recorded messages, or any other evidence of any of the foregoing, including any documents transmitted in connection with such communications.

5. "DOCUMENT" or "DOCUMENTS" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes without limitation, any designated documents or electronically stored information — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations — stored in any medium from which information can be obtained either directly or, if necessary, after

translation by the responding party into a reasonably usable form; or any designated tangible things; or to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

6. A request to "DESCRIBE" any DOCUMENT is a request to:

      a.     State the type of DOCUMENT as defined above;

      b.     the number of pages it contains;

      c.     a general description of how the document proves or disproves YOUR position.

7. "REGARDING" includes referring to, alluding to, responding to, relating to, connected with, commenting on, in respect of, about, concerning, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing, or pertinent to.

8. " IDENTIFY " means to state the title or type of the document, the date, the author, the address, and the number of pages.

9. "PROFESSIONAL" means a person connected with a profession: professional studies, such as an attorney, accountant, real estate appraiser etc.

10. "STOCK" means any form of contingent or non-contingent interest in a company, public or private, including but not limited to common stock, preferred stock, options to purchase stock, warrants, grants of options, promises of future grants or shares or options and any other interest associated with an interest in an entity.

///

///

///

///

///

9

# DOCUMENTS TO BE PRODUCED

**DOCUMENT PRODUCTION NO. ONE**:

DESCRIBE and produce all DOCUMENTS that provide salary/bonus information for YOU and WENDY WOOTTON from January 1, 2009 to the present date, including but not limited to each and every paycheck and W-2 form (excluding the documents listed below):

1. YOUR paychecks from PLAYDOM that have the following Check date:

January 15, 2010

January 29, 2010

February 12, 2010

February 26, 2010

March 15, 2010

March 31, 2010

April 15, 2010

April 30, 2010

May 14, 2010

May 28, 2010

June 15, 2010

June 30, 2010

July 15, 2010

July 30, 2010

August 13, 2010

August 31, 2010

September 1, 2010

///

2.  Bonus Checks from PLAYDOM with the following Check date:

December 31, 2009

January 15, 2010

January 29, 2010

April 30, 2010

June 15, 2010

**DOCUMENT PRODUCTION NO. TWO**:

Produce all Tax Returns and supporting tax DOCUMENTS for YOU and WENDY

WOOTTON for tax years 2008, 2009, 2010.

**DOCUMENT PRODUCTION NO. THREE**:

DESCRIBE and produce all DOCUMENTS REGARDING the sale of PLAYDOM to Disney

excluding:

1.  The document showing ISO Disqualify dated September 1, 2010;

2.  Any article regarding the sale that was published and available to the general public.

**DOCUMENT PRODUCTION NO. FOUR**:

DESCRIBE and produce all DOCUMENTS REGARDING YOUR proceeds for the sale of the

PLAYDOM STOCK, which includes but is not limited to payments you have received for the sale of

your STOCK and DOCUMENTS regarding future payments for your PLAYDOM STOCK, excluding:

1.  The document showing ISO Disqualify dated September 1, 2010;

2.  Notice of Stock Options grant dated March 11, 2009;

3.  Notice of Stock Options grant dated February 3, 2010;

4.   Any article regarding the sale that was published and available to the general public.

**DOCUMENT PRODUCTION NO. FIVE**:

DESCRIBE and produce all DOCUMENTS REGARDING YOUR current employment with Disney that relates to your salaray, bonuses, stock, future wage increases, or other benefits/perks related to your employment.

**DOCUMENT PRODUCTION NO. SIX**:

Produce all Bank Account statements <u>dated January 2010 to Present</u> for each and every open or closed bank account that belongs to YOU or WENDY WOOTTON.

**DOCUMENT PRODUCTION NO. SEVEN**:

Produce all 401k/IRA/Annuity or other retirement account statements (collectively "Retirement Accounts") <u>dated from August 2008 to Present</u> from each and every one of YOUR or WENDY WOOTTON's "Retirement Accounts" <u>excluding</u>:

1. Fidelity IRA statement with a time period of August 1, 2008-August 31, 2008.
2. MICRON Retirement Account Statement with a time period of September 25, 2006-September 24, 2008.

**DOCUMENT PRODUCTION NO. EIGHT**:

DESCRIBE and produce all DOCUMENTS REGARDING YOUR Disney STOCK.

