CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
KARI L. SILVA, #257033
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555

Attorneys for Interested Party
Oxana Wootton

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

In re:

Alan T. and Wendy Lynn Wootton

    Debtors.

Case No. 09-57389 ASW

Chapter 13

Date: June 20, 2011
Time: 1:45 P.M.
Location: United States Bankruptcy Court, 280 South First St., San Jose, CA
Courtroom: 3020
Judge: Hon. Arthur Weissbrodt

## OXANA WOOTTON'S SUPPLEMENTAL OPPOSITION TO DEBTORS' MOTION TO DISMISS CASE

TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY JUDGE

    Creditor, Oxana Wootton ("Creditor"), supplements her objection (Court Docket No. 108) to the dismissal of Alan T. and Wendy Lynn Wootton's (the "Debtors") Chapter 13 bankruptcy. Debtors have filed a reply to the opposition stating that the Debtors have acted in good faith during this bankrupcy, the facts indicate otherwise. Based on Alan T. Wootton's (Debtor) willful violations of orders of this Court, false statements made in court filings in this case, and the apparent abuse of the bankruptcy process, Creditor requests the dismissal of this bankruptcy case be denied. Alternatively, if the court dismisses the Debtors bankruptcy, Creditor requests that the bankruptcy court retain jurisdiction over violations for contempt and sanctions and funds of the bankruptcy estate that are currently held in trust.

1

# I.

# LEGAL ARGUMENT

**1. Bankruptcy Judges Have Broad Authority To Grant Any Action That Is Necessary Or Appropriate to Prevent An Abuse of Process.**

The Bankruptcy Code gives the court the power to *sua sponte* take any action necessary to enforce or implement court orders or rules, or to prevent an abuse of process under 11 U.S.C.S §105(a).

The Supreme Court in *Marrama* further notes that bankruptcy judges have broad authority to grant any action that is necessary or appropriate "to prevent an abuse of process" described in §105(a) of the Code, and bankruptcy judges can use that authority to prevent a debtor from taking actions that are prejudicial to creditors. *Marrama v. Citizens Bank*, 549 U.S. 365, 375 (U.S. 2007). If the Court grants the dismissal requested by the Debtors then Creditor will be prejudiced as the dismissal will vitiate the court orders and bankruptcy rulings of this court. The Playdom funds currently in trust under court order will be released back to the Debtors. As the Debtor has failed to acknowledge the valid claims of Creditor the claim will need to be litigated in Family Court, dismissal at this time without protections will allow the Debtor to spend the funds that are currently in trust. Debtor's actions throughout this bankruptcy case indicate that he has abused the bankruptcy process and has acted in bad faith.

**2. Debtors Actions Indicating Bad Faith Conduct or Abuse of the Bankruptcy Process.**

a. Violation of Court Orders

Debtors violated the order signed by this court on November 9, 2010, court docket No. 52, (the"Order") by failing to account for all proceeds from his Playdom stock that he received after the September 22, 2010 hearing. The Debtor further violated the Order by failing to place the continued Playdom proceeds into his attorney trust account. The Order required the Debtor to place the remaining proceeds from the sale of the Playdom stock into his attorney trust account that remained as

of September 22, 2010. Further the Order required that the Debtor provide a full accounting of the estimated amount of $136,000.00 received from the sale of the Playdom stock and a declaration that none of the total sale proceeds after the September 22, 2010 hearing had been spent. (See Silva Declaration ¶5

The Debtor filed a declaration on December 3, 2010 that as part of the takeover by Disney, the vested portion of his stock in Playdom was converted into cash by Disney. Debtor's declaration was silent regarding the unvested Playdom stock proceeds. (See Silva Declaration ¶6) The accounting attached to the Debtor's declaration also failed to disclose the fact that by December 3, 2010 he had liquidated three blocks of his Playdom stock that totaled a gross amount of $28, 660.00. (See Silva Declaration ¶8) Although the Debtor knew on August 30, 2010 that he would continue receiving Playdom stock payments he failed to inform this Court or any other interested party of the payout at the hearing held on September 22, 2010. (See Silva Declaration ¶4)  In fact there was no mention of the continued payments until early December 2010.   (See Silva Declaration ¶4)

