CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
KARI L. SILVA, #257033
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555

ATTORNEYS FOR MOVING PARTY
OXANA WOOTTON

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | |
|---|---|
| In Re: | Case No: 09-57389 ASW |
| Alan T. and Wendy Lynn Wootton, | Chapter 13 |
| Debtors. | DECLARATION OF KARI SILVA IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS CHAPTER 13 CASE |

I Kari L. Silva declare as follows:

1.  I am an attorney with the law firm Campeau Goodsell Smith who represents Oxana Wootton (hereinafter "Creditor") a creditor and former spouse of Debtor Alan T. Wootton (hereinafter "Debtor").  I have personal knowledge of the statements made and could and would competently testify to the statements made herein.

2.  On June 10, 2011, I conducted a 2004 examination of the Debtor.  Due to the small amount of time between the actual examination and the hearing on Alan T. Wootton and Wendy Lynn Wootton's (the "Debtors") motion to dismiss, I only have a copy of the rough provided by the

DECLARATION OF KARI SILVA IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS
PAGE 1

1    court reporter.

3. Prior to the examination I received documents from Debtors' counsel, Brooke Miller that were responsive to the order for the 2004 examination, the attached documents were either filed with the court, produced as responsive to this current matter, have been authenticated by the Debtor or had previously been forwarded to me with an affidavit pursuant to Cal Evidence Code §1561 from Complex Legal Services.

4. Attached hereto as **Exhibit A** is an email on August 30, 2010 from Playdom to the Debtor explaining the stock he will receive based on Disney's purchase of Playdom and that the funds will be placed in a Merrill Lynch account. Despite this knowledge the Debtor did not inform the court or Creditor about the continued payments at the September 22, 2010 hearing. The additional funds were not disclosed to me until early December when Debtor's prior counsel called to inform me that there were continued payouts of roughly $10,000.00 on the Playdom stock.

5. Attached hereto as **Exhibit B** is a true and correct copy of the order signed November 9, 2010 explaining that all Playdom funds should be placed in trust and requiring the Debtor to file an accounting of the Playdom stock proceeds.

6. Attached hereto as **Exhibit C** is a true and correct copy of the declaration and accounting filed by the Debtor Alan T. Wootton on December 3, 2010,

7. Attached hereto as **Exhibit D** is the testimony explaining that the Debtor gets to decide when a check is provided based on the vested shares and the check is then mailed to him.

8. Attached hereto as **Exhibit E** are copies of each paycheck that shows the disbursement of Playdom stock and the associated summary of disbursements from the Merrill Lynch account which holds the stock options. The exhibit includes the December 2, 2010 paycheck showing that the Debtor had received $28, 660.64 in Playdom proceeds that had not been identified in

Debtors accounting filed with the court on December 3, 2010. It also shows the imputed income, the Playdom proceeds of June 2, 2011 of $74,777.87 and shows that no payments were made for February or March 2011, but a large disbursement was made in April 2011.

9. On the December 16, 2010 hearing on the motion to dismiss the adversary case filed against creditor 10-05359, I brought it to the court's attention that the Debtor was continuing to receive payouts on his Playdom stock. The court advised Debtors counsel to work with our office in placing those funds in trust. I had a conversation with Saman Taherian asking those funds be placed in trust. He indicated he would have his client do so. After Debtors hired new counsel Brooke Miller, I again requested the Playdom funds be placed in trust, she never responded to that request, the request was never complied with. Attached is a true and correct copy of one of the correspondences requesting the funds be placed in trust as **Exhibit F**.

10. I have reviewed Debtors bank statements and payments and it does not appear that any of the Playdom funds have been placed in trust.

11. Attached as **Exhibit G** is a true and correct copy of Debtors original schedule I and J and the original plan, also attached as Exhibit F is amended schedule I and J and the amended plan.

12. Attached as **Exhibit H** is a true and correct copy of the transcript where the Debtor states that the income is incorrect.

13. Attached as **Exhibit I** is a true and correct copy of a Yahoo summary of the value of Disney stock for a 52 week period.

14. Attached as **Exhibit J** is a true and correct copy of the transcript where Debtor's counsel explains how $8,435.57 amount was figured on the Debtors' bankruptcy schedules and that it was an average of 6 months prior to filing.

15. Attached as **Exhibit K** is a true and correct copy of the transcript where the Debtor explains that he does not know why they listed increased expenses and further states that he came up

with the medical number because he knew he needed one, but there was no explanation on how the number was reached.

16. Attached as **Exhibit L** is a true and correct copy of the transcript where the Debtor gives no explanation as to why he failed to amend his bankruptcy schedules. Debtors' previous counsel provided CGS multiple amendments and attempted to work with CGS to resolve the outstanding disputes between the parties. Therefore, the delay appears to be due to the Debors unwillingness to propose a plan in good faith.

17. Attached as **Exhibit M** is a true and correct copy of the transcript where the Debtor explains when the Playdom payout will end. Further, **Exhibit M** provides the Merrily Lynch statement, which provides that the Playdom stock that the Debtor is currently receiving will be fully vested by February 3, 2014 and after that date Debtor will no longer be entitled to stock payments. After February 19, 2013 the amount of shares that the Debtor is entitled to will be significantly reduced and the cost per share will be higher.

18. Attached as **Exhibit N** is testimony by the Debtor that he received notice that the Playdom funds should be placed in trust on or around September 2, 2010.

19. The Debtors recently moved residences. Attached as **Exhibit O** is a true and correct copy of the bill showing the increased rental cost. Debtors move to this new residence was completed prior to a motion to dismiss the Debtors currently Chapter 13 plan. Based on this move their rental costs increased from $2,950.00 to $3,200.00

20. Attached as **Exhibit P** is a true and correct copy of the 401k contributions. The Debtor established a 401k account during the pendency of this bankruptcy case and has forwarded estate assets to this account. From April 2010 to March 31, 2011, the Debtor contributed $11,419.55 to his 401k account. The amount contributed from April 2010 through March 31, 2011 exceeds the amount of funds currently held in the Chapter 13 trust account which is

Case: 09-57389    Doc# 122-1    Filed: 06/17/11    Entered: 06/17/11 10:58:21    Page 4 of 5

1    $9,299.14 based on a representation by the Chapter 13 trustees office.

2

3    I declare under penalty of perjury of the laws of the United States of America and the State of

4    California that the foregoing is true and correct.  Executed 16th day of June in San Jose, California.

5

6

7                                        Campeau Goodsell Smith, LC

8                                         _/s/: Kari L. Silva_____
                                         Kari L. Silva

9                                        Attorneys for Oxana Wootton

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KARI SILVA IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS
PAGE 5