1
2
3
4
5
6
7
# EXHIBIT "D"
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28 <u>Exhibit D Testimony regarding Debtors ability to decide when he receives payments</u>

1  those by your employer?

2      A.  When?

3      Q.  What was conveyed to you in regards to those

4  stock appreciation rights by your employer?

5      A.  I was informed that our stock options in

6  Playdom would be converted into Disney stock

7  according to some formula.

8      Q.  And did they give you any documentation

9  relating to that?

10      A.  It was complicated.

11      Q.  Now these stock appreciation rights were

12  originally from your Playdom stock, is that correct?

13      A.  Yes.

14      Q.  So going back to my original question, have

15  you actually received any additional funds from your

16  Playdom post sale that originated from your Playdom

17  funds?

18      A.  Having a hard time stating this right.  At

19  the risk of volunteering information, I have

20  exercised some stock appreciation rights and

21  subsequently had money sent to me.

22      Q.  How is that money sent?  Is it sent through

23  a pay check, is it cash payments?

24      A.  It's a check from Merrill Lynch.

25      Q.  Do you get to choose when the check is sent

                                                    49

1  to you, or is it sent automatically?

2      A.  No, I get to choose.

3      Q.  When did you have that conversation with

Case: 09-57389   Doc# 122-3   Filed: 06/17/11   Entered: 06/17/11 10:58:21   Page 2
of 42

6/16/2011 10:29 PM

1
2
3
4
5
6
# EXHIBIT "E"
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27  <u>Exhibit E- Payment on stocks and associated paychecks</u>
28



| Key Facts | The Walt Disney Company | Prepared For: |
|---|---|---|
| | DIS  $39.38 | Alan T Wootton<br>20299 Merida Dr<br>Saratoga, CA 95070 |
| Statement Period  06/04/2010 To<br>(MM/DD/YYYY)       06/04/2011 | Closing Price<br>as of 06-03-2011 09:08 PM | |

### Stock Appreciation Right Balance

Potential Income @ $39.38

| Grant Date | SAR Price | Grant Type | SARs Granted | Beginning Balance for Period | +/- | Activity | Current Balance | Last Date to Exercise | Vest Date | SARs Vesting | SARs x Vested | Income Per = SAR | Total Income |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/11/2009 | $0.380000 | SAR | 8,163 | 8,163 | - | 2,448 | 5,715 | 03/11/2019 | | | 0 | $0.000000 | $0.00 |
| | | | | | | | | | 06/19/2011 | 272 | | | |
| | | | | | | | | | 07/19/2011 | 272 | | | |
| | | | | | | | | | 08/19/2011 | 272 | | | |
| | | | | | | | | | 09/19/2011 | 272 | | | |
| | | | | | | | | | 10/19/2011 | 273 | | | |
| | | | | | | | | | 11/19/2011 | 272 | | | |
| | | | | | | | | | 12/19/2011 | 272 | | | |
| | | | | | | | | | 01/19/2012 | 272 | | | |
| | | | | | | | | | 02/19/2012 | 272 | | | |
| | | | | | | | | | 03/19/2012 | 272 | | | |
| | | | | | | | | | 04/19/2012 | 272 | | | |
| | | | | | | | | | 05/19/2012 | 272 | | | |
| | | | | | | | | | 06/19/2012 | 272 | | | |
| | | | | | | | | | 07/19/2012 | 272 | | | |
| | | | | | | | | | 08/19/2012 | 272 | | | |
| | | | | | | | | | 09/19/2012 | 272 | | | |
| | | | | | | | | | 10/19/2012 | 272 | | | |
| | | | | | | | | | 11/19/2012 | 272 | | | |
| | | | | | | | | | 12/19/2012 | 273 | | | |
| | | | | | | | | | 01/19/2013 | 272 | | | |
| | | | | | | | | | 02/19/2013 | 273 | | | |
| 02/03/2010 | $8.140000 | SAR | 836 | 836 | - | 261 | 575 | 02/03/2020 | | | 17 | $31.240000 | $531.08 |
| | | | | | | | | | 07/03/2011 | 18 | | | |
| | | | | | | | | | 08/03/2011 | 17 | | | |
| | | | | | | | | | 09/03/2011 | 17 | | | |
| | | | | | | | | | 10/03/2011 | 18 | | | |
| | | | | | | | | | 11/03/2011 | 17 | | | |
| | | | | | | | | | 12/03/2011 | 18 | | | |
| | | | | | | | | | 01/03/2012 | 17 | | | |
| | | | | | | | | | 02/03/2012 | 17 | | | |
| | | | | | | | | | 03/03/2012 | 18 | | | |
| | | | | | | | | | 04/03/2012 | 17 | | | |
| | | | | | | | | | 05/03/2012 | 18 | | | |
| | | | | | | | | | 06/03/2012 | 17 | | | |
| | | | | | | | | | 07/03/2012 | 18 | | | |
| | | | | | | | | | 08/03/2012 | 17 | | | |
| | | | | | | | | | 09/03/2012 | 17 | | | |
| | | | | | | | | | 10/03/2012 | 18 | | | |
| | | | | | | | | | 11/03/2012 | 17 | | | |
| | | | | | | | | | 12/03/2012 | 18 | | | |
| | | | | | | | | | 01/03/2013 | 17 | | | |
| | | | | | | | | | 02/03/2013 | 17 | | | |
| | | | | | | | | | 03/03/2013 | 18 | | | |
| | | | | | | | | | 04/03/2013 | 17 | | | |
| | | | | | | | | | 05/03/2013 | 18 | | | |
| | | | | | | | | | 06/03/2013 | 17 | | | |
| | | | | | | | | | 07/03/2013 | 18 | | | |
| | | | | | | | | | 08/03/2013 | 17 | | | |
| | | | | | | | | | 09/03/2013 | 17 | | | |
| | | | | | | | | | 10/03/2013 | 18 | | | |
| | | | | | | | | | 11/03/2013 | 17 | | | |
| | | | | | | | | | 12/03/2013 | 18 | | | |
| | | | | | | | | | 01/03/2014 | 17 | | | |
| | | | | | | | | | 02/03/2014 | 18 | | | |
| **Total** | | | 8,999 | 8,999 | | 2,709 | 6,290 | | | 6,273 | 17 | | $531.08 |

### Stock Appreciation Right Exercise

| Date | Grant Type | Number of SARs | Grant Date | Exercise - Price | SAR Price | = Exercise Gain Per SAR | Total Gain | - Taxes | = Net Cash Value of SAR Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| 05/24/2011 | SAR | 18 | 02/03/2010 | $41.105000 | $8.140000 | $32.965000 | $593.37 | $246.63 | $346.74 |
| 05/24/2011 | SAR | 544 | 03/11/2009 | $41.105000 | $0.380000 | $40.725000 | $22,154.40 | $8,138.79 | $14,015.61 |
| 04/11/2011 | SAR | 544 | 03/11/2009 | $41.745000 | $0.380000 | $41.365000 | $22,502.56 | $9,392.63 | $13,109.93 |

Case: 09-57389    Doc# 122-3    Filed: 06/17/11    Entered: 06/17/11 10:58:21    Page 4 of 42

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 04/11/2011 | SAR | | 243 | 02/03/2010 | $41.745000 | $8.140000 | $33.605000 | $8,166.02 | $3,464.84 | $4,701.18 |
| 01/26/2011 | SAR | → | 544 | 03/11/2009 | $39.647500 | $0.380000 | $39.267500 | $21,361.52 | $8,999.98 | $12,361.54 |
| 11/29/2010 | SAR | | 272 | 03/11/2009 | $36.405000 | $0.380000 | $36.025000 | $9,788.80 | $4,332.20 | $5,466.60 |
| 11/02/2010 | SAR | | 272 | 03/11/2009 | $36.275000 | $0.380000 | $35.895000 | $9,763.44 | $4,316.73 | $5,446.71 |
| 10/07/2010 | SAR | | 272 | 03/11/2009 | $33.830000 | $0.380000 | $33.450000 | $9,098.40 | $4,025.77 | $5,072.63 |
| | Total | | 2,709 | | | | | $103,438.51 | $42,917.55 | $60,520.94 |

**Grant Award Acceptance**

| Grant Date | Grant Type | Number Granted | Number Accepted | Number Not Accepted | Accept By Date | Status | Status Date | Last Status Updated By |
|---|---|---|---|---|---|---|---|---|
| 03/11/2009 | SAR | 8,163 | 8,163 | 0 | 03/11/2019 | Accepted | 10/01/2010 | CL |
| 02/03/2010 | SAR | 836 | 836 | 0 | 02/03/2020 | Accepted | 10/01/2010 | CL |
| | Total | 8,999 | 8,999 | 0 | | | | |

**Notice to participants with performance awards. If you had an outstanding performance award as of January 1, 2010, and had activity after December 31, 2010, your year-end statement will reflect all performance award activity in the Total Paid column. If you have any questions please contact a Participant Service Representative.**

**If you have any questions, please contact a Participant Service Representative at 1-877-859-1100 . If you reside outside of the U.S., Canada or Puerto Rico, please contact a Participant Service Representative at +1-609-818-8894 .**

The data presented on this section of your statement is for record keeping purposes only. This section of your statement does not reflect the holding of securities, cash, or cash equivalents by Merrill, Lynch, Pierce, Fenner & Smith Incorporated. Accordingly, the options reflected on this section of your statement are not subject to the provisions of the Securities Investor Protection Act of 1970, and brokerage account terms and conditions do not apply.