**DOCUMENT PRODUCTION NO. NINE**:

DESCRIBE and produce all DOCUMENTS REGARDING YOUR PLAYDOM STOCK <u>excluding</u>:

1. Notice of Stock Options grant dated March 11, 2009.

Case 09-57389    Doc # 08-3    Filed 05/09/11    Entered: 05/09/11 16:59:44    Page 13 of 25

1    2.   Notice of Stock Options grant dated February 3, 2010

2    3.   The document showing ISO Disqualify dated September 1, 2010;

3    4.   The employment agreement from YOU PLUS INC. dated February 11, 2009.

4    5.   Any article regarding the sale that was published and available to the general public.

5

6

7   **DOCUMENT PRODUCTION NO. TEN**:

8        DESCRIBE and produce all DOCUMENTS REGARDING any other STOCK you may own.

9

10  **DOCUMENT PRODUCTION NO. ELEVEN**:

11       Produce all DOCUMENTS REGARDING single purchases or payments greater then $350.00

12  made from <u>May 2009 to the present date</u>, including but not limited to payments to PROFESSIONALS,

13  please exclude payments made in relation to child support or spousal support payments.

# COURT SERVICE LIST

**Alan T. Wootton**
6075 Paso Los Cerritos
San Jose, CA 95120

**Wendy Lynn Wootton**
6075 Paso Los Cerritos
San Jose, CA 95120

**Brooke Miller, Esq.**
Miller Legal Services
158 Shrader St Apt 3
San Francisco, CA 94117

**Office of the United States Trustee**
280 South First Street
Room 268
San Jose, CA 95113

**Devon Durham-Burk**
Chapter 13 Trustee
PO Box 50013
San Jose, CA 95150

**Kari L. Silva, Esq.**
Campeau Goodsell Smith
440 North First St., Ste 100
San Jose, CA 95112

1
2
3
4    Exhibit E
     Post-petition e-mails from Interested Party to Debtors
5              9 pages
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**From:** Oxana Wootton (oxanawootton2002@yahoo.com)
**To:** alan@gotohere.com; alex_woods66@yahoo.com;
**Date:** Tue, September 1, 2009 2:40:18 PM
**Cc:**
**Subject:** August Payment is overdue

Alan,

I have not yet received your August child support payment for $1700 as per our agreement. Please pay ASAP.
Oxana

**From:** Oxana Wootton (oxanawootton2002@yahoo.com)
**To:** alex_woods66@yahoo.com;
**Date:** Wed, October 7, 2009 4:15:44 PM
**Cc:** wendywootton@ymail.com;
**Subject:** Chapter 13 Petition

Alan,

If you are quite sober now, I have some questions I need to ask you.
They relate to your Chapter 13 filing, which we have copies of. You are
of course free to ignore or evade these questions as you wish, as a
creditor I have the right to ask them at the creditor's first meeting
with your trustee anyway. (Page numbers refer to your Voluntary
Petition Form B1, which I've attached to this note for your reference.)

1. On page 35 you note the liquidation of an IRA account in 2008.

Fidelity Investments
National Financial Services LLC
200 Liberty Street, 5th Floor
New York, NY 10281
IRA Acct #143-686832
Closing Balance 45000

What was the source of this account? Was any part of it community
property at the time of our divorce? Can you document it?

2. On page 11 you list your 40% interest in JotPark being worth $1
thousand. Is this determined? Did you invest any money into JotPark in return
for your shares? Does JotPark have any existing assets? Were any
JotPark assets sold off in the past year? Does JotPark hold title to
any intellectual property (copyrights, patents, etc.)?

3. On page 30 you list Wendy's income for 2007 as $27,112.88. Will
Wendy be seeking employment to help pay off your debts?

4. On page 37, section 18, "Nature, location and name of business," you
do not list your participation with JotPark. Why?

5. On page 49, you list "Other Necessary Expenses: childcare" of
$1,335. Are these expenses solely for the step-daughter?

6. On page 25, you list your employer as TriNet. Is this TriNet the HR
outsourcing company located in San Leandro, CA, or another firm? Are you a regular, salaried
employee of TriNet, a temp, a contractor, or some other type of agent of that company?

7. In your current agreement with your employer, are you entitled to
any monetary or equity benefits beyond your base salary? Bonuses?

Case: 09-57389   Doc# 99-3   Filed: 05/09/11   Entered: 05/09/11 16:59:44   Page 18 of 25

Stock or Stock options? Company equity? Employee stock purchase plan? 401K contributions? Etc.

8. On page 53, you show income in "Month 6" which is lower than the other 5 months. Was "Month 6" a partial month of employment? If so, how many days were you employed in month 6?