Based on the paychecks and Merrill Lynch statements provided by the Debtor, the Debtor continued to receive stock disbursements which have totaled a gross amount of $78k from January 2011 to June 2, 2011. None of these funds were placed in trust even after this issued was raised at the December 16, 2010 hearing on the motion to dismiss the adversary case filed against creditor 10-05359 where Creditor's counsel, CGS ("CGS"), informed the Court that the Debtor was continuing to receive payments based on the sale of Playdom to Disney. The Court stated that Debtors counsel should confirm that those funds too would be placed in trust. CGS sought confirmation by Debtors' former counsel, Saman Taherian and Debtors' new counsel Brooke Miller that the funds would be put in trust, the request was never complied with. (See Silva Declaration ¶9). Based on the bank statements provided by the Debtor it appears that these funds have been spent, in violation of this Court's order. (See Silva Declaration ¶10)

    b. <u>Materially Misstatement of Relevant Information</u>

        1. <u>Understatement of Income</u>

Debtor's materially misrepresented their income in their amended schedules. 11 U.S.C.S. § 1325

provides that if a trustee or an unsecured creditor objects to a Chapter 13 debtor's plan, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or provides that all of the debtor's projected disposable income to be received over the duration of the plan will be applied to make payments in accordance with the terms of the plan. 11 U.S.C.S. § 1325(b)(1)

The Supreme Court in *Hamilton v. Lanning* has stated that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, 130 S. Ct. 2464.2478 (U.S. 2010) In other words if a Debtor knows or is fairly certain he will receive a set amount of money that amount should be listed for the purpose of repaying his creditors.

On March 30, 2011, (see Court docket no. 78 and 79) five months after the court initially ruled that the Playdom funds were property of the estate that needed to be placed in trust, the Debtors amended their bankruptcy schedules and amended their Chapter 13 Plan. (See Silva Declaration ¶11). The amended plan and schedules are clear misstatements of the Debtors income. Debtors' income was and currently is $13,333.34 per month, but the amended Schedule I lists Debtors income at $12,553.84 a difference of $779.50 per month. Further the Playdom stock is significantly understated at $8,435.57. Debtor's Playdom funds were transfers into a Merrill Lynch account that vests monthly once those shares vest the Debtor dictates when the payments are made to him. (See Silva Declaration ¶4, and ¶7). The amount paid to the Debtor for his Disney stock is based on the price of Disney stock at the time of the disbursement. Disney stock for the past year has ranged from 30.72 a share to 44.34 a share. (See Silva Declaration ¶13). The Debtor did not take his disbursements for February and March, and began immediately taking his disbursements after his schedules were amended. (See Silva Declaration ¶8). The amount listed in his amended schedules is an average of the six months prior to the amended filing. (See Silva Declaration ¶14). As the Debtor did not take the disbursements, the funds were less. As soon as the amended documents were filed, Debtor withdrew all his available funds. (See Silva Declaration ¶8). The total disbursements of the Playdom stock from January 1, 2011 to June 2, 2011 totaled $74,777.87. For this year the Debtor's total Playdom payouts averaged a

4

gross amount of $12,462.98 a month. A difference of $4,027.41 from what was listed on Debtors' bankruptcy schedules. Therefore, the Debtors understated their income by roughly $4,806.91 a month. The additional funds require a substantially larger plan payment then the $2500.76 proposed in the Debtors Chapter 13 plan.

2. Overstatement of Expenses

Debtors also increased their expenses in their amended Schedule J, but when asked why these particular expenses increased the Debtor had no explanation or stated it was a number they came up with. (See Silva Declaration ¶15). Below is a summary of just a few of the expenses that have increased[1]:

Electricity $200/month as amended $400/month;

Food $600/ month as amended $920/month;

Medical $40/ month as amended $892/month

c. Debtors' Unreasonably Delaye In Amending their Chapter 13 Plan

The Bankruptcy Code under §1307 (c) further states that the court may dismiss or convert a case for cause, which includes an unreasonable delay by the debtor that is prejudicial to creditors.