Please refer to the provisions in your individual award agreement, if applicable, and/or the official stock plan document, which govern the terms of your award. The provisions in the award agreement, if applicable, and stock plan document supersede any information, including conflicting information, reflected in this statement or on the Benefits OnLine website.

Disney Worldwide Services, Inc. Paying agent for Integration Services, LLC
100 W Evelyn Ave Ste 110, Mountain View, CA, 94041

Name        Alan T Wootton                                      ID  ████        Net Pay

Pay Period  11/04/2010-11/04/2010
Period      00/0000
Pay Area    02
Check Date  11/04/2010

| Earnings | Hours | Current | Year-to-Date |
|---|---|---|---|
| Salary | | | 27,618.45 |
| Regular | | 1,255.00- | |
| Holiday | | 627.69 | |
| TOTAL EARNINGS | | | 26,991.14 |
| IMPUTED INCOME | | | |
| R-Stock Option | 9,763.44 | | 18,861.84 |

| Deductions/Taxes | Current | Year-to-Date |
|---|---|---|
| PRE-TAX DEDUCTIONS | | |
| Dental Pre Tax PY | | 83.97 |
| Medical PreTax PY | | 628.56 |
| Vision Pre Tax PY | | 13.23 |
| 401k EE PYD | | 753.20 |
| TOTAL PRE-TAX DED | | 1,478.96 |
| AFTER-TAX DEDUCTIONS | | |
| Garn Bankruptcy | | 987.24 |
| TOTAL AFTERTAX DED | | 987.24 |
| EMPLOYEE TAXES | | |
| FED    Withholding | 2,463.62 | 8,840.07 |
| FED    Soc Security | 605.34 | 2,797.89 |
| FED    Medicare Tax | 141.57 | 654.34 |
| CA     Withholding | 998.80 | 3,540.21 |
| CA     Disability T | 107.40 | 496.40 |
| TOTAL EE TAXES | 4,316.73 | 16,328.91 |

To view your remaining quota balances, please
access the View Available Time Off module on
The Hub (Personal tab).

If you are missing hours from your pay, please see your Supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000,or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for Integration Services, LLC
100 W Evelyn Ave Ste 110, Mountain View, CA, 94041

Name        Alan T Wootton                    ID  ▮▮▮▮        Net Pay        1,852.66

Pay Period 10/31/2010-11/06/2010                To view your remaining quota balances, please
Period      45/2010                             access the View Available Time Off module on
Pay Area    02                                  The Hub (Personal tab).
Check Date  11/10/2010

| Earnings | Hours | Current | Year-to-Date |
|---|---|---|---|
| Salary | 40.00 | 3,138.46 | 30,756.91 |
| Regular | | | 1,255.00- |
| Holiday | | | 627.69 |
| TOTAL EARNINGS | | 3,138.46 | 30,129.60 |
| TOTAL HOURS WORKED | 40.00 | | |

| Deductions/Taxes | Current | Year-to-Date |
|---|---|---|
| PRE-TAX DEDUCTIONS | | |
| Dental Pre Tax PY | 9.33 | 93.30 |
| Medical PreTax PY | 69.84 | 698.40 |
| Vision Pre Tax PY | 1.47 | 14.70 |
| 401k EE PYD | 94.15 | 847.35 |
| TOTAL PRE-TAX DED | 174.79 | 1,653.75 |
| AFTER-TAX DEDUCTIONS | | |
| Garn Bankruptcy | | |
| Garn Bankruptcy | 164.54 | 1,151.78 |
| TOTAL AFTERTAX DED | 164.54 | 1,151.78 |
| EMPLOYEE TAXES | | |
| FED Withholding | 486.59 | 9,326.66 |
| FED Soc Security | 189.58 | 2,987.47 |
| FED Medicare Tax | 44.34 | 698.68 |
| CA Withholding | 192.32 | 3,732.53 |
| CA Disability T | 33.64 | 530.04 |
| TOTAL EE TAXES | 946.47 | 17,275.38 |

IMPUTED INCOME
Stock Option                                18,861.84

PAYMENT DISTRIBUTION

| Type | Amount | Bank# | Acct Type or Chk# |
|---|---|---|---|
| DIRECT DEP | 1,852.66 | ▮▮▮▮ | CHECKING |

If you are missing hours from your pay, please see your Supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000, or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for Integration Services, LLC
100 W Evelyn Ave Ste 110,  Mountain View,  CA,  94041

Name          Alan T Wootton                    ID          ▮▮▮▮▮▮          Net Pay

Pay Period 12/02/2010-12/02/2010
Period          00/0000
Pay Area        02
Check Date      12/02/2010

To view your remaining quota balances, please
access the View Available Time Off module on
The Hub (personal tab).

| Earnings | Hours | Current | Year-to-Date |
|---|---|---|---|
| Salary | | | 38,916.91 |
| Regular | | | 1,255.00- |
| Holiday | | | 1,883.07 |
| TOTAL EARNINGS | | | 39,544.98 |
| IMPUTED INCOME | | | |
| R-Stock Option | 9,798.80 | | 28,660.64 |

| Deductions/Taxes | Current | Year-to-Date |
|---|---|---|
| PRE-TAX DEDUCTIONS | | |
| Dental Pre Tax PY | | 121.29 |
| Medical PreTax PY | | 907.92 |
| Vision Pre Tax PY | | 19.11 |
| 401k EE PYD | | 1,129.80 |
| TOTAL PRE-TAX DED | | 2,178.12 |
| AFTER-TAX DEDUCTIONS | | |
| Garn Bankruptcy | | 1,645.40 |
| TOTAL AFTERTAX DED | | 1,645.40 |
| EMPLOYEE TAXES | | |
| FED   Withholding | 2,472.39 | 13,258.82 |
| FED   Soc Security | 607.52 | 4,163.75 |
| FED   Medicare Tax | 142.08 | 973.78 |
| CA    Withholding | 1,002.42 | 5,311.91 |
| CA    Disability T | 107.79 | 738.73 |
| TOTAL EE TAXES | 4,332.20 | 24,446.99 |

If you are missing hours from your pay, please see your Supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000,or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for Playdom Inc
100 W Evelyn Ave Ste 110,   Mountain View,   CA,   94041

Name        Alan T Wootton                          ID  ████████                        Net Pay

Pay Period 01/27/2011-01/27/2011                    To view your remaining quota balances, please
Period            00/0000                            access the View Available Time Off module on
Pay Area          02                                 The Hub (Personal tab).
Check Date    01/27/2011

| Earnings | Hours | Current | Year-to-Date | Deductions/Taxes | Current | Year-to-Date |
|---|---|---|---|---|---|---|
| Bonus | | | 3,200.00 | PRE-TAX DEDUCTIONS | | |
| Salary | | | 11,298.46 | Dental Pre Tax PY | | 46.20 |
| Holiday | | | 1,255.38 | Medical PreTax PY | | 294.96 |
| | | | | Vision Pre Tax PY | | 4.08 |
| TOTAL EARNINGS | | 21,361.52 | 15,753.84 | 401k EE PYD | | 472.60 |
| | | | | | | |
| IMPUTED INCOME | | | | TOTAL PRE-TAX DED | | 817.84 |
| R-Stock Option | 21,361.52 | | 21,361.52 | | | |
| | | | | AFTER-TAX DEDUCTIONS | | |
| | | | | Garn Bankruptcy | | 658.16 |
| | | | | | | |
| | | | | TOTAL AFTERTAX DED | | 658.16 |
| | | | | | | |
| | | | | EMPLOYEE TAXES | | |
| | | | | FED   Withholding | 5,351.42 | 8,052.74 |
| | | | | FED   Soc Security | 897.19 | 1,544.35 |
| | | | | FED   Medicare Tax | 309.75 | 533.17 |
| | | | | CA    Withholding | 2,185.28 | 3,234.38 |
| | | | | CA    Disability T | 256.34 | 441.24 |
| | | | | | | |
| | | | | TOTAL EE TAXES | 8,999.98 | 13,805.88 |