9. Have you repaid any personal loans to individuals in the past 12 months? (To family members? Business associates?)

Thank you in advance for your answers.

Oxana

Case: 09-57389    Doc# 99-3    Filed: 05/09/11    Entered: 05/09/11 16:59:44    Page 19
of 25

**From:** Oxana Wootton (oxanawootton2002@yahoo.com)
**To:** alex_woods66@yahoo.com;
**Date:** Tue, October 13, 2009 12:12:52 AM
**Cc:** wendywootton@ymail.com; Jessel.K@aol.com;
**Subject:** Fidelity IRA account

Alan,

On page 35 of your voluntary petition for Chapter 13 Bankruptcy (which I have attached to this note), you list the following IRA account:

IRA
Acct. #143-686832
Closing Balance: 45000

Fidelity Investments
National Financial Services LLC
200 Liberty Street, 5th Floor
New York, NY 10281

In your schedule of assets and debts, submitted to me in September of 2007 under penalty of perjury (also attached), this account is apparently not listed. Please explain. Is this account from Wendy?

This is the second time I have asked you to clarify this issue. The next request will be in the form of a subpoena.

Oxana

Case: 09-57389   Doc# 99-3   Filed: 05/09/11   Entered: 05/09/11 16:59:44   Page 20 of 25

**From:** Oxana Wootton (oxananomurgent@gmail.com)
**To:** alex_woods66@yahoo.com;
**Date:** Thu, August 26, 2010 12:12:59 PM
**Cc:**
**Subject:** Thoughts?

Alan,

I haven't heard back from you about how best to settle your
bankruptcy. Do you have any thoughts on my last note?

One thing I forgot to mention: you said that we should start by
getting me "a tax refund for the stock sale early 08", and you said "I
don't see any reason for you to oppose that." I wouldn't oppose it,
except that it's not possible. I discussed it in great detail with
Scott last year and he found no legal way of transferring those stock
sales to you. Instead we have credited you with the after-tax
proceeds of the sale, just as is specified in our divorce judgment.
If you have another tax expert who can prove Scott wrong then we
should get them together.

Do you plan to file for a formal determination of your arrears in
state court? That would give you a fair hearing to discuss any or all
divorce money issues and the court would come up with a final figure
that could be plugged into your chapter 13 plan. I could file for one
myself, except that your bankruptcy's "stay" may prevent me. It's
quicker and easier for you to file, and the result will be the same.

Of course we can skip a formal hearing in state court if we agree on a
number ourselves.

Oxana

Case: 09-57389   Doc# 99-3   Filed: 05/09/11   Entered: 05/09/11 16:59:44   Page 21 of 25

**From:** Alan Wootton (alex_woods66@yahoo.com)
**To:** oxananonurgent@gmail.com;
**Date:** Sun, September 5, 2010 5:28:04 PM
**Cc:**
**Subject:** Re: Disney windfall

I am really going to have to ask you to not send me emails like this and expect a response. I have attorneys and I talk to them. In fact, there is a response to you on this exact issue pending. Talk to jessie, not me. Please reply through official channels asap.

Sent from my iPhone

On Sep 5, 2010, at 3:22 PM, Oxana Wootton <oxananonurgent@gmail.com> wrote:

> Alan,
>
> I know that the Disney deal has closed and that you have been paid
> something out of it. Just in case you didn't get a chance to speak
> with your attorney last week, I have attached here a letter from Jesse
> Krenzel to her which you should read, a response is needed by this
> Tuesday.
>
> Additionally, please remember that the bankruptcy court has yet to
> hear my objection to plan confirmation based on your perjury and
> concealment of your PlayDom stock options. It is likely that if you
> spend the money from the Disney deal prior to such a hearing, you will
> be committing bankruptcy fraud. This federal crime carries a sentence
> of a fine of up to $250,000 and/or five years in prison.
>
> Oxana
> <Letter to Tamarin Adair 09-03-2010.pdf>

Case: 09-57389   Doc# 99-3   Filed: 05/09/11   Entered: 05/09/11 16:59:44   Page 22 of 25

## Brooke L. Miller

| | |
|---|---|
| **From:** | "Wendy Wootton" <wendywootton77@yahoo.com> |
| **To:** | "Brooke L. Miller" <brookelmiller@gmail.com> |
| **Sent:** | Saturday, March 19, 2011 1:19 PM |
| **Subject:** | Fwd: Summer camps: Immediate action required |

Sent from my iPhone

Begin forwarded message:

> **From:** Alan Wootton <alex_woods66@yahoo.com>
> **Date:** March 19, 2011 1:00:51 PM PDT
> **To:** Wendy L Wootton <wendywootton77@yahoo.com>
> **Subject: Fwd: Summer camps: Immediate action required**
>
> Well send this to Brooke because it contains bk threats.
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** Oxana Wootton <oxananonurgent@gmail.com>
>> **Date:** March 19, 2011 12:46:23 PM PDT
>> **To:** alan wootton <alex_woods66@yahoo.com>
>> **Subject: Summer camps: Immediate action required**
>>
>> Alan,
>>
>> Summer is approaching fast and the children need to be signed up for
>> full-time day care. We have had multiple discussions about summer
>> camps in co-parenting sessions but have reached no consensus other
>> than that you don't object to the kids going to any camps but you refuse
>> to pay anything towards the costs. You have promised on multiple
>> occasions to email a camp proposal to me but several weeks have past
>> and I have received nothing from you. As the children's primary
>> caregiver, I am faced with the necessity of making day care
>> arrangements with or without your participation.
>>
>> To simplify the process here is my proposal to you. I will enroll the
>> children in the camps of my choosing. You will contribute one half the
>> cost of a moderately-priced summer camp or summer day care. If you
>> cannot pay the cost at this time, I may be open to potentially adding it
>> (by written agreement) to your existing support debts, or to negotiating
>> another payment plan.
>>
>> If you agree with this plan, then all we need to agree on is the cost of a
>> reasonable summer camp. If my choices of camps cost more, I will
>> agree to make up the difference. This is fair to both of us, follows our
>> existing court orders, and ensures the children will get excellent care

5/8/2011

and educational experiences during the summer.

If you do not agree with the plan, and you have no other concrete proposal for summer care, I will still choose camps for the children (this must be done in any case) but I will follow the procedures in our custody agreement for notifying you of the total cost, proving that I have paid it, and demanding your half. If you then refuse to pay I will have to petition the court for a ruling on what you owe (including legal fees).

During our last co-parenting session you proposed sending the children to Golden Eagle Summer Sports Camp. According to their website (http://goldeneaglecamp.org/registration/pricing), the price for this camp would be approximately $345 per week per child for the times when we are at work. If you agree to pay 50% of that cost then I would accept your proposal.

There is no legal question that Jimmy and Katya will be going to some form of professional day care during the entire summer and that you have already agreed to pay 50% of the cost. Our stipulated agreement of July 2009 states:

9. The next regularly scheduled payment of ongoing base child support is due August 15, 2009 in the specified amount of $1,700 per month. As set forth herein, Mandatory additional child support of 50% of the child-care costs related to employment, or reasonably necessary job training, is separate and in addition to base child support.

I will gladly evaluate any proposals you offer regarding summer care for the children, with the following boundaries:

-- Having Wendy care for the children is not an option. We have a custody agreement that specifies the times when the children are in your care and I will not renegotiate that schedule for the summer. In any case Wendy is not the children's mother and is not entitled to any time with them. 

-- Bible camps or other religion-based options are not acceptable to me. They impose a world view to which I will not agree to expose the children for summer child care.

-- Contributing nothing to child care for the summer is also not an option. Bankrupt or not, you still have income and are still legally and morally obligated to support your children. 

In co-parent counseling you made the claim that the US Trustee will not allow you to pay for summer day care. I believe you are mistaken. Bankruptcy will not shield you from this or any other family support obligation. I am glad to hear that your new attorney has advised you not to spend any of your discretionary income, but child care costs do not fall into that category. (According to Federal Bankruptcy Court records, your attorney has never handled a Chapter 13 bankruptcy before so you may wish to consult other experts.)

According to 11 USC 1325, a Chapter 13 plan can only be confirmed if:

(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation;

11 USC 101 defines domestic support obligation as:

(14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

If you truly believe that bankruptcy law forbids you from paying half of the children's day care costs in summer, I urge you to discuss this issue with a bankruptcy expert and to present to my attorney any law that supports your position. Without that, I cannot believe that bankruptcy law is any impediment.

Please respond with your proposal by end of day Tuesday, March 22. After that date I will need to make the day care arrangements (both camps and day care programs fill up quickly). Please recall that I first brought this issue to your attention in co-parenting sessions over four weeks ago.

Also, because most camps need to be paid for in advance, I will need to know immediately if there is any week of the summer you wish to spend with the children for your one-week vacation.

Oxana