Unreasonable delay in the filing of necessary modifications of a plan, in obtaining necessary acceptances from the holders of allowed secured claims or in taking actions required under the plan are other examples of delays warranting conversion or dismissal under this paragraph. *In re Blaise*, 219 B.R. 946 (B.A.P. 2d Cir. 1998).

Debtor had no explanation of why his plan was not amended earlier. Debtors' previous counsel provided CGS multiple amendments and attempted to work with CGS to resolve the outstanding disputes between the parties. Therefore, the delay appears to be due to the Debors unwillingness to propose a plan in good faith. (See Silva Declaration ¶16).

---

[1] There are additional unexplained increases, but for the basis of this motion a detailed list and explination did not seem necessary and threfore was not included.

### d. Indicia of Improper Intent

#### 1. Proposing a Plan that Can Not be Completed

Debtors also failed to act in good faith by submitting a plan that could not be completed. The Playdom stock that the Debtor is currently receiving will be fully vested by February 3, 2014 and after that date Debtor will no longer be entitled to stock payments. After February 19, 2013 the amount of shares that the Debtor is entitled to will be significantly reduced and the cost per share will be higher. (See Silva Declaration ¶17). Therefore, if Debtors' salary remains the same, after early February the Debtor will no longer have the funds to pay his proposed plan payments. However, the amended plan proposes a payment that is based on the Debtor receiving those shares through the life of the plan which is roughly September 2014. As the proposed plan cannot be completed as filed, the Plan itself is a further indication that the Debtors have not been acting in good faith and are abusing the bankruptcy process.

#### 2. Ignoring A Letter Indicating the Playdom Proceeds Should Be Placed In Trust

On September 2, 2010 after Creditor became aware that the Debtor may be receiving a payout by Disney, a letter was sent requesting the funds be placed in trust. Debtor acknowledged he received the letter and chose to ignore it. (See Silva Declaration ¶18). Despite receiving that request, the Debtor failed to place the Playdom funds into trust and instead spent nearly $40,000.00 of those funds within two weeks. (See Silva Declaration ¶5).

#### 3. Needlessly Increasing Expenses While in Bankruptcy

While this bankruptcy has been pending, and without a confirmed plan, the Debtors Alan T. Wootton and Wendy Wootton (Debtors'), moved their residence to Saratoga increasing their overall monthly costs. Based on this move their rental costs increased from $2,950.00 to $3,200.00. (See Silva Declaration ¶19). Debtors move to this new residence was completed prior to a motion to dismiss. (See Silva Declaration ¶19)

Further, the Debtor established a 401k account during the pendency of this bankruptcy case and has forwarded estate assets to this account. From April 2010 to March 31, 2011, the Debtor contributed $11,419.55 to his 401k account. The amount contributed from April 2010 through March

31, 2011 exceeds the amount of funds currently held in the Chapter 13 trust account which is $9,299.14. (See Silva Declaration ¶20)

**SUGGESTED RESOLUTION/RECOMMENDATION**

Creditor requests the court retain jurisdiction to determine sanctionable conduct and violations for contempt, as this is the only court that has jurisdiction to hear these matters. Dismissal of this bankruptcy will vitiate the court orders and bankruptcy rulings of this court. If the court determines dismissal (with retaining limited jurisdiction of the rulings regarding contempt or sanctions), then dismissal shall only be permitted if funds generated during this bankruptcy presently held in trust by Debtors' counsel and the funds held by the Chapter 13 trustee be maintained in an attorney trust account and/or with the family court (if that court obtains jurisdiction over the funds). Further, the Court should also place an injunction against Debtors from refiling for bankruptcy protection for 180 days (or longer if the court deems appropriate) under 11 USC §109(g) and for cause. Otherwise, the dismissal of this case should be denied.

Respectfully Submitted,

Dated: June 17, 2011      CAMPEAU GOODSELL SMITH

By: */s/: Kari L. Silva*
    Kari L. Silva
    Attorneys for Oxana Wootton