If you are missing hours from your pay, please see your supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000,or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for playdom Inc
395 Page Mill Rd, Ste 200, Palo Alto, CA, 94306

Name          Alan T Wootton          ID  ██████          Net Pay

Pay Period 04/14/2011-04/14/2011
Period                      00/0000
Pay Area                    02
Check Date        04/14/2011

To view your remaining quota balances, please
access the View Available Time Off module on
The Hub (Personal tab).

| Earnings | Hours | Current | Year-to-Date | Deductions/Taxes | Current | Year-to-Date |
|---|---|---|---|---|---|---|
| Bonus | | | 3,200.00 | PRE-TAX DEDUCTIONS | | |
| Salary | | | 45,193.83 | Dental Pre Tax PY | | 173.25 |
| Holiday | | | 1,883.07 | Medical PreTax PY | | 1,106.10 |
| | | | | Vision Pre Tax PY | | 15.30 |
| TOTAL EARNINGS | | ............ | 50,276.90 | 401k EE PYD | | 1,508.25 |
| | | | | | | |
| IMPUTED INCOME | | ............ | ............ | TOTAL PRE-TAX DED | ............ | 2,802.90 |
| R-Stock Option | | 30,668.58 | 52,030.10 | | | |
| | | | | AFTER-TAX DEDUCTIONS | ............ | ............ |
| | | | | Garn Bankruptcy | | 2,468.10 |
| | | | | | | |
| | | | | TOTAL AFTERTAX DED | ............ | 2,468.10 |
| | | | | | | |
| | | | | EMPLOYEE TAXES | | |
| | | | | FED   Withholding | 7,711.64 | 21,059.01 |
| | | | | FED   Soc Security | 1,288.08 | 4,242.52 |
| | | | | FED   Medicare Tax | 444.70 | 1,464.68 |
| | | | | CA    Withholding | 3,137.39 | 8,383.56 |
| | | | | CA    Disability T | 275.66 | 1,119.79 |
| | | | | | ............ | ............ |
| | | | | TOTAL EE TAXES | 12,857.47 | 36,269.56 |

If you are missing hours from your pay, please see your Supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000,or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for Playdom Inc
395 Page Mill Rd, Ste 200, Palo Alto, CA, 94306

Name          Alan T Wootton                          ID ████████              Net Pay         1,956.79

Pay Period 04/10/2011-04/16/2011
Period     16/2011
Pay Area   02
Check Date 04/21/2011

To view your remaining quota balances, please
access the View Available Time Off module on
The Hub (personal tab).

| Earnings | Hours | Current | Year-to-Date | Deductions/Taxes | Current | Year-to-Date |
|---|---|---|---|---|---|---|
| Bonus | | | 3,200.00 | PRE-TAX DEDUCTIONS | | |
| Salary | 40.00 | 3,138.46 | 48,332.29 | Dental Pre Tax PY | 11.55 | 184.80 |
| Holiday | | | 1,883.07 | Medical PreTax PY | 73.74 | 1,179.84 |
| | | | | Vision Pre Tax PY | 1.02 | 16.32 |
| TOTAL EARNINGS | | | 53,415.36 | 401k EE PYD | 94.15 | 1,602.40 |
| TOTAL HOURS WORKED | 40.00 | 3,138.46 | | TOTAL PRE-TAX DED | 180.46 | 2,983.36 |
| IMPUTED INCOME | | | | | | |
| Stock Option | | | 52,030.10 | AFTER-TAX DEDUCTIONS | | |
| | | | | Garn Bankruptcy | | 2,632.64 |
| PAYMENT DISTRIBUTION | | | | Garn Bankruptcy | 164.54 | |
| Type | Amount | Bank# | Acct Type or Chk# | TOTAL AFTERTAX DED | 164.54 | 2,632.64 |
| DIRECT DEP | 1,956.79 | ████ | CHECKING | | | |
| | | | | EMPLOYEE TAXES | | |
| | | | | FED Withholding | 481.33 | 21,540.34 |
| | | | | FED Soc Security | 128.19 | 4,370.71 |
| | | | | FED Medicare Tax | 44.26 | 1,508.94 |
| | | | | CA Withholding | 182.89 | 8,566.45 |
| | | | | CA Disability T | | 1,119.79 |
| | | | | TOTAL EE TAXES | 836.67 | 37,106.23 |

If you are missing hours from your pay, please see your Supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000,or
toll-free (877) 783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for Playdom Inc
395 Page Mill Rd, Ste 200,   Palo Alto,   CA,   94306

Name        Alan T Wootton                    ID   ▮▮▮▮▮▮                    Net Pay

Pay Period 05/26/2011-05/26/2011
Period              00/0000                         To view your remaining quota balances, please
Pay Area            02                              access the View Available Time Off module on
Check Date          05/26/2011                      The Hub (Personal tab).

| Earnings | Hours | Current | Year-to-Date |
|---|---|---|---|
| Bonus | | 3,200.00 | |
| Salary | | 64,024.59 | |
| Holiday | | 1,883.07 | |
| TOTAL EARNINGS | | 69,107.66 | |
| IMPUTED INCOME | | ........... | |
| R-Stock Option | 22,747.77 | 74,777.87 | |

| Deductions/Taxes | Current | Year-to-Date |
|---|---|---|
| PRE-TAX DEDUCTIONS | | |
| Dental Pre Tax PY | | 242.55 |
| Medical PreTax PY | | 1,548.54 |
| Vision Pre Tax PY | | 21.42 |
| 401k EE PYD | | 2,073.15 |
| TOTAL PRE-TAX DED | | 3,885.66 |
| AFTER-TAX DEDUCTIONS | | |
| Garn Bankruptcy | | 3,455.34 |
| TOTAL AFTERTAX DED | | 3,455.34 |
| EMPLOYEE TAXES | | |
| FED   Withholding | 5,728.48 | 29,675.47 |
| FED   Soc Security | | 4,485.60 |
| FED   Medicare Tax | 329.84 | 2,060.06 |
| CA    Withholding | 2,327.10 | 11,808.00 |
| CA    Disability T | | 1,119.79 |
| TOTAL EE TAXES | 8,385.42 | 49,148.92 |

If you are missing hours from your pay, please see your Supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at tie line 8-255-7000, (321) 939-7000,or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

Disney Worldwide Services, Inc. Paying agent for Playdom Inc
395 Page Mill Rd, Ste 200, Palo Alto, CA, 94306

| Name | Alan T Wootton | | ID | | Net Pay | 2,084.99 |

Pay Period 05/22/2011-05/28/2011
Period 22/2011
Pay Area 02
Check Date 06/02/2011

To view your remaining quota balances, please
access the View Available Time Off module on
The Hub (personal tab).

| Earnings | Hours | Current | Year-to-Date |
|---|---|---|---|
| Bonus | | | 3,200.00 |
| Salary | 40.00 | 3,138.46 | 67,163.05 |
| Holiday | | | 1,883.07 |
| TOTAL EARNINGS | | 3,138.46 | 72,246.12 |
| TOTAL HOURS WORKED | 40.00 | | |
| IMPUTED INCOME | | | |
| Stock Option | | | 74,777.87 |

| Deductions/Taxes | Current | Year-to-Date |
|---|---|---|
| PRE-TAX DEDUCTIONS | | |
| Dental Pre Tax PY | 11.55 | 254.10 |
| Medical PreTax PY | 73.74 | 1,622.28 |
| Vision Pre Tax PY | 1.02 | 22.44 |
| 401k EE PYD | 94.15 | 2,167.30 |
| TOTAL PRE-TAX DED | 180.46 | 4,066.12 |
| AFTER-TAX DEDUCTIONS | | |
| Garn Bankruptcy | | |
| Garn Bankruptcy | 164.54 | 3,619.88 |
| TOTAL AFTERTAX DED | 164.54 | 3,619.88 |
| EMPLOYEE TAXES | | |
| FED Withholding | 481.33 | 30,156.80 |
| FED Soc Security | | 4,485.60 |
| FED Medicare Tax | 44.25 | 2,104.31 |
| CA Withholding | 182.89 | 11,990.89 |
| CA Disability T | | 1,119.79 |
| TOTAL EE TAXES | 708.47 | 49,857.39 |

PAYMENT DISTRIBUTION

| Type | Amount | Bank# | Acct Type or Chk# |
|---|---|---|---|
| DIRECT DEP | 2,084.99 | | CHECKING |

If you are missing hours from your pay, please see your supervisor/
Manager. If you have further questions about your paycheck or
wages, call DWSS Payroll at the line 8-255-7000, (321) 939-7000, or
toll-free (877)783-2572, 8:00 am to 8:00 pm Eastern.

# EXHIBIT "F"

Exhibit F- Correspondence requesting additional Playdom funds be placed in trust

LAW OFFICES

# CAMPEAU GOODSELL SMITH

A LAW CORPORATION

440 N. 1ST STREET, SUITE 100

SAN JOSE, CALIFORNIA 95112-4024

TELEPHONE: (408) 295-9555

FACSIMILE: (408) 295-6606

SCOTT L. GOODSELL
GREGORY J. CHARLES
WILLIAM J. HEALY
KARI L. SILVA

KENNETH J. CAMPEAU
*OF COUNSEL*

February 16, 2011

Brooke Miller, Esq.                                          *Via Email Only*
Miller Legal Services
158 Shrader St Apt 3
San Francisco, CA 94117
brookelmiller@gmail.com

> Re: *In re Alan T. and Wendy Lynn Wootton, debtors*;
> USBC (Northern District)(San Jose Div.) Case No.: 09-57389 ASW

Dear Brooke:

It was a pleasure speaking with you last week. I truly hope that we can quickly resolve the outstanding disputes between your client, Alan Wootton, and my client, his former spouse, Oxana Wootton.

Attached is an excel spreadsheet prepared by our client which outlines the amount of money Alan owes her. I have not attached the documents submitted in Oxana's proof of claim as I am sure you already have that information. Basically, the claim is separated into two distinct categories. The first and largest claim is for child and spousal support arrears the second claim is for the equalization payment of their community property.

Child and Spousal Support

As you are aware Child/ Spousal support is a priority non-dischargeable debt that must be paid in full in the life of the Chapter 13 plan. §§11 USC 507, 523, 1322, 1328. Child and spousal support arrears accrue interest at 10% per year Cal. Code of Civ Proc. §685.010. To the extent the support and interest are not paid during the life of the Chapter 13 plan, the support arrears and interest is still owed post bankruptcy discharge. See, §11 USC 1328; attached memorandum of Decision written by Judge Weissbrodt.

//
//

Equalization Payment

The second claim that Oxana has is for an equalization payment based on the division of the community property at the time of their divorce. The stipulations entered by Oxana and Alan call for certain payments by Alan and certain payments by Oxana. It should be noted that the division incorporated past child support arrears and therefore may be considered a support obligation. The stipulation required Oxana to sell her Ebay stock upon demand by Alan and required Alan to make a cash payment to Oxana. Alan ordered Oxana to sell her Ebay stock, which she did. However, Alan then failed to provide her with the cash payment he was required to make. Therefore, Oxana did not provide him with his interest in the stock proceeds. The forced sale triggered additional tax obligations for Oxana. Based on the mutual breach Alan has a claim against Oxana and Oxana has a claim against Alan. Accounting for Alan's setoff the equalization payment to Oxana totals $21,743.09 (see proof of claim for further information). Although an equalization payment is a priority non-dischargeable debt in a Chapter 7, it does not maintain that status in a Chapter 13 and therefore the proof of claim lists the equalization payment as a general unsecured claim. §§523(a)(5) and 1328(a)(2).

Chapter 13 Plan Payment

A chapter 13 plan must meet two requirements and if both requirements are not met then a plan cannot be confirmed: 1) the debtor must commit all disposable income to its Chapter 13 plan (§1325(b)(1)(B)) and 2) a debtor must pay their creditors the value of their non-exempt assets, referred to as the best interest of the creditors test. §1325(a)(4)

a.    Disposable Income

Generally, disposable income is determined by the mechanical means of projected disposable income (PDI) outlined in §11 USC 1325(b)(1)(B). Sam argued that based on the PDI Debtor's plan contributed all that was required. Previously, the 9th circuit took a very mechanical approach to projected disposable income and plan payments. However, that mechanical approach was recently rejected by the United States Supreme Court in Hamilton v. Lanning, 130 S. Ct. 2464 (U.S. 2010). The court specifically stated at pg 2478:

> Consistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation. (Emphasis added)

At the time of the bankruptcy filing, Alan's monthly income was listed as $13,333 and was stated in Form 22C as $11,883 per month. The Debtors proposed a plan payment of $700

per month which is less then the $918 per month disposable income in schedule I and J. Form 22C, also appears to have numerous errors.

Based on the information we received from Sam, Alan's income has increased from the date of their bankruptcy filing, and that increased income should be used to pay their creditors. It is my understanding that Alan is currently earning $20,000 per month, which would provide Alan and Wendy with an additional $6,667 to pay their creditors. Over 60 months Alan and Wendy are able to pay $455,100.00 to their creditors, which is more then their outstanding debt. Based on this information, Oxana believes that Alan and Wendy should propose a 100% plan. If you disagree please provide our office with a basis for your position. Additionally, we would appreciate all pay advices and information on any other income received for the past 90 days so we can ascertain Alan's salary. Please also confirm that Wendy is not currently working.

b.      Bankruptcy Assets and the Best Interest Test

Generally speaking, the best interest test is based on a liquidation analysis. The liquidation analysis takes all bankruptcy assets applies the exemptions and the funds or value of the assets that exceed the exemptions must be paid to the creditors.

Bankruptcy assets in a Chapter 7 are described in §541. Property of the estate includes all contingent and non-contingent interests. The estate does not include wages that are received post-bankruptcy filing. Bankruptcy assets in a Chapter 13 are defined in §1306. Property of the estate includes all assets listed in 11 USC 541, but it also includes wages as property of the estate.

Sam filed an adversary action citing *Allen v. Levy* (In Re Allen) 226 BR 857 (Bankr. N.D. Ill 1998) and *In Re Laton,* 261 B.R. 774 (Bankr M.D. FL 2001) for the proposition that Alan's PLAYDOM stock was not entirely property of the estate based on the formula in those two cases. Sam's premise was wrong, because the formula in those cases only apply in a Chapter 7 and not in a Chapter 13. The court in its ruling on our motion to dismiss allowed the Debtor leave to amend their complaint, but the court stated that §11 USC 1306 would apply and addressed its effect, essentially stating that based on §1306 the stock proceeds were property of the estate. In addition, the court had already ruled during our motion for relief from the automatic stay that all proceeds received from the sale of the PLAYDOM stock was property of the estate.

Prior to filing our motion to dismiss, we asked Sam to dismiss Alan's compliant and informed him that the complaint failed to refer to applicable law, but he failed to do so. A few weeks prior to the motion to dismiss the complaint, Sam informed me that the Debtors had no issue contributing all funds held in trust to the plan, but the complaint was filed to determine if the continued monthly payments of the PLAYDOM stock were property of the estate. Prior to this conversation my client and I were unaware of these continue payments. As discussed with Sam,

to the extent that the monthly payments are from the sale of the PLAYDOM stock, then those monthly payments are clearly property of the estate. We have requested, but have not received, any information relating to the continued payments. In addition, Sam informed us that the monthly payments would be placed in trust until a plan was confirmed, but I have not received confirmation that this has happened. Please note that we will require an accounting of all these funds and if any of those funds have been spent it is a basis for contempt of a court order.

Attorney Fees

In *Travelers*, the Supreme Court ruled that a creditor is entitled to attorney fees, See *Travelers Case. & Sur. Co. Amv. PG&E*, 549 US 443 (US 2007). When a state statute allows for attorney fees those may also be collected within the bankruptcy court *Busch v Hancock* (in re Busch, 369 B.R. 614 (B.A.P. 10th Cir. 2007). In California, a custodial parent is entitled to attorney fees to collect on an outstanding support obligation. Cal. Fam. Code §3557.

At the time of the bankruptcy filing, Alan was employed with Playdom and was entitled to stock options. Those stock options were not listed in the petition. At the 341 hearing, Alan was asked, "with your current employer have you been granted any stock options or stock or any other non-cash benefits?" in which Alan replied "NO". Please see the following email where you will find a summary of the questions and also an audio file of the hearing.

As it turned out, Alan did own interest in PLAYDOM and those stocks were very valuable. Oxana has had to incur enormous attorney fees to recover those assets for the bankruptcy estate so she can collect her support arrears. Through the end of November our client has incurred legal fees with our firm of $23, 535 and this does not include the attorney fees she has incurred with her previous counsel. Additionally, she has not received reimbursement of her support arrears since the filing of this Chapter 13 in 2009. Oxana is seeking a settlement payment of the costs incurred to collect on her support arrears.

Conclusion

To summarize, our client would like to receive 100% of what she is owed and recover the attorney fees she has had to incur to recover her support arrears. As the interest on the support arrears is continuing to accrue, our client would like to propose that the support arrears and attorney fees be paid within the first six months of the plan and the equalization payment can be paid through the life of the plan. The original proof of claim was filed in 2009 and the claim is continuing to increase due to the 10% interest that is accruing. To address this issue, your client can propose a plan to pay post petition interest or we can file an amended claim that includes the outstanding interest.

It is my understanding that your client disagrees with the amount of support arrears. If your client has a different number, please provide that to our office with the documentation that supports your client's number so we can review the information.

If our clients cannot agree on a support amount, then the matter will need to go to the family court. As stated yesterday, Oxana's family law attorney is prepared to file the necessary documents in family court to determine support arrears, but the complaint was not filed as we were informed that Alan would be proposing a 100% plan and was not going to object to the proof of claim.

Hopefully, we can resolve any outstanding issues regarding support as a failure to do so will only prolong the bankruptcy process and require additional attorney fees which we will seek reimbursement for.

Sincerely,

*/s/: Kari L. Silva*
Kari L. Silva
Campeau Goodsell Smith

Enclosures: As indicated

# EXHIBIT "G"

Exhibit G- Debtors filed Schedule I and J and the Chapter 13 plan and the amended Schedule I J and the amended Chapter 13 plan

B6I (Official Form 6I) (12/07)

In re **Alan T. Wootton & Wendy Lynn Wootton** _____ Case _____
               **Debtor**                                                           **(if known)**

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: Married | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S): daughter/stepdaughter | AGE(S): 8 |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Sr. software engineer | Homemaker |
| Name of Employer | TriNet | |
| How long employed | 6 months | |
| Address of Employer | 1100 San Leandro Blvd. | |
| | San Leandro, CA 94577 | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ | 13,333.34 | $ | 0.00 |
| 2. Estimated monthly overtime | $ | 0.00 | $ | 0.00 |
| 3. SUBTOTAL | $ | 13,333.34 | $ | 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|   a. Payroll taxes and social security | $ | 4,181.62 | $ | 0.00 |
|   b. Insurance | $ | 299.90 | $ | 0.00 |
|   c. Union Dues | $ | 0.00 | $ | 0.00 |
|   d. Other (Specify: (D)CA SDI (per pay period) ) | $ | 143.36 | $ | 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 4,624.88 | $ | 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 8,708.46 | $ | 0.00 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | 0.00 |
| 8. Income from real property | $ | 0.00 | $ | 0.00 |
| 9. Interest and dividends | $ | 0.00 | $ | 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | 0.00 | $ | 0.00 |
| 11. Social security or other government assistance ( Specify) | $ | 0.00 | $ | 0.00 |
| 12. Pension or retirement income | $ | 0.00 | $ | 0.00 |
| 13. Other monthly income (Specify) | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | 0.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on Lines 6 and 14) | $ | 8,708.46 | $ | 0.00 |
| 16. COMBINED AVERAGE MONTHLY INCOME (Combine column totals from line 15) | | | $ | 8,708.46 |

(Report also on Summary of Schedules and, if applicable,
on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
    None

B6J (Official Form 6J) (12/07)

In re  Alan T. Wootton & Wendy Lynn Wootton          Case No. _____
          **Debtor**                                              **(if known)**

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made biweekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 2,950.00 |
|     a. Are real estate taxes included?    Yes _____ No ✓ | | |
|     b. Is property insurance included?    Yes _____ No ✓ | | |
| 2. Utilities: a. Electricity and heating fuel | $ | 200.00 |
|     b. Water and sewer | $ | 75.00 |
|     c. Telephone | $ | 200.00 |
|     d. Other  Cable & Internet | $ | 74.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 25.00 |
| 4. Food | $ | 600.00 |
| 5. Clothing | $ | 75.00 |
| 6. Laundry and dry cleaning | $ | 0.00 |
| 7. Medical and dental expenses | $ | 45.00 |
| 8. Transportation (not including car payments) | $ | 750.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 100.00 |
| 10.Charitable contributions | $ | 0.00 |
| 11.Insurance (not deducted from wages or included in home mortgage payments) | | |
|     a. Homeowner's or renter's | $ | 0.00 |
|     b. Life | $ | 0.00 |
|     c. Health | $ | 0.00 |
|     d.Auto | $ | 200.00 |
|     e. Other_____ | $ | 0.00 |
| 12.Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify)_____ | $ | 0.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
|     a. Auto | $ | 0.00 |
|     b. Other | $ | 0.00 |
|     c. Other_____ | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| 17. Other     Child support, child care | $ | 2,500.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data) | $ | 7,794.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

    None

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---|
|     a. Average monthly income from Line 15 of Schedule I | $ | 8,708.46 |
|     b. Average monthly expenses from Line 18 above | $ | 7,794.00 |
|     c. Monthly net income (a. minus b.) | $ | 914.46 |

Bankruptcy2009 ©1991-2009, New Hope Software, Inc. - ver. 4.4.9-739 - 31614 - Adobe PDF

In re _Alan T. Wootton and Wendy L. Wootton_        Case No. _09-57389-ASW_
                    **Debtor(s)**                                             (if known)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
## Amended 03/30/11

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| Status:<br>_Married_ | RELATIONSHIP(S):<br>_stepdaughter/daughter_ | | AGE(S):<br>_8_ |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | _Software Engineer_ | _Homemaker/Student_ |
| Name of Employer | _Playdom, Inc._ | |
| How Long Employed | _2 years_ | |
| Address of Employer | _100 W. Evelyn Ave., Ste. 110_<br>_Mountain View CA  94041_ | |

| INCOME: (Estimate of average or projected monthly income at time case filed) | | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ | _12,553.84_ | $ _0.00_ |
| 2. Estimate monthly overtime | $ | _0.00_ | $ _0.00_ |
| 3. SUBTOTAL | $ | _12,553.84_ | $ _0.00_ |
| 4. LESS PAYROLL DEDUCTIONS | | | |
|    a. Payroll taxes and social security | $ | _3,346.64_ | $ _0.00_ |
|    b. Insurance | $ | _345.24_ | $ _0.00_ |
|    c. Union dues | $ | _0.00_ | $ _0.00_ |
|    d. Other (Specify):  _(D) CA SDI (per pay period)_ | $ | _146.52_ | $ _0.00_ |
|            _401k EE PYD_ | $ | _345.24_ | $ _0.00_ |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | _4,183.64_ | $ _0.00_ |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | _8,370.20_ | $ _0.00_ |
| 7. Regular income from operation of business or profession or farm (attach detailed statement) | $ | _0.00_ | $ _0.00_ |
| 8. Income from real property | $ | _0.00_ | $ _0.00_ |
| 9. Interest and dividends | $ | _0.00_ | $ _0.00_ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | _0.00_ | $ _0.00_ |
| 11. Social security or government assistance | | | |
|    (Specify): | $ | _0.00_ | $ _0.00_ |
| 12. Pension or retirement income | $ | _0.00_ | $ _0.00_ |
| 13. Other monthly income | | | |
|    (Specify): _Playdom Inc stock_ | $ | _8,435.57_ | $ _0.00_ |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | _8,435.57_ | $ _0.00_ |
| 15. AVERAGE MONTHLY INCOME   (Add amounts shown on lines 6 and 14) | $ | _16,805.77_ | $ _0.00_ |
| 16. COMBINED AVERAGE MONTHLY INCOME:  (Combine column totals | | $ | _16,805.77_ |
|    from line 15; if there is only one debtor repeat total reported on line 15) | | | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

      _None_

In re <u>Alan T. Wootton and Wendy L. Wootton</u> ,      Case No. <u>09-57389-ASW</u>
               **Debtor(s)**                                                                (if known)

# SCHEDULE J-CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR
## Amended 03/30/11

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22 A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 2,950.00 |
|    a. Are real estate taxes included?  Yes ☐ No ☒ | | |
|    b. Is property insurance included?  Yes ☐ No ☒ | | |
| 2. Utilities: a. Electricity and heating fuel | $ | 400.00 |
|    b. Water and sewer | $ | 65.00 |
|    c. Telephone | $ | 203.00 |
|    d. Other  *Cable and Internet* | $ | 75.00 |
|    Other | $ | 0.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 40.00 |
| 4. Food | $ | 920.00 |
| 5. Clothing | $ | 150.00 |
| 6. Laundry and dry cleaning | $ | 25.00 |
| 7. Medical and dental expenses | $ | 892.00 |
| 8. Transportation (not including car payments) | $ | 800.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 400.00 |
| 10. Charitable contributions | $ | 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|    a. Homeowner's or renter's | $ | 0.00 |
|    b. Life | $ | 0.00 |
|    c. Health | $ | 0.00 |
|    d. Auto | $ | 200.00 |
|    e. Other | $ | 0.00 |
|    Other | $ | 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage) | | |
| (Specify)  *Taxes on Playdom Inc. stock* | $ | 3,635.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
|    a. Auto | $ | 0.00 |
|    b. Other | $ | 0.00 |
|    c. Other | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ | 2,200.00 |
| 15. Payments for support of additional dependents not living at your home | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| 17. Other:  *Legal fees (family law)* | $ | 400.00 |
|    Other:  *Children's summer camps* | $ | 250.00 |
|    Line 17 Continuation Page Total (see continuation page for itemization) | $ | 700.00 |
| 18. AVERAGE MONTHLY EXPENSES  Total lines 1-17. Report also on Summary of Schedules | $ | 14,305.00 |
|    and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

*Increases expected within next 12 months for: Medical expenses for dependent child; Dental expenses for one supported child; Medical expenses for W. Wootton.*

| 20. STATEMENT OF MONTHLY NET INCOME | | |
|---|---|---|
| a. Average monthly income from Line 16 of Schedule I | $ | 16,805.77 |
| b. Average monthly expenses from Line 18 above | $ | 14,305.00 |
| c. Monthly net income (a. minus b.) | $ | 2,500.77 |

B6J(Official Form 6J)(12/07)-Continuation Page

In re _Alan T. Wootton and Wendy L. Wootton_ ,  Case No. _09-57389-ASW_
Debtor(s)

# SCHEDULE J-CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR
**(Continuation page)**

17. (continuation) OTHER EXPENSES

| | | |
|---|---|---|
| W. Wootton Education | $ | 250.00 |
| Computer equipment | $ | 100.00 |
| Savings | $ | 200.00 |
| Court-ordered counseling | $ | 150.00 |
| Line 17 Continuation Page Total (seen as line item "17" on Schedule J) | $ | 700.00 |

In re:                                    Case No. 09-57389-ASW

Alan T. and Wendy Lynn Wootton
_____/    CHAPTER 13 PLAN
            Debtor(s)

1.   The future earnings of the Debtor(s) are submitted to the supervision and control of the Trustee, and the Debtor(s) will pay to the Trustee the sum of $ 700 _____ each month.   Initial attorneys fees are requested in the amount of $ 4,250.00 .
     **X**  Debtor(s) elect a voluntary wage order

2.   From the payments received, the Trustee will make disbursements as follows:
     (a)   On allowed claims for expenses of administration required by 11 U.S.C. § 507(a)(2) in deferred payments.
     (b)   On allowed secured claims, which shall be treated and valued as follows:

| Name | Value of Collateral | Estimated Mortgage/ Lease Arrears | Adequate Protection Payments (If specified) | Interest Rate (If specified) |
|---|---|---|---|---|
| | | | | |

     [The valuations shown above will be binding unless a timely objection to confirmation is filed. Secured claims will be allowed for the value of the collateral or the amount of the claim, whichever is less, and will be paid the adequate protection payments and the interest rates shown above. If an interest rate is not specified, 7% per annum will be paid. The remainder of the amount owing, if any, will be allowed as a general unsecured claim paid under the provisions of ¶ 2(d).]

     (c)   On allowed priority unsecured claims in the order prescribed by 11 U.S.C. § 507.
     (d)   On allowed general unsecured claims as follows:
           ___ at a rate of _____ cents on the dollar. The estimated term of the plan is _____ months. (Percentage Plan)
           **X** the sum of $42,000.00 payable over 60 months, distributed pro rata, in amounts determined after allowed administrative, secured and priority unsecured claims are paid. The plan payments will continue at the highest monthly payment provided in ¶ 1 as necessary to pay all allowed administrative, secured and priority unsecured claims within sixty months of confirmation. (Pot Plan)

3.   The debtor(s) elect to reject the following executory contracts of leases and surrender to the named creditor(s) the personal or real property that serves as collateral for a claim. The debtor(s) waive the protections of the automatic stay and consent to allow the named creditor(s) to obtain possession and dispose of the following identified property or collateral without further order of the court. Any allowed unsecured claim for damages resulting from the rejection will be paid under paragraph 2(d).

4.   The Debtor(s) will pay directly the following fully secured creditors and lessors or creditors holding long-term debt:
     Name                    Monthly Payment          Name                    Monthly Payment

5.   The date this case was filed will be the effective date of the plan as well as the date when interest ceases accruing on unsecured claims against the estate.   * * Please see attachment to plan

6.   The Debtor(s) elect to have property of the estate:
     ___ revest in the debtor(s) at such time as a discharge is granted or the case is dismissed.
     **X** revest in the debtor(s) upon plan confirmation. Once property revests, the Debtor(s) may sell or refinance real or personal property without further order of the court, upon approval of the Chapter 13 Trustee.

Dated: 08/31/2009        /s/ Alan T. Wootton              /s/ Wendy Lynn Wootton
                         _____          _____
                              Debtor                            Debtor

I, the undersigned, am the attorney for the above-named debtor(s) and hereby certify that the foregoing chapter 13 plan is a verbatim replica of pre-approved chapter 13 plan promulgated pursuant to B.L.R. 1007-1 for use in the San Jose Division.

Dated: 8/31/2009         /s/ Sam Taherian
_____  _____
                              Attorney for Debtor(s)

Rev. 04/06 (This certification must be signed for any Model Chapter 13 Plan generated by WordPerfect, Word, or other word processing program.)

**Re:**     **Alan T. Wootton**                         **Case No. 09-57389-ASW**
           **Wendy Lynn Wootton**

## Attachment to Chapter 13 Plan

### Other Provisions:

       Notwithstanding the paragraphs, hereinabove, the allowed domestic support claims shall continue to accrue interest at its statutory rate and pass through the bankruptcy as a non-dischargeable debt. The Trustee shall not be the disbursing agent on any accrued interest

       The Plan shall complete within 60 months of confirmation.

# United States Bankruptcy Court
### for the Northern District of California, San Jose Division

In re
<u>Alan T. Wootton</u>
<u>and</u>
<u>Wendy L. Wootton</u>

Debtor(s)

Case No. <u>09-57389-ASW</u>

```
FIRST AMENDED
03/30/11
```

**CHAPTER 13 PLAN**

1. **Plan Payments by Debtor**. The future earnings of the debtor(s) are submitted to the supervision and control of the trustee.
The debtor(s) will pay to the trustee [ [ ] pay order [X] direct pay] the sum of <u>$2,500.76</u> each month. `First 19 months at $700/mo., then $2,500.76/mo.`

2. **Disbursements by Trustee**. From the payments received, the trustee will make disbursements as follows:

    (a) On allowed claims for expenses of administration required by 11 U.S.C. § 507(a)(2). Initial attorneys fees are requested in the amount of <u>$4,250.00</u>.

    (b) On allowed secured claims, which will be treated and valued, as follows:

| Creditor | Collateral | Compromise of Claim Described in §1325(a)(9) | Value of Collateral | Estimated Arrears | Adequate Protection | Time Value of Money (Interest) |
|---|---|---|---|---|---|---|
| NONE | | | | | | |

    (c) The debtor(s) propose the following compromise modifying the amounts payable on secured claims provided in paragraph 2(b). The debtor(s) acknowledge that this plan provision does not alter the other rights provided to holders of secured claims pursuant to 11 U.S.C. §§ 506 and 1325(a)(5)(b) or in the event of conversion.

| Creditor | Collateral | Value |
|---|---|---|
| NONE | | |

    (d) On allowed priority unsecured claims specified in 11 U.S.C. § 507.

    (e) On allowed general unsecured claims, as follows:

[X] A percentage plan at the rate of <u>99</u> cents on the dollar. The estimated term of the plan is <u>60</u> months.

[ ] A pot plan, paying the sum of $_____ payable over ____ months, distributed pro rata, in amounts determined after allowed administrative, secured and priority unsecured claims are paid. The plan payments will continue at the highest monthly payment amount provided in paragraph 1 as necessary to complete the plan within 60 months of

confirmation.

3. **Rejection of Executory Contracts and Leases and Surrender of Secured Collateral**. The debtor(s) elect to reject the following executory contracts or leases and surrender to the named creditor(s) the personal or real property that serves as collateral for a claim. The debtor(s) waive the protections of the automatic stay and consent to allow the named creditor(s) to obtain possession and dispose of the following identified property or collateral without further order of the court. Any allowed unsecured claim for damages resulting from rejection will be paid in accordance with paragraph 2(e).

| Creditor | Collateral/Executory Contracts or Leases |
|----------|------------------------------------------|
| NONE     |                                          |

4. **Direct Payments by Debtor**. The debtor(s) will pay directly the following secured creditors, lessors, or creditors holding long-term debt:

| Creditor | Monthly Payment |
|----------|-----------------|
| NONE     |                 |

5. **Effective Date of Plan**. The date this case was filed will be the effective date of the plan as well as the date when interest ceases accruing on unsecured claims against the estate.

6. **Vesting of Estate Property**. The debtor(s) elect to have property of the estate revest in the debtor(s):

[ ] at such time as a discharge is granted or the case is dismissed.

[X] upon plan confirmation.

Once property revests, the debtor may sell or refinance real or personal property without further order of the court, upon approval of the chapter 13 trustee.

7. **Additional Provisions**. The debtor(s) further propose, pursuant to 11 U.S.C. §1322(b):

I certify that this Chapter 13 Plan is a verbatim replica of the Chapter 13 Plan (Rev. 8/13/09), promulgated pursuant to B.L.R. 1007-1 and approved for use in the San Jose Division of the Northern District of California.

Respectfully submitted,

Dated: 03/29/11                          Signature: /s/ Alan T. Wootton

_____              _____
                                                     (debtor)
Dated: 03/29/11                          Signature: /s/ Wendy L. Wootton

_____              _____
                                                     (debtor)
Dated: 03/29/11                          Signature: /s/ Brooke L. Miller

_____              _____

_____    _____
                             (attorney for debtor(s))

### Notice to Creditors Regarding Plan Provisions

**Binding Effect of the Plan**: The plan will be binding upon creditors if approved at a confirmation hearing. You should review the plan carefully as your legal rights may be affected. You may wish to seek legal advice to understand its terms and to protect your rights.

**Written Objection to Confirmation**: If you disagree with the terms of this plan, you must file a written objection with the U.S. Bankruptcy Court by the date of the Meeting of Creditors and serve it upon the trustee and debtor's attorney or, if not represented by an attorney, the debtor. If you fail to file a timely written objection to confirmation of this plan and the plan is confirmed by the court, you will be bound by its terms.

**Plan Payment**: The debtor must make the first payment proposed by the plan within 30 days after the plan is filed or the order for relief is entered, whichever is earlier, or the case may be dismissed without further notice.

**Proof of Claim**: To receive payments, you must file a proof of claim. You may file the proof of claim electronically if you are a registered participant for electronic filing. If not, a blank claim form is enclosed for your use. The form must be fully executed, legible and you must attach any required documentation. It must be filed with the court and served upon the debtor's attorney or, if not represented by an attorney, the debtor.

**Distribution of Funds**: Payments will be disbursed by the chapter 13 trustee consistent with 11 U.S.C. § 1326(b)(1) and according to the plan. Creditors secured by personal property will receive adequate protection payments contemporaneous with other administrative claims. Non-administrative priority and unsecured claims under 11 U.S.C. § 507 will be made in their order of priority, except that allowed claims under § 507(a)(1)(B) which may be listed as an optional provision of the plan will be paid after other priority claims. Payments must be credited in accordance with the terms of the plan and § 524(i).

**Treatment of Secured Claims**: The valuations shown will be binding unless a timely objection to confirmation is filed. Secured claims will be allowed for the value of the collateral or the amount of the claim, whichever is less. The remaining balance of any partially-secured claim will be treated as a general unsecured claim. If the time value of money (interest rate) is not specified, it will be paid at an annual rate of seven percent (7%).

**Adequate Protection Payments**: Subject to the trustee's monthly disbursement cycle, the trustee will disburse adequate protection payments commencing within 30 days after a proof of claim is properly filed, documenting the nature and extent of a claimed lien. Adequate protection payments may be no less than the monthly depreciation of the collateral.

Page 3

**Proposed Compromise**: If the debtor has proposed a compromise affecting your collateral, you may either accept, reject or renegotiate the proposed compromise. If you reach an agreement, the resulting claim will be treated as a secured claim under § 506 and the plan may be confirmed. If you do not affirmatively agree, you must file an objection to confirmation (see above), and the confirmation hearing will be continued for consideration of a modified plan.

# EXHIBIT "H"

Exhibit H- Transcript Stating the Income on Schedule I in incorrect

12    Q.  Are they correct?

13    A.  Are what correct?

14    Q.  Is the information provided correct?

15    A.  I cannot tell.

16    Q.  Let's review it a little bit.  Is your

17  monthly income as you know it 12,553.84.

18    A.  That sounds too small.

19    Q.  Too small.  What do you believe your --

20    A.  Wasn't the previous one 13,333?

21    Q.  It was.

22    A.  I don't believe that it shrunk.

23    Q.  Too small.  All right.  Then you can see on

24  line 13, it says Playdom Inc. stock of 8,435.57, is

25  that correct?

                                                    60


1    A.  Where?

2    Q.  Line 13?

3    A.  Oh, yeah, I remember that figure more or

4  less.

5    Q.  Is that correct?

6    A.  Is what correct?

7    Q.  That amount that you listed, other monthly

8  income?

9    A.  Correct in what sense?

10    Q.  This is your current income and you've

11  listed 13 as Playdom Inc. stock at $8,435.57?

12    A.  Yes, I did list that.

13    Q.  Is that correct?

14    A.  Correct in what sense?

15    Q.  Is that the amount of extra income?

# EXHIBIT "I"

Value of Disney Stock for the past 52 weeks


# YAHOO! FINANCE

Search                                     **Web Search**

Dow ↑ 0.21%  Nasdaq ↓ 0.58%

| HOME | NEWS | PERSONAL FINANCE | MY PORTFOLIOS | NEW! EXCLUSIVES |

GET QUOTES

## Walt Disney Co. (DIS)

2:18PM EDT: **37.96** ↓ 0.43 (1.12%)



**500 FREE TRADES** FOR 60 DAYS
ENTRADE SECURITIES LLC



optionshouse
STOCKS $3.95  OPTIONS $5.00 +3¢/contract

QUOTES
**Summary**
Order Book
Options
Historical Prices

CHARTS
Interactive
Basic Chart
Basic Tech. Analysis

NEWS & INFO
Headlines
Financial Blogs
Company Events
Message Boards
Market Pulse

COMPANY
Profile
Key Statistics
SEC Filings
Competitors
Industry
Components

ANALYST COVERAGE
Analyst Opinion
Analyst Estimates
Research Reports
Star Analysts

OWNERSHIP
Major Holders
Insider Transactions
Insider Roster

FINANCIALS
Income Statement
Balance Sheet
Cash Flow

### Walt Disney Company (The) Commo (NYSE: DIS )
37.89 ↓ -0.50 (-1.30%) 2:33PM EDT

| | | | |
|---|---|---|---|
| Last Trade: | 37.96 | Day's Range: | 37.93 - 38.47 |
| Trade Time: | 2:18PM EDT | 52wk Range: | 30.72 - 44.34 |
| Change: | ↓ 0.43 (1.12%) | Volume: | 7,002,729 |
| Prev Close: | 38.39 | Avg Vol (3m): | 9,343,990 |
| Open: | 38.37 | Market Cap: | 71.75B |
| Bid: | 37.96 x 3500 | P/E (ttm): | 16.80 |
| Ask: | 37.97 x 4200 | EPS (ttm): | 2.26 |
| 1y Target Est: | 48.77 | Div & Yield: | 0.40 (1.00%) |

People viewing **DIS** also viewed:
WMT  KO  MCD  NKE  IBM  MMM

* Quotes delayed, except where indicated otherwise. Currency in USD.

### Walt Disney Company (The) Commo



| | |
|---|---|
| 1d | 5d | 3m | 6m | 1y | 2y | 5y | max |

customize chart

AdChoices



Scottrade
Open A New Account

Learn.
Discover.
Invest.

7 ONLINE TRADES

### Headlines                            Filter Headlines

Warner Bros.' "Green Lantern" Powers Up at Minyanville (Thu 2:00PM EDT)

MarketWatch First Take: Oprah's O.J. gimmick is pure desperation at MarketWatch (Thu 12:22PM EDT)

ESPN Basketball Reporter Sues New York Post Columnist For Libel at Forbes (Thu 11:32AM EDT)

Weiner story lets new CBS anchor carve path AP (Thu 10:31AM EDT)

X-Men poised to return to Marvel AP (Thu 10:06AM EDT)

'Green Lantern' Takes On 'Captain America' at TheStreet (Thu 8:36AM EDT)

How CNN Money's '5 Stocks for the World' Fare Against a Diversified Portfolio of Dividend ETFs at Seeking Alpha (Thu 8:50AM EDT)

Is LeBron James Sinking Carnival? at Motley Fool (Wed, Jun 15)

ESPN: Ad sales brisk, unaffected by NFL turmoil at MarketWatch (Wed, Jun 15)

Academy Plans to Nominate 5-10 Films for Best Picture Oscar at Bloomberg (Wed, Jun 15)

» More Headlines for DIS

Add DIS Headlines to My Yahoo!

Advertisement
Get up to $500. E*TRADE Securities

### Comparison

| Symbol | % Chg | Mkt Cap |
|---|---|---|
| DIS | ↓ 1.12% | 71.75B |
| NWSA | ↑ 1.29% | 42.08B |
| NWS-AX | 0.00% | 41.87B |
| TWX | ↓ 0.38% | 36.93B |

» More Competitors

Sector  Services
Industry  Entertainment - Diversified

### Key Statistics

| | |
|---|---|
| Forward P/E (1 yr) | 12.65 |
| P/S (ttm) | 1.84 |
| Ex-Dividend Date: | 09-Dec-10 |

» More Key Statistics

### Financial Blogs

Comcast Wins TV Rights for Olympics Zacks (Wed, Jun 8)

Disney to Lay Off, Blames DVD Sales Zacks (Tue, Jun 7)

Comcast Still Neutral Zacks (Fri, Jun 3)

» More Financial Blogs for DIS

Add DIS Financial Blogs to My Yahoo!

1
2
3
4

# EXHIBIT "J"

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

25  Exhibit J- Testimony how the Playdom funds listed on amended schedule I were
26                                    determined

27
28

16    A.  As I previously stated, it depends on the

17  price have of Disney, so,that's, you know.

18    Q.  I obviously didn't prepare these documents

19  so I need your help in figuring out where these

20  numbers came from.

21    A.  Then you'll have to ask me a question.

22    Q.  So my question is, you have listed

23  $8,435.57, how did you come up with that figure?

24    A.  Brooke took an average from the past.

25    Q.  What was the average offer?

                                                    61

1    A.  I don't remember.

2    Q.  Did you provide her with documents?

3    A.  Yeah.

4    Q.  What were the documents you provided so that

5  an average can be reached?

6    A.  Same documents I provided to you.

7    Q.  Well, there's usually a general -- a period

8  of time?

9    A.  I provided all of the documents.

10    Q.  So as of March 30, 2011, there is an average

11  of some documents but you don't know what average

12  that came up with $8,435.57, does that accurately

13  state what you're telling me?

14    A.  Yeah, in so far as I know exactly what it

15  means.

16    Q.  If you are confused please we can clarify

17  it.  Again I need your help in understanding these

18  documents, I didn't prepare them.

19      So what I'm trying to figure out is there's

1    A.  When the end of what?

2    Q.  When the end of the average was taken?

3    A.  I don't know how the average was taken.

4    Q.  All right.  Thank you.

5        Is this all your incomes that you listed?

6    A.  Yep.

7    Q.  Just to clarify, when you filed this it was

8  based on an average and you weren't considering any

9  future incomes or payment, is that correct?

10   A.  It's impossible to predict the future.

11   Q.  But is that correct?

12   A.  Is what correct?

13   Q.  It's a very simple question.  At the time

14 you filed this, you were looking at an average and

15 you didn't anticipate any potential different

16 pay-outs, wasn't a forward looking, it was an average

17 from the past, is that correct?

18   A.  That was a statement, now please ask me a

19 question and I can answer it.

20   Q.  Okay.  Does this income as it was filed

21 consider any future pay-outs?

22   A.  This is considered to be representative of

23 my current situation and our best estimate of the

24 future, which of course cannot be predicted.  Nobody

25 can say the price of Disney.

                                              65


1    Q.  But it was your previous testimony that you

2  get to decide when the pay-out happens, is that

3  correct?

4    A.  I get to decide when to exercise the shares.

1
2
3
4
# EXHIBIT "K"
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
Exhibit K- Debtor's explanation of the increase in his expenses
26
27
28

5      Q.  If you can look to your amended Schedule J,

6  the next page.  I'm trying to clarify, there's been

7  some differences from your previously filed documents

8  to your newly filed documents.  If you want to bring

9  the initial documents which would be Exhibit B, you

10  can open them up and compare.  List of the full

11  petition, pages from the petition.

12         MS. MILLER:  Do you want Schedule J then?

13         MS. SILVA:  Yes.  Did I say B?

14         MS. MILLER:  Yes.

15         MS. SILVA:  I apologize.  It's Schedule J.

16      Q.  Electricity and heat, number two, went from

17  200 to $400 per month.  Do you know if there's

18  anything specific that caused the increase?

19      A.  No.

20      Q.  Do you know why there's a difference?

21      A.  No.

22      Q.  Food went from 600 a month to 900.  Do you

23  know what caused that difference?

24      A.  No.

25      Q.  Actually food went to 920.  So what's

                                              66


1  correct, you filed both stating that they were

2  correct, is the amended correct or is the original

3  schedule correct?

4      A.  To the best of my knowledge the amended is

5  correct.

6      Q.  You did help prepare the original one and

7  signed it, right?

8      A.  Uh-huh.

Case: 09-57389    Doc# 122-3    Filed: 06/17/11    Entered: 06/17/11 10:58:21    Page 40
of 42

21   because $892 are listed for both medical and dental,

22   any one of those purchases in the time period that is

23   discussed inside this exam was over $350.

24          If there aren't any documentation -- if

25   there isn't any documentation produced not showing

1   medical or dental expenses of over 350 bucks, it's

2   because there weren't any.

3          I remind you, there was one produced, dental

4   record that's about 442 bucks.

5          MS. SILVA:  Thank you, Counsel.

6          Now again, this scope, the whole scope of

7   the examination is to your schedules and your exam,

8   not just to individual items on it.  The objection

9   has been noted, and you are instructed to answer

10  unless your counsel specifically authorizes you not

11  to, and therefore they are liable for your failure to

12  answer.

13       Q.  So can you explain to me why you have

14  purported to the court that there is an increase of

15  $800 in your medical expenses?

16       A.  Am I supposed to list medical documents,

17  names of doctors?

18          MS. MILLER:  Just answer the question, Alan.

19          THE WITNESS:  There's braces that have to be

20  bought, there's some therapy, there's projected

21  expenses.

22  BY MS. SILVA:

23       Q.  These are your projected expenses that

24  haven't been expenses that are actually incurred.

25      A.  I don't know the exact expenses that have

71

1   been incurred.

2       Q.  Is there a reason and a basis for coming up

3   with $892?  I mean it's a pretty specific amount?

4           MS. MILLER:  Objection, asked and answered.

5           MS. SILVA:  No, it's not.

6           THE WITNESS:  I wouldn't know the reason,

7   the exact calculation.  Number had to be produced,

8   one was.

9   BY MS. SILVA:

10      Q.  Was it based off of any documents, any

11  bills?

12      A.  I don't know.

13      Q.  So you just made up the number?

14          MS. MILLER:  Objection, it's leading.  He

15  did not say that.  It's completely mischaracterizing

16  his testimony.

17      Q.  How did you come up with the number?

18      A.  I discussed it with my --

19          MS. MILLER:  Objection, asked and answered.

20          MS. SILVA:  No, it hasn't been answered.  Go

21  ahead and answer it.

22          THE WITNESS:  I discussed it with my wife

23  and this is the number we came up with.

24  BY MS. SILVA:

25      Q.  Was it based on documentation?

72

Case: 09-57389    Doc# 122-3    Filed: 06/17/11    Entered: 06/17/11 10:58:21    Page 42 of 42

6/16/2011 10:29 